IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>Foley & Lardner<br>Subpoena Enforcement Matter<br>_____<br><br>Trading Technologies International, Inc.,<br>222 South Riverside Plaza, Suite 1100<br>Chicago, IL 60606<br><br>       Plaintiff,<br><br>   -against-<br><br>GL Consultants, Inc., et al,<br>261 Madison Avenue<br>New York, NY 10017<br><br>       Defendants. | MISCELLANEOUS ACTION FILE<br><br>CASE NO. 1:06MC00301 (RJL) |

**OPPOSITION OF FOLEY & LARDNER LLP TO
GL TRADE AMERICAS INC.'S MOTION TO COMPEL**

### I. Introduction

In compliance with this Court's order entered on July 7, the law firm of Foley & Lardner LLP ("F&L") is timely filing its opposition to the motion to compel filed here by GL Trade Americas Inc. ("GL"). However this motion should not be adjudicated here, but rather in federal district court in Chicago where the underlying patent infringement is pending and where F&L and Trading Technologies International, Inc. ("TT")[1] today filed, pursuant to that Court's order, their joint opposition to the same motion.

---

[1] TT has joined in the same legal position taken in this brief in the joint filing in the U.S. District Court for the Northern District of Illinois. F&L expressly consents to the motion being heard and resolved in the federal court in Illinois.

This is not your normal third-party subpoena situation. GL's motion is part of an end-run to obtain documents under the control of Chicago-based TT, a client of the F&L law firm, by subpoenaing the records of TT's multi-office law firm at the law firm's office in Washington, D.C.

TT has sued GL for patent infringement in the U.S. District Court for the Northern District of Illinois, Case No. 05 C 4120, and discovery in that matter is being coordinated with discovery in other similar cases before Judge James B. Moran in Chicago. Prior to the issuance of the subpoena at issue here, TT had produced more than 3,000 pages of F&L documents to GL in Chicago in response to Rule 34 requests promulgated by another defendant in another of the patent cases that have been coordinated for discovery (and certain other pre-trial purposes) with the GL case in federal court in Chicago.

GL has now engaged in essentially a legal fiction to go after TT-controlled documents, which contain information protected by TT's attorney-client privilege, by issuing a subpoena to the *D.C.* office of F&L, even though the *Chicago* office of F&L is counsel of record for TT in two of the other coordinated cases pending before Judge Moran in which Refco (05 C 1079) and Rosenthal Collins (05 C 2164) are defendants.

Judge Moran saw through this. At a July 7, 2006 status conference, Judge Moran was advised of the motion GL had filed in this Court. F&L stated its agreement with the motion being heard and decided by the federal court in Chicago. Given his extensive familiarity with the issues of this case, Judge Moran directed GL to submit its motion in federal court in Chicago and supporting memorandum on July 7, which presumably has been done. TT and F&L filed a response to GL's motion in federal court in Chicago today. GL's reply is due next Monday. The

Court entered the following order, which was docketed and electronically distributed to the counsel on July 7.

> MINUTE entry before Judge James B. Moran: Status hearing held. GL's and FuturePath's renewed motion for a protective order was heard. Trading Technologies' motion for entry of a protective order was heard [108]. Parties to file a blueprint of the current disputes regarding the protective order with the Court. **GL's and FuturePath's motion to compel against Foley and Lardner will be withdrawn from the District Court for the District of Columbia and submitted to this Court.** Trading Technologies to respond by July 12, 2006. Defendants reply due July 17, 2006. (ar, ) (emphasis added)

Despite the order directing GL to withdraw its motion before this Court, GL has not done so. While GL yesterday filed the transcript of proceedings held on July 6 in this court in an attempt to explain its conduct, Judge Moran's order is explicit. GL's inaction is something GL will have to explain to Judge Moran. For present purposes, F&L respectfully requests that this Court confer with Judge Moran about the motion. F&L respectfully submits that the procedure outlined by Judge Moran be followed in this instance and that this Court provide for the motion to be decided by Judge Moran in Illinois (or at least stay proceedings until Judge Moran issues his ruling on the same motion).

Given that this Court has ordered F&L to respond here and that Order has not been modified, F&L without prejudice to its position that the motion should be heard in Chicago, submits the following response. F&L notes that TT has joined in F&L's response to the motion before Judge Moran and fully endorses F&L's response before this Court.

Specifically F&L opposes the requested motion to require it to produce documents it is duty-bound to keep confidential pursuant to the attorney-client and work product immunity. F&L also opposes GL's effort to require an expanded search for documents, emails and electronic information which, in the words of F.R.C.P. Rule 26(g)(2)(C), would be

3

"unreasonable or unduly burdensome given the needs of the case" and which relates to discovery already had from F&L's client, TT. Depending upon the scope of such an expanded search of electronic files and e-mails, an outside vendor would charge $25,000 or more to have the documents converted into a searchable data base to then allow F&L to identify responsive documents (if any) and appropriately log documents for privilege.

**II.    Background**

Because TT, pursuant to Rule 34 of the Federal Rules of Civil Procedure, was already producing documents under its control to defendants in the coordinated cases, including documents from patent prosecution files maintained by its outside counsel, the GL subpoena was wholly unnecessary. But it was also a burdensome device to get a "second bite" at discovery from TT via its attorneys.

When GL subpoenaed F&L, the law firm which acted as TT's counsel in prosecuting TT's patent applications for the patents-in-issue, F&L produced[2] more than 10,900 non-privileged pages of documents related to the patents-in-issue and a series of other patents or patent applications which defendants have claimed may lead to relevant evidence. (Ellis 00001-10978). Not surprisingly, since GL was subpoenaing the files of the lawyers providing legal advice to TT, some 320 documents were identified on a privilege log and were withheld as protected by TT's attorney-client privilege and the work product immunity. These 320

---

[2] While for ease of reference, the memorandum refers to F&L producing the documents, the documents relate to the legal work performed for TT, as a client of F&L, and accordingly TT is the real party-in-interest, particularly because the attorney-client privilege is held by TT. Moreover, F&L provided the documents to TT's lead patent counsel in Chicago to produce in conjunction with TT's own document production. The reference to "Ellis" Privilege Log is only meant to signify copies of documents located at F&L, not that it is a document created by William Ellis.

4

documents represent a tiny fraction of all documents reviewed in the generation of the "Ellis" Privilege Log.

Because the original subpoena was vast in scope and sought information from a law firm which as of July 7, 2006 had 947 attorneys nationwide and more than 1560 non-lawyer employees,[3] F&L timely served objections and responses. F&L did provide its files of eight patent prosecutions (withholding and logging those 300+ documents which were privileged), including file jackets, and otherwise sought to reach a reasonable accommodation with GL about the scope of the subpoena.[4] As directed by Judge Moran, F&L also conducted a search of e-mail files to locate communications between F&L patent attorneys who acted on the TT applications, including those no longer with F&L, and the United States Patent Office related to the patents-in-issue. All e-mails located were produced (Ellis 10772-10960) and F&L represented this fact in a letter dated June 6, 2006.

Because the attorney client privilege belongs to TT and TT has directed that the privilege not be waived, documents protected by the attorney-client privilege and work product privilege were withheld and logged. The law firm of McDonnell, Boehnen, Hulbert & Berghoff LLP ("MBHB") in Chicago, which is lead counsel for TT in these cases, coordinated the production of the F&L files – 3,000 pages of which had been produced to defendants by TT before GL served its subpoena on F&L. Accordingly, the "meet and confer" discussions about all of TT's

---

[3] The purported scope actually would be even broader because, as the subpoena relates to the 2000-2004 timeframe, it conceivably would be directed at attorneys and staff working at F&L during that time period, who are not currently affiliated with F&L. F&L properly objected to the overbroad scope of the subpoena. F&L Response and Objection served March 6, 2006 at pp. 2-3 ("Response"), attached as Ex. E to GL's motion.

[4] In addition, TT produced more than 60 additional patent prosecution files from its outside counsel, McDonnell, Boehnen, Hulbert & Berghoff LLP.

5

privilege claims were conducted between counsel at MBHB and GL's counsel, as the same issues arise whether the privileged document were sought from TT's files, MBHB's files or F&L's files.

In is motion, GL challenges 107 privilege log entries. Five of these documents (*i.e.* entries 21, 33, 71, 76 and 317) were not identified by GL in the "meet and confer" process of Local Rule 37.1 of the Rules of U.S. District Court for the Northern District of Illinois, and should not be considered here for the first time. On the merits, the challenged documents are privileged and no reasonable basis exists to mandate an *in camera* review.

### III. The Federal Circuit Law of Privilege Controls as The Documents Relate to the Patent Prosecutions

In presenting this motion to obtain access to these privileged documents, GL has ignored the pronouncement by the U.S. Supreme Court in *Sperry v. State of Florida*, 373 U.S. 379 (1963), that the work of preparing patent applications is legal in nature.

> Such conduct inevitably requires the practitioner to consider and advise his clients as to the patentability of their inventions under the statutory criteria, 35 U.S.C. §§ 101-103, 161, 171, as well as to consider the advisability of relying upon alternative forms of protection which may be available under state law. It also involves his participation in the drafting of the specification and claims of the patent application, 35 U.S.C. § 112, which this Court long ago noted "constitute[s] one of the most difficult legal instruments to draw with accuracy," *Topliff v. Topliff*, 145 U.S. 156, 171.

*Id.* at 383.

As fully explained in *McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 248-50 (N.D. Ill. 2000), in ruling on privilege claims in a patent infringement case, the courts were divided after *Sperry* about whether the attorney-client privilege in the patent attorney context was to be interpreted narrowly or expansively. Ultimately the "expansive view" of the full attorney-client

6

privilege, as illustrated by *Knogo Corp. v. United States,*, 213 U.S.P.Q. 936 (Ct. Cl. 1980), was adopted by the Federal Circuit Court of Appeals.

Though GL cites some 30 judicial precedents in its supporting memorandum, GL has failed to cite the controlling law of the Federal Circuit Court of Appeals on the attorney-client privilege. In *In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000), the Federal Circuit decided that a uniform law would be applied to issues of attorney-client privilege which relate to substantive patent law issues.[5] The Court took the extraordinary step of issuing a writ of mandamus to the district court in Massachusetts to set aside its discovery ruling which had held that the attorney client privilege did not protect patent prosecution documents and explained its analysis as follows:

> Before determining whether Spalding's invention record is protected by the attorney-client privilege, we must first decide whether to apply our own law or that of the First Circuit…..
>
> We agree with Spalding that our own law applies to the issue whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent. In reviewing district court judgments, we apply the law of the circuit in which the district court sits with respect to nonpatent issues, but we apply our own law to issues of substantive patent law. *See Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.),* 186 F.3d 1356, 1358, 51 USPQ2d 1321, 1329 (Fed. Cir. 1999). Furthermore, we have held that "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to our exclusive [jurisdiction] by statute, or if it clearly implicates the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction." *Midwest Indus., Inc. v. Karavan,* 175 F.3d 1356, 1359, 50

---

[5] If the privilege issue in a patent case arises in an aspect not unique to patent law, *e.g.* the contractual terms of a patent license agreement, the substantive law of the "circuit in which the district court sits" applies. *McCook Metals, LLC v. Alcoa, Inc.,* 192 F.R.D. 242, 251 (N.D. Ill. 2000), quoting *Spalding* at 803; *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). That is not the situation here.

7

> USPQ2d 1672, 1675 (Fed.Cir.1999) (*en banc* in relevant part) (internal citations and quotation marks omitted).
>
> Applying these standards, we have held, for example, that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, because they relate to an issue of substantive patent law. *See id.* (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1212, 2 USPQ2d 1034, 1038 (Fed.Cir.1987) ("[A] determination of relevance implicates the substantive law of patent validity and infringement. Hence, we look to Federal Circuit law.")). **Similarly, in the present case, a determination of the applicability of the attorney-client privilege to Spalding's invention record clearly implicates, at the very least, the substantive patent issue of inequitable conduct. We therefore apply Federal Circuit law in determining whether the attorney-client privilege applies.**

*Id.* at 803-04 (emphasis added).

Applying Federal Circuit law, *Spalding* held that the attorney-client privilege protected the so-called "invention record" consisting of technical information supplied by the inventor to the attorneys for use in deciding whether to seek patent protection and the nature of the submission. As here, the movant in *Spalding* argued that the privilege did not protect information that related to technical information or prior art. The Federal Circuit bluntly rejected that argument.

> Finally, to the extent that Spalding's invention record may contain technical information, or refer to prior art, the inclusion of such information does not render the document discoverable, because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art.

*Id.* at 806.

Under *Spalding,* communications between client and patent attorney are privileged, even if they contain only technical data, as long as the client made the communication for the purpose of obtaining legal advice. *Id.* at 805. These communications contain an implied request for legal advice on patentability or for legal services in preparing a patent application. *Id.* at 806. In order

8

to provide such advice, the attorney must evaluate that technical information. *Id*. Finally, the Federal Circuit also directed in patent cases that courts are not to dissect the document to remove technical data from privileged legal advice; rather, the document is privileged in its entirety. *Id*. Because *Spalding* is fatal to its motion to compel, GL apparently chose not to disclose that opinion in its memorandum.

In May 2006, the Federal Circuit in *In Re Echostar Communications Corp*., 448 F.3d 1294 (Fed. Cir. 2006), reiterated that Federal Circuit law applies to construing the attorney-client and work product privilege, as well as any claim of waiver of the applicable privilege, when the materials relate to an issue of substantive patent law. The Court added: "We recognize the [attorney-client] privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law." *Id.* at 1300-01.

The two district court opinions from this Court upon which GL relies extensively, *Minebea Co. v. Papst*, 229 F.R.D. 1 (D.D.C. 2005) and *Minebea Co. v. Papst,* 228 F.R.D. 13 (D.D.C. 2005),[6] are inconsistent with controlling Federal Circuit law and – as to the application of attorney-client privilege in patent litigation – respectfully should not be followed. *Minebea*, 229 F.R.D. at 3, mistakenly concluded that in order for a communication to be privileged, the attorney-client communication must "…rest on a previous communication made by the client 'in confidence' that would be directly or indirectly revealed were the communication from attorney to client made public." The district court used this standard to order the production of a letter from an attorney to his client opining on how the client should respond to a Patent Office action,

---

[6] Without access to the parties' briefs, it is not possible to determine if the district court was advised about the controlling nature of Federal Circuit precedent with respect to issues bearing upon the application of patent law.

9

reasoning that the letter consisted of suggestions based entirely on information already submitted in a patent application, which could not be said to be "in confidence." *Id*. at 3. But *Minebea* discussed and applied the law of the District of Columbia Circuit – not the Federal Circuit. Its requirement that the communication be based upon a prior client confidence is not the law in this situation which relates to a patent prosecution and the purported patent defense of inequitable conduct.

Instead, the Federal Circuit applied a different and less restrictive rule: "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Echostar* at 1300, quoting *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). The added requirement of *Minebea* that the attorney's communication is privileged only to the extent it reveals a client confidence has no basis in controlling Federal Circuit precedent and is inapplicable to this motion.

### IV. Even if Federal Circuit Law Were Not Controlling TT's Significant Contacts with Illinois Mandate That Federal Law in Illinois, Not D.C., Should be Followed

Federal Circuit law regarding privilege applies because these issues implicate substantive patent law issues. But even were that not true, the Court should follow federal case law in Illinois because the most significant contacts are with Illinois, not the District of Columbia.

Three key factors support this conclusion. First, TT, the client is headquartered in Chicago, Illinois. As TT is the holder of the privilege, Illinois has the most significant contacts with the privilege. Second, the underlying patent litigation is being tried in federal court in Illinois and the evidentiary privileges governing at trial should be the same as the evidentiary

10

privileges governing discovery related to a trial in Illinois.[7] Third, copies of some privileged documents may be found both in Chicago (TT's office or MBHB's office) and in D.C. (F&L's office). The same document cannot be privileged in one location and non-privileged in the other under federal law.

It would be bizarre if the confidentiality of TT's communications with counsel turned on where the documents were located and or where copies could be subpoenaed. For example correspondence from TT in Chicago to F&L attorneys in Washington, D.C., seeking legal advice are just as privileged under the subject matter test of federal law, *see Upjohn Co. v. United States,* 449 U.S. 338, 389 (1981), whether a copy of that document is sought in discovery from TT or MBHB in Chicago or by subpoena directed to F&L lawyers in D.C. Lawyers in Washington, D.C. -- and their clients -- would be aghast to learn that the confidential communications with respect to a patent application from a client in Chicago would not be privileged here under federal law, while precisely the same communication to an Illinois lawyer prosecuting the same patent application is privileged. When the result is absurd, the logic must be questioned. This conundrum is solved when the Court applies the traditional most significant contacts test used to decide choice-of-law issues. Here the most significant contacts are in Illinois. TT is located in Chicago, the patent application is made by an Illinois-based company and the lawsuit in which the documents are sought is pending in federal court in Illinois.

This case is even stronger. The documents sought are TT documents, which simply are located in another city. TT had produced documents from F&L's D.C. office files voluntarily in

---

[7] Assume that if a client were testifying at the trial of this case in Chicago and asked about a written communication from its attorney, Judge Moran would sustain an objection based upon attorney-client privilege. That same privileged information should not be non-privileged at the discovery stage because the document is stored in Washington, D.C., rather than Chicago.

CHI2_643469.1

Chicago prior to service of the GL subpoena and would have continued to do so. Given that this is really a discovery issue related to the privileged documents of an Illinois-based company and a plaintiff in an Illinois federal court lawsuit, the ruling on discovery should be made using law applicable to patent lawsuits pending in federal court in Illinois. But, of course, this issue is of secondary importance as Federal Circuit law applies in any event.

## V. Applying the Federal Circuit's Law: The Challenged Privilege Log Entries are Not Discoverable

Documents 19, 20, 28, 29, 254, 255, 258, 315, which include e-mails and portions of patent applications prepared by counsel, which contain technical information disclosed to attorneys for the drafting or filing a patent application, are privileged. Similarly, Documents 39, 91, 256, 258-262, 269-271, and 291 are portions of patent applications prepared by attorneys. These are privileged under the authority of *Spalding,* 203 F.3d 800, 804-05 (Fed. Cir. 2000) and *McCook Metals L.L.C. v. Alcoa Inc.* 192 F.R.D. 242, 252-53 (N.D. Ill. 2000).

Documents 272, 273, 274 are invention disclosure forms, which is the category of documents expressly held to be privileged in *Spalding.* 203 F.3d at 804-05.

Documents that were exchanged between a legal assistant and a patent drafting service (Documents 41, 44, 46, 48) are protected by the attorney-client privilege which encompasses information transmitted to or received by agents of an attorney who are essential to providing effective legal advice. *Bauman v. Jacob Suchard, Inc.*, 136 F.R.D. 460, 463 (N.D. Ill. 1990); *Abbott Labs v. Airco, Inc.*, 1985 WL 3596 at *4 (N.D. Ill. November 4, 1985). Similarly, Documents 2-7, 35-38, 278, 279,282-284 are communications between F&L and an external agent who acted as patent researcher, and are therefore privileged under the same legal authority.

Internal F&L documents relating to the prosecution of patent applications are protected by the attorney client or work product privilege. Documents 1, 97-99, 108, 115, 123, 125, 127,

12

135,138, 139, 143, 145, 148, 155, 164, 168-170, 176, 178, 179, 185, 190-194, 200, 203, 205-207, 209, 211, 217, 243-245, 248, 275, 281 fall into this category. (Three of these entries are duplicates: 97-99; 125 and 127; 244 and 248).

Documents 251, 252, 253, 263, 264, 265, 266, 267 are handwritten attorney notes related to patent application preparations, and are privileged under authority of *McCook*, 192 F.R.D. at 254.

Documents 57, 70, 128, 129, 144, 147, 152, 181, 182, 195, 198, 199, 201, 225, 250 reflect communications between TT and F&L and are privileged under *Echostar* as legal advice. 448 F.3d at 1301. Documents 53 and 167 were misidentified initially, and those clerical errors were corrected. The documents are properly claimed as privileged.

### VI. F&L's Documents are Protected by Work Product Immunity

The Federal Circuit recently emphasized that work product immunity protects documents "prepared in anticipation of litigation that are both non-privileged and relevant." *Echostar* at 1301. "The work product doctrine encourages attorneys to write down their thoughts and opinions with knowledge that their opponents will not rob them of the fruits of their labors." *Id*.

Under this test, the work product privilege applies here, whether or not TT's specific patent infringement claims against GL were anticipated. Moreover, the document need not be "primarily or exclusively" prepared for use in litigation to be protected by work product immunity. *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 230 F.R.D. 508, 514-15 (N.D. Ill. 2005).

Work product applies even if the specific litigation in which the work product privilege is now claimed may not have been forecast. In *In Re Sealed Cases*, 146 F.3d 881 (D.C. Cir. 1998), the Court of Appeals so held. The Court reversed a district court holding that documents sought by a federal grand jury subpoena from a "think tank" were not protected attorney work product.

The Court held that the work product immunity applied even though no "specific claim" had arisen at the time the documents were created and even if the anticipated litigation never occurred. Similarly, the Seventh Circuit has held that the test for the work product privilege is whether, in light of the nature of the document and the factual situation, the document was prepared in anticipation of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977-78 (7th Cir. 1996).

All of the challenged documents on the Privilege Log are protected by attorney-client privilege. In addition, the following challenged documents are also protected as work product.

Specifically, documents 91, 93, 251, 252, and 253 on the Ellis Privilege Log are protected by the work product privilege. As a general rule, work product immunity may apply to "activities in preparing and prosecuting a patent application and other patent-related legal representation." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, No. 93 C 5106, 1995 WL 389822, at *10 (N.D. Ill. Feb. 15, 1995). In the context of patent prosecution, documents prepared in anticipation of litigation encompass documents related to potential infringement, by the patentee or others. *See Avery Dennison Corp. v. UBC Films PLC*, No. 95 C 6351, 1998 WL 703647, at *5 (N.D. Ill. Sept. 30, 1998). Contrary to GL's assertion that documents created for a patent application are not protected simply because an infringement action may arise, the "documents pertaining to the patent application process which were also prepared because of actual or anticipated litigation may be protected by work-product doctrine." *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMWHBP, 2000 WL 35411, at *5 (S.D.N.Y. March 31, 2000). In addition to communications between attorneys and clients, draft patent applications prepared because of the prospect of a future infringement action by the patentee are

14

protected by work product immunity.  *Softview*, 2000 WL 35411, at *5*; see also Elkay*, 1995 WL 389822, at *12 (Westlaw cases attached as Group Ex. 1).

Documents 251, 252, and 253 "reflect[] mental impressions regarding the scope and litigation strategy for U.S. Application No. 09/894,637" and are protected as work product, as well as being properly logged as attorney-client privileged.

Similarly, documents 91 and 93 contain information relevant to "proposed claim amendments for pending U.S. application No. (09/894,637)" and "draft patent claims for U.S. Patent Application No. 09/590,692."  These documents include mental impressions of the patent attorneys because they are the attorneys' opinions as to the claims that would best protect TT in future patent infringement litigation.  Documents 91 and 93 are protected as work product.  *Cf. Elkay*, 1995 WL 389822, at *11 (observing that patent claims that would "serve as the foundation for future litigation against" the defendant in an infringement suit may be protected as work product).

Documents 91 and 93 are also protected by the attorney-client privilege.  In *McCook Metals L.L.C. v. Alcoa Inc.*, the court held that "[a] draft necessarily reflects the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right."  192 F.R.D. 242, 252 (N.D. Ill. 2000).  A patent draft implicitly contains the legal opinions of the patent attorney regarding claims, specifications, and prior art.  *Id.* at 253; *see also Basf Aktiengesellschaft v. Reilly Indus., Inc.*, No. IP01-1936-C-Y/K, 2004 WL 1721574 at *1 (S.D. Ind. July 29, 2004) (holding that, when pleaded in brief, attorney-client privilege applies to draft applications even though the privilege log states work product).  Because documents 91 and 93 are proposed claim amendments and draft claims, they are properly protected by the attorney-client privilege, too.

15

CHI2_643469.1

### VII. TT's Good Faith Participation in the "Meet and Confer" Process Creates No Presumption that the Privilege Log is Inaccurate

In a perversion of the policy underlying the "meet and confer" requirement, GL claims that because TT was open to reevaluating privilege claims -- and did produce an additional eight documents (*see* June 12 and 15, 2006, letters from Michelle McMullen-Tack at MBHB to Sara C. Hsia of Alston & Bird, attached as Group Ex. 2), the entire privilege log is suspect. To the contrary, the fact that TT revised and clarified entries on the privilege log, which were the product of the discovery conference dialogue, is an appropriate and salutary response to this process.

GL complains that documents in which F&L, but no specific F&L attorney, is listed as author cannot be privileged. But this is not so. This identification is sufficient to establish the attorney-client privilege, as the document was created by the law firm in the course of its legal representation. Having subpoenaed the patent prosecution files of F&L, it is understandable that some documents do not contain individual authors, so the designation of F&L is sufficient to establish the privilege. Moreover, the volume of privileged documents is not unexpected given that the subpoena sought production of a law firm's files in eight actively-prosecuted patent applications with significant attorney-client interactions.

### VIII. TT Has Not Waived Any Privilege in Connection with the PTO's Obligation to Maintain a Patent Prosecution History

In a novel, and unsupportable argument, GL argues that TT has waived its attorney-client privilege because of its assertion that the official records of the U.S. Patent Office regarding the prosecution of the patents are incomplete. GL cites no support for this proposition and there is

16

none. TT has not injected any reliance on advice of counsel or similar position that would result in a waiver of the attorney-client privilege.[8]

Without any support, except to a footnote cross-reference to another section of its memorandum and an F&L e-mail from April 2006 to the Patent Office (GL Mem. 20 at n. 39)[9], GL contends that F&L had an "affirmative duty" to ensure that the United States Patent Office's file is complete. No such affirmative duty exists for a private law firm. It is the government's file and the government's obligation to maintain it. No legal authority has been cited in support of this contention that F&L is duty bound to ensure that the Patent Office met its internal file maintenance requirements. Whatever duty the Patent Office has to maintain its patent application file, that duty is not shifted to the patent applicant or its counsel to do the government's work.[10] Nor can it, in any manner, be the basis of a claim of waiver of otherwise valid attorney client or work product privileges of TT. TT did not put any privileged communications in issue or plead any claim or defense based upon reliance of counsel. The waiver argument is utterly baseless.

### IX. F&L Has Undertaken a Reasonable Search And Should Not be Ordered to Do More

GL's subpoena was so broad and so out-of-sync with the provisions of Rule 26(g)(c)(2), that some subpoenaed parties would have objected to it in its entirety. But F&L did not. Instead

---

[8] In contrast, if the defendants were to rely upon "advice of counsel" to defend against a claim of willfulness, that is a waiver of privilege recognized by the Federal Circuit. *In re Echostar Communications*, 448 F.3d 1294, 1299 (Fed. Cir. 2006).

[9] The e-mail, sent in April 2006 by an assistant to an F&L patent attorney to USPTO, was produced as Ellis 10772.

[10] TT and GL are at odds as to what is missing from the files. While TT would file a handful of documents which were historically part of the official file and presumably lost, GL wants to expand the file by adding materials which were never part of the USPTO file.

17

F&L looked in the historical files in which responsive documents would have existed – the patent prosecution files – and either produced or logged all of the entries in those files. These working files were designed to include all of the documents relating to the prosecution of the two patents-in-issue and to six other patent applications which F&L agreed to produce. If there is non-privileged information about prior art or written communications with the USPTO, those documents should have been in those files. Locating and producing those files was a reasonable and appropriate scope for F&L's search. During the "meet and confer" F&L stated that any prior art would have been included in the documents previously produced or, if part of a privileged communication, logged. (Ex. F6 to GL's motion). GL has provided no basis to question that statement.

While GL complains about what it has not received, it never considers the effort or expense or burden of launching a broader search. The depositions of William Ellis and Ankur Shah established, under oath, that the only F&L patent attorneys who actively worked on these TT applications were these two lawyers and Aaron Chatterjee (with perhaps some work by a patent agent -- later attorney -- Daniel Girdwood). If GL believed that these lawyers stored documents relating to the patents-in-issue outside the law firm's patent prosecution files, GL was free to interrogate these witnesses under oath on that issue. But GL offers no such deposition testimony or other evidence to suggest that it is reasonable to require F&L to look at other files.

Moreover, being required to retrieve and search large volumes of electronic and e-mail files from many F&L lawyers and staff members would impose a huge burden in terms of time and expense. For example to convert these files into a searchable data base, an outside vendor would be expected to charge more than $25,000. That amount would not include the cost of

18

F&L staff or attorney time needed to then review the data base for responsive documents and to mark privileged documents. There is no legitimate reason to place this burden on F&L and TT.

F&L has done more than a reasonable search. The "meet and confer" record demonstrates that GL was never going to be satisfied. In light of the huge volume of documents the defendants have obtained already from TT, the effort to get at TT's documents through TT's lawyers should come to an end.

### X.     Conclusion

F&L respectfully requests that this Court defer consideration of this Motion until Judge Moran, who also has the same motion to under consideration in Chicago, has ruled on the motion, or until GL has complied with Judge Moran's order to withdraw the motion here. Alternatively, F&L prays that this Court deny the motion if the motion remains pending here.

                                          Respectfully submitted,

                                          Foley & Lardner LLP

                                          By /s/ David T. Ralston, Jr.
                                                David T. Ralston, Jr.
                                                D.C. Bar No. 104305

Dated:  July 12, 2006

Kenneth Krosin
D.C. Bar No. 114330
David T. Ralston, Jr.
D.C. Bar No. 104305
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street NW, Suite 500
Washington, DC 20007-5143
(202) 672-5300

19

CHI2_643469.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2006, I served a true and correct copy of the foregoing **Opposition of Foley & Lardner LLP to GL Trade Americas Inc.'s Motion to Compel** on the following by overnight mail in a properly addressed envelope with adequate postage thereon, to:

Paul F. Brinkman
Alston & Bird LLP
The Atlantic Building
950 F Street N.W.
Washington, D.C. 20004

Stephen Richard Carden
McDonnell, Boehnen, Hulbert & Berghoff, Ltd.
300 South Wacker Drive
29th Floor
Chicago, IL  60606

Lora A. Moffatt
Salans
Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457

Philippe Bennett
Walter Scott
Lara A. Holzman
Sarah C. Hsia
Alston & Bird LLP
90 Park Avenue
New York, NY 10016

/s/  David T. Ralston, Jr._____
David T. Ralston, Jr.
D.C. Bar No. 104305

CHI2_643469.1