# GROUP
# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

▷

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
ABBOTT LABORATORIES, Plaintiff,
v.
AIRCO, INC., et al., Defendants.
**No. 82 C 3292.**

November 4, 1985.

MEMORANDUM DECISION AND ORDER
ROVNER, Judge.
**\*1** This matter is before this court on both Abbott's
and Airco's respective claims that certain documents,
sought to be produced by the opposing party, are
protected from disclosure by attorney-client privilege
or work product immunity. The attorney-client and
work product privilege claims involve literally
hundreds of documents demanded by both parties.
The district court agreed, however, to expedite
review of 11[FN1] contested Airco privilege claims and
five contested Abbott privilege claims because these
documents were relevant to certain depositions which
had to be adjourned pending disposition of the
privilege claims. This memorandum first will discuss
the general law governing these claims and then will
treat each claim individually.

This is a suit arising out of a license agreement
between Abbott Laboratories and Airco to sell and
market an inhalent anesthetic invented by Airco,
isoflurane, in countries outside the United States and
Canada. The dispositive issues are whether either
side breached the exclusive license agreement, in
Abbott's case, by its alleged failure to actively market
and sell isoflurane; in Airco's case, by its alleged
unlawful intrusion into Abbott's exclusively licensed
territories. Airco, Inc., is a Delaware corporation
with its principal place of business in Montvale, New
Jersey. Abbott Laboratories is an Illinois corporation
with its principal place of business in North Chicago,
Illinois. This court's jurisdiction rests on diversity of
citizenship. 28 U.S.C. § 1332.

*I. Choice of Law*

A threshold question on this motion is whether New
York, Illinois or federal law applies to the privilege

claims. Here, the contract on which this law suit is
based contains a choice of law clause which states,
'This Agreement shall be deemed to have been made
in and shall be construed in accordance with the law
of the State of New York, U.S.A.' Thus, any
questions regarding the substance and validity of the
contract are to be resolved by New York law.
Although the parties are given broad discretion to
'stipulate the substantive law to be applied to their
dispute,' id. at 531, discovery questions as to whether
a particular individual has a right to exercise a
privilege and whether documents prepared in
anticipation of litigation must be disclosed are
generally questions pertaining to the procedural
format of a case rather than the substantive issues.
Furthermore, it is well settled that both the Federal
Rules of Evidence and the Federal Rules of Civil
Procedure apply in diversity as well as federal
question and admiralty cases. Flaminio v. Honda
Motor Co., Ltd., 733 F.2d 463 (7th Cir.1984). State
law has little relevance to discovery in a federal
court. 8 Wright and Miller, Federal Practice and
Procedure § 2005. We turn, then, to those sources
for guidance.

*A. Attorney-Client Privilege Claims*

According to Federal Rule of Evidence 501, to the
extent that state law supplies the rule of decision on
an element of a claim or defense in a civil action, 'the
privilege of a witness, person, government, State or
political subdivision thereof shall be determined in
accordance with State law.' See 8 Wright and Miller
at § 2016 (pocket part); see also Slakan v. Porter,
737 F.2d 368, 377 (4th Cir. 1984). This rule applies
to diversity proceedings. Fed. R. Evid. 1101(c); Fed.
R. Civ. P. 26(b)(1). See also Armor Int'l. Co. v.
Worldwide Cosmetics, Inc., 689 F.2d 134 (7th Cir.
1982). This rule, however, provides no explicit
guidance as to which state's law regarding privilege is
to be applied in a diversity case. This court sits in
Illinois yet it is New York law which, under the
contract, provides the rule of decision on the
substantive claims. The court concludes that Illinois
law determines the scope of the parties' attorney-
client privilege.

**\*2** Federal courts have held that under Rule 501, a
district court exercising diversity jurisdiction must
apply the law of privilege which would be applied by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Group Exhibit 1

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

the courts of the state in which it sits. Samuelson v. Susen, 576 F.2d 546, 549 (3d Cir. 1978); Super Tire Engineering Co. v. Bundy, Inc., 562 F. Supp. 439, 440 (E.D. Penn. 1983); Buffington v. Gillette Co., 101 F.R.D. 400, 404 (W.D. Okla. 1980); Union Planters National Bank v. ABC Records, Inc., 82 F.R.D. 472, 473 (W.D. Tenn. 1979). We thus look to Illinois' law to determine whether New York or Illinois privilege rules apply. The court concludes that Illinois courts would hold that in the present situation the attorney-client privilege claims are questions of discovery and evidence and that, in determining the scope and validity of the privilege claims, Illinois law governs. See People v. Saiken, 49 Ill.2d 504, 509, 275 N.E.2d 381, 385 (1971) (evidentiary questions are generally governed by the laws of the forum); Ogdon v. Gianakos, 415 Ill. 591, 596, 114 N.E.2d 686, 689 (1953) (procedure is the machinery for carrying on the suit, including pleading, process, evidence and practice); People v. Wells, 380 Ill. 347, 354, 44 N.E.2d 32, 36 (1942) (questions of evidence are governed by the law of the forum, and the same general principle applies to the competency, admissibility, quality and degree of evidence); Jackson v. Shuttleworth, 42 Ill. App. 2d 257, --, 192 N.E.2d 217, 218 (3d Dist. 1963) (rules of evidence are matters of procedural law and depend upon the law of the forum). Thus, Illinois law on privileges will be applied to the attorney-client privilege issues before the court.

### B. Work Product Privilege Claims

Unlike Federal Rule of Evidence 501, Federal Rule of Civil Procedure 26(b)(3), governing the discovery of materials prepared in anticipation of litigation (i.e., work product), does not contain a clause requiring the district court in diversity actions to apply the law of the state in which it sits. Thus, in accordance with the principle that the Federal Rules of Civil Procedure apply to diversity actions and that state law has very little to do with federal discovery proceedings, resolution of any work product claims will be made under federal law.

### II. Attorney-Client Privilege in Illinois

Illinois law states the classic version of the attorney-client privilege:
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his

insistance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

People v. Adam, 51 Ill.2d 46, 48, 280 N.E.2d 205, 207, cert. denied, 409 U.S. 948, 93 S. Ct. 289, 34 L.Ed.2d 218 (1972). See Nieukirk v. Board of Fire & Police Commissioners, 98 Ill. App. 3d 109, 112, 423 N.E.2d 1259, 1261 (3d Dist. 1981). The person asserting the privilege has the burden of proving its existence. Shere v. Marshall Field & Co., 26 Ill. App. 3d 728, 730, 327 N.E.2d 92, 94 (1st Dist. 1974). The scope of the attorney-client privilege should be strictly confined within the narrowest possible limits. Consolidated Coal Co. v. Bucyrus-Erie Co., 89 Ill.2d 103, 118, 432 N.E.2d 250, 257 (1982) (citing 8 Wigmore, Evidence § 2291, at 554 (rev. ed. 1961).

*3 Concerning corporations, the Illinois Supreme Court adheres to an expanded version of the 'control group' test, whereby the only communications that are held privileged 'are those made by top management who have the ability to make a final decision . . ., rather than those made by employees whose positions are merely advisory.' The privilege extends to those 'employee[s] whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority.' Consolidated Coal Co., 89 Ill.2d at 120, 432 N.E.2d at 257-58 (citation omitted). The Illinois version of the corporate attorney-client privilege is considerably narrower than the federal version, which recognizes a privilege for 'confidential' communications between corporate employees who are not control group members and the corporation's attorneys.[FN2] As applied to the documents in question, however, unless the communicator of the alleged confidential communication is a member of the control group as set forth in Consolidated Coal, the documents are not privileged.

### III. Work Product Immunity in Federal Courts

Work product immunity from discovery was originally approved by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947), and was subsequently codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Under Rule 26(b)(3), work product immunity attaches (1) to documents and materials otherwise discoverable (2) which are prepared in anticipation of litigation or trial, (3) and by or for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

another party or that other party's representative (including his or her attorney, consultant, surety, indemnitor, insurer or agent). Work product immunity attaches even where litigation has not been threatened but is only a mere possibility. Upjohn Co. v. United States, 449 U.S. 383, 402, 101 S. Ct. 677, 689, 66 L.Ed.2d 584, 599 (1981). The Rule provides that ordinary work product may be discoverable only if the party seeking discovery can show (1) substantial need in preparation of the case and (2) that he is unable without undue hardship to obtain substantial equivalent of the materials by other means. This 'substantial need test' prevents 'an attorney from waiting while opposing counsel does investigative work and then simply requesting the fruits of such efforts via discovery.' Eirhart v. Libbey-Owens-Ford Co., 93 F.R.D. 370, 372 (N.D. Ill. 1981).

Rule 26(b)(3) contains mandatory language that the federal court 'shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.' This 'opinion work product' may not be discovered on a showing of substantial need and the inability to obtain the equivalent material without undue hardship. Upjohn at 402, 101 S. Ct. at 689, 66 L.Ed.2d at 599. Upjohn, although failing to set forth a standard when or even if such material could be discovered, concluded that a 'far stronger showing' than was contained in the Rule is required regardless of hardship. Id.

### IV. Contested Abbott Privilege Claims

*4 The five documents which Abbott claims are protected from discovery by the attorney-client privilege are certain notes written by Susan Mayer, then secretary to Charles Baker, who was Executive Vice President of Abbott's International Division. Basically, these notes transmit legal advice from Mark Barmak, Division Counsel at Abbott, or are requests to Barmak for such advice. Without having seen four of the five documents, Airco makes several general objections to Abbott's assertion of privilege.

First, Airco contends that the information provided by Abbott on its privilege claims is too 'sketchy'. Airco cannot adequately address the issue of whether these communications were confidential, whether the communications were made to attorneys for the purpose of obtaining legal advice, or whether the communications remained confidential.

The information provided by Abbott in its claims list, however, is adequate. The list provides as much information as is possible without disclosing the substance of the information sought to be protected. The privilege claims list sets forth the type of document, individuals involved, other recipients if any, nature of the document, plus the basis of the claim.

Airco's second argument is that Susan Mayer, the author of the allegedly privileged communications, is not a member of the control group. As secretary to Charles Baker, a member of the Abbott control group, Susan Mayer was acting as a ministerial agent of either counsel imparting legal advice to a member of the control group or top management requesting legal advice. A recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication. Furthermore, '[t]he client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then, by any form of agency employed or set in motion by the client is within the privilege.' 8 Wigmore § 2317 at 618 (McNaughton rev. 1961); 8 Wigmore § 2301 at 583. See People v. Knippenberg, 66 Ill. 2d 276, 362 N.E.2d 681 (1981) (client's communicatons to attorney's agent privileged); People v. Ryan, 40 Ill. App. 2d 352, 356, 189 N.E.2d 763, 765 (3d Dist. 1963) (the attorney-client privilege extends to the client's communication to an agent for transmission to the attorney), rev'd on other grounds, 30 Ill.2d 456, 197 N.E.2d 15 (1964). All of the documents indicate that Susan Mayer authored the notes at the behest of Charles Baker seeking legal advice, or Mark Barmak imparting legal advice. Thus, on this ground the documents retain their privileged status.

Airco's third contention is that summaries of legal advice cannot be privileged because the attorney-client privilege protects a client's confidences, not a lawyer's advice. Airco's assertion is ill-founded. Clearly, memoranda of information or advice directed to or received from an attorney, prepared by an agent of the client or attorney, as a record of that advice or request, are protected by the attorney-client privilege. That the notes simply highlight or outline relevant portions of the advice should in no way defeat the privilege. See C.N.R. Investments, Inc. v. Jefferson Trust and Savings Bank, 115 Ill. App. 3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

1071, 1074, 451 N.E.2d 580, 582 (3d Dist. 1983); c.f., Illinois Tool Works, Inc. v. K.L. Spring & Stamping Corp., 207 U.S.P.Q. 806, 807 (N.D. Ill. 1980) (intra-corporate communications recounting legal opinions and advice of counsel held protected).

**\*5** Finally, Airco asserts that if Ms. Mayer's documents reflect destruction of evidence or any other fraud, then there is no basis for a valid privilege claim. Although it is true that incidents of discovery abuse may justify overriding privilege claims, In Re Sealed Case, 754 F.2d 395 (D.C. Cir. 1985), a review of the documents reveals no evidence of legal advice given to perpetuate a fraud and the documents do not reflect the destruction of evidence. Absent further showing, Abbott's claims of privilege are not defeated on grounds of fraud.

### VI. In Camera Examination-Rulings

Under the above principles, the court has examined the documents submitted in camera and makes the following rulings:

Doc. 1112-Privileged.

Doc. 1375-Privileged.

Doc. 1505-Privileged.

Doc. 1680-Privileged.

Doc. 1690-Privileged. (This document is already in Airco's counsel's possession. Abbott now has demanded that it be returned. According to Airco, it was inadvertently given to them which may trigger a waiver of privilege. Abbott contends that it was given to Airco under the express condition that any claim of privilege would not be waived. This court has taken the view that truly inadvertent disclosure during discovery does not waive the privilege.)

### V. Contested Airco Privilege Claims

Abbott has challenged Airco's privilege claims on a series of documents involving two deponents, Donald Reich and Hume Matthews. Reich was the president and chief executive officer of Airco from 1979 to 1983. Prior to 1979, from 1973 to 1978, he held positions in Airco as senior vice president and executive vice president. In these positions he obviously meets the control goup criteria set forth in Consolidated Coal. Matthews, according to Airco, is

presently an outside attorney for Airco. He is a partner in a law firm which specializes in intellectual property law. Airco asserts that since 1976 Matthews has been consulted as outside counsel on a regular basis concerning, this dispute with Abbott. Prior to 1976, Matthews was Director of Patents, Trademarks, and Licensing at Airco. While an attorney with Airco he negotiated numerous license agreements, including the agreements at issue here.

With respect to these claims of privilege the court rules as follows:

#### a) R.16, R.18, R.19, R.20.

These claims are multiple copies and excerpts of a draft of an internal memorandum on the FDA's position on testing isoflurane for carcinogenicity. The memorandum was drafted by Edward Mashek, then Regulatory Affairs Attorney at Airco, and signed by Donald Reich, then senior vice president and executive vice president of Airco. The identity of its addressee is Mr. Mashek. The identity of other recipients is unknown. Airco asserts that the internal memorandum represents communications between the executive vice president of the corporation and corporate counsel and as such are attorney-client privileged.

In support of its challenge to the privilege claims on these documents, Abbott asserts three principle objections. First, the communications are not privileged because they contain no confidential information communicated or legal advice rendered. Second, the documents were prepared or received by corporate counsel acting in his business rather than legal capacity. Finally, Abbott asserts that Airco failed to meet its burden to prove that the communications were maintained within the control group because Airco represented that exactly who received the documents was unknown.

**\*6** In order to avail itself of the attorney-client privilege, Airco must at a minimum show that 'the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential.' Consolidation Coal, at 119, 432 N.E.2d at 257. The privilege does not apply to communications discussing business advice instead of legal advice. CNR Investments, at 1076, 451 N.E.2d at 583. Accord Matter of Walsh, 623 F.2d 489, 494 (7th Cir. 1980). Furthermore, in order for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

the communications between the attorney and his corporate client to be privileged, the attorney must be acting in his capacity as a professional legal advisor rather than a business advisor at the time the disclosures were made. Consolidated Coal, at 89, Ill. 2d, 432 N.E.2d at 257. Accord In Re Shapiro, 381 F. Supp. 21, 22 (N.D. Ill. 1974). Finally, where there is no indication as to whom the memorandum was directed, it cannot be said that the communication remained confidential and was only directed to members of the control group of the corporation asserting the privilege or was prepared with the intent that the same would remain confidential. CNR Investments, 115 Ill. App. 3d at 1076, 451 N.E.2d at 583.

Document R.16, a five-page document, appears to be a portion of the internal memorandum discussing the legal and business options of Airco in response to a letter from the FDA. Paragraphs 2-7 of the document contain legal alternatives whereas the remaining six paragraphs address business alternatives. In its November 1984 description, Airco indicated that it did not know who the addressee(s) of the memorandum was or whether there were any other recipients. In its subsequent Index of Work Product and Privilege Claims, dated April 2, 1985, Airco stated that Mashek received the memorandum but it was unknown whether there were any other recipients. Thus, to the extent Airco has not indicated whether other individuals have received the memorandum it has not met the 'control group' test threshold requirement that it show the communication 'was not disclosed except to certain authorized parties, i.e., the 'control group' of the corporation.' Id. Thus, R.16 is not privileged and should be disclosed.

Document R.18 is simply a photocopy of pages 1, 2, and 5 of R.16. These particular pages contain the 'legal advice' portion of R.16. For the reasons stated above, however, this document should be disclosed.

Document R.19 is simply a photocopy of pages 3 and 4 of R.16. These pages contain only 'business advice' and as such are not privileged and should be disclosed.

R.20 is a different draft of document R.16 and contains several different editing changes. None of the changes affect whether a particular paragraph contains legal or business advice. Thus, because Airco has not met its burden to show that the document was maintained within the control group, R.20 cannot be said to be privileged.

*b) R.35, R.48.*

*7 These claims are memoranda drafted by an in-house attorney reporting on conferences held between Airco representatives and representatives of the Food and Drug Administration (FDA). The memoranda advise members of the Airco control group of possible actions by the FDA. Airco claims that these memos represent legal advice and that if Abbott's claims regarding the 'summaries' of legal advice by Susan Mayer are upheld, Airco's claims should be accorded reciprocal treatment.

In support of its challenge to the privilege claims on these documents, Abbott claims the documents contain no requests for advice of counsel, advice of counsel or any other confidential attorney-client communications. Additionally, Abbott asserts that communication by lawyers acting as businessmen are not privileged and that the confidentiality of the communications must be maintained and not disclosed to third party. Abbott concludes that simply because a lawyer took notes of conversations between corporate officials and third parties does not make the communications privileged.

Abbott's position with respect to these documents is correct, and individual examination of the memoranda indicates that neither contains privileged communications. Any communication by a client to his attorney in the presence of a third person who is not an agent of the client or his attorney is not privileged nor would any communication by the client to a third person in the presence of his attorney be privileged. People v. Werhollick, 45 Ill.2d 459, 462, 259 N.E.2d 265, 266 (1970); In Re Busse's Estate, 332 Ill. App. 258, 262, 75 N.E.2d 36, 39-40 (2d Dist. 1947). See 8 Wigmore at § 1311. Concomitantly, any summaries of non-confidential conversations by an attorney who was present during the communications are similarly not privileged.

Document R.35 is a report prepared by Airco counsel to a member of the control group of a conference between Airco and members of the FDA that took place in April, 1976. The report contains no legal advice whatsoever and is merely a summary of the discussions and highlights of the meeting. Thus, since the conference was between Airco and a third party, the FDA, it contained no confidential communications and a summary of the proceedings is not privileged.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Document R.48 is a memorandum prepared by Airco counsel to the files summarizing a June, 1977 meeting between Airco employees and members of the FDA. The memoranda basically reviews the highlights of the meeting and although it briefly mentions possible FDA actions it contains no legal advice. The advice that it does contain appears to be business advice. Thus, this summary of a nonconfidential meeting between Airco employees and a third party is not privileged.

Airco's contention that these documents should be afforded the same treatment as Abbott's privilege claims concerning Susan Mayer's 'summaries' of legal advice is incorrect. The Mayer documents involved notes and 'summaries' of confidential communications given by a client to its counsel or by counsel to the client. Moreover, those communications were notes concerning legal advice. Documents R.35 and R.48 are, on the other hand, summaries and minutes of conversations which took place between the client and a third party. The communications were not intended to be confidential nor did they involve any legal advice.

### c) R.209, R.210, R.211

*8 These documents are duplicate copies of an internal memorandum discussing several of Airco's defense theories and options in this lawsuit (R.209, 210) plus a cover letter to Mr. Matthews that accompanied a copy of the memorandum (R.211). The document is a memorandum to the files drafted by Mr. Mashek, then Airco's Associate General Counsel and the in-house counsel in charge of this litigation. A copy of the memorandum was sent to Hume Matthews, who, prior to 1976, was an in-house attorney at Airco. After 1976 Mr. Matthews left Airco for private practice but according to Airco continued in his capacity as legal counsel and advisor to Airco. Other recipients of the memorandum were limited to three individuals on Airco's list of in-house and outside counsel.

In support of its challenge to the privilege claims, Abbott asserts that the documents are not privileged because they were disclosed to Matthews well after he left Airco and that confidential information which is disclosed to third parties is not privileged. Abbott also contends that the documents were dated less than two months before the preliminary injunction hearing and Matthews testified as a third party witness at the hearing. Abbott concludes that Airco's communications with a third party witness who is not a member of the control group are not privileged.

Although it is clear that the disclosure of confidential information to individuals outside the control group can result in a waiver of the attorney-client privilege, in this case the information was disclosed to a third party acting in his capacity as legal counsel and advisor to Airco. Document 211 clearly indicates that the memorandum was sent to Matthews as an Airco attorney, seeking any advice Matthews might have regarding the corporation's litigation strategy. Thus, the fact that Matthews had left Airco in 1976 is irrelevant because it appears that Airco had retained him as a legal advisor. Additionally, that Matthews testified at the preliminary injunction hearing does not affect the memorandum's confidentiality. The attorney-client privilege belongs to the client, not the attorney. Abbott does not allege that Matthews disclosed this confidential communication in his testimony. That the attorney is called as a witness and discloses confidential communications does not abrogate the privilege so long as the client objects to the disclosure of any confidential communications. See Newton v. Meissner, 76 Ill. App. 3d 479, 394 N.E.2d 1241 (1st Dist. 1979). Thus, the fact that Matthews testified at the preliminary injunction hearing is immaterial to the question of whether documents 209, 210 and 211 are privileged.

Finally, Abbott has not addressed Airco's claim that the memorandum is immune from discovery as work product. Examination of the memorandum indicates that it clearly falls within the mandatory language of Federal Rules of Civil Procedure 26(b)(3) regarding 'opinion work product'. The subject matter of the memorandum concerns issues regarding this litigation and contains Mashek's opinions, mental impressions and legal theories on the case. Thus, R.209 and R.210 are clearly opinion work product. Furthermore, under the federal rule, the work product privilege is not as easily waived as the attorney-client privilege by only partial disclosure or disclosure to third parties. See Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985); In Re September 1978 Grand Jury (II), 640 F.2d 49 (7th Cir. 1980); Nye v. Sage Products, Inc., 98 F.R.D. 452 (N.D. Ill. 1982). The work product privilege is not deemed waived by disclosure unless the disclosure is inconsistent with maintaining secrecy from possible adversaries. Stix Prod., Inc. v. United Merchants Mfg., Inc., 47 F.R.D. 334 (S.D.N.Y. 1969). The disclosure of the memorandum to Matthews is consistent with Airco's attempt to keep the information confidential. Matthews was in-house counsel to Airco and as an attorney in private practice was frequently relied on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 7

by Airco for legal advice. Thus, that Maschek sent a copy of documents R.208 and R.210 to Matthews does not abrogate their work product immunity.

**\*9** With respect to document R.211, this is simply Mashek's cover letter to Matthews accompanying the R.209/210 memorandum. The document does not reveal any confidences and merely solicits comments on the enclosed document. As such, R.211 does not appear to be work product or privileged and should be disclosed.

### d) R.216

Document R.216 is a letter from Matthews, then Director of Patent, Trademark and Licensing Activities at Airco, to W. D. Carroll, outside counsel to Airco, discussing possible antitrust implications of the 1970 Ethrane agreement with Abbott and requesting legal advice on the issue from Carroll. Matthews was one of the negotiators of the Ethrane agreement. R.216 then, appears to be privileged as a communication of confidential information to legal counsel and a request for legal advice.

Abbott contends, however, that the attorney-client privilege for this document has been waived because Matthews testified at the preliminary injunction hearing that the scope of Airco's retained rights for Forane were the result of those antitrust concerns. Abbott argues that a party cannot claim a privilege on a communication it has already used for its own benefit. Furthermore, Abbott asserts that Judge Getzendanner already ruled that documents authored by negotiators which address the interpretation of the agreement and the intent of the parties are not privileged and that many such documents have already been produced.

Airco agrees that neither side can claim a privilege for documents concerning the negotiations leading to the isoflurane agreement but contends that R.216 has nothing to do with the 1974 isoflurane negotiations. The letter, Airco asserts, was written years before the isoflurane negotiations began and additionally 'does not even shed light on the [1970] enflurane negotiations, because it was written after all the terms of the enflurane agreement had been fully negotiated.' Airco's Memorandum in Support of its Privilege Claims at 5. Finally, Airco contends that the only similarity between R.216 and Matthews' testimony is that both contain the word 'antitrust'. According to Airco, however, Abbott's 'waiver' argument is without merit because the word is used in

two entirely different contexts.

Abbott is correct that 'a party waives the attorney-client privilege when the contents of the privileged communications are put in issue by the party asserting the privilege.' In Matter of Continental Illinois Securities Litigation, 732 F.2d 1302, 1315 N.20 (7th Cir. 1974). Abbott, however, is incorrect when it asserts that Matthews testified that the scope of Airco's retained rights for Forane were the result of antitrust concerns arising out of the Ethrane agreement. At the preliminary injunction hearing, the context and content of Matthews' testimony clearly indicate that his testimony about his antitrust concerns referred to the negotiations surrounding the 1974 isoflurane agreement. Document R.216, however, discusses the 1970 Ethrane agreement. Beyond the general discussion of 'antitrust' concerns, R.216 and Matthews' testimony are not related. Thus, Airco did not waive the attorney-client privilege when Matthews testified at the injunction hearing.

**\*10** Finally, Judge Getzendanner's order regarding the disclosure of documents authorized by negotiators concerned the negotiators of the 1974 agreement which is the agreement at issue in this litigation. Thus, this order has no effect on document R.216 which relates to the 1970 agreement.

R.216 is privileged and must be returned.

### e) R.220

This document is a memorandum from Mashek to two members of the Airco control group advising them of topics Mashek anticipates will be the subject of their depositions. As such, it is unquestionably attorney-client and opinion work product privileged. See Sprock v. Peil, 759 F.2d 312 (3d Cir. 1985). Abbott has not asserted any special objections to this document. R.220 is thus privileged and should not be disclosed.

### ORDER

It is therefore ordered that the parties, within ten days hereof, disclose or return documents in conformity with this memorandum decision.

Under Rule 72(a), Fed.R.Civ.P., objections to this order must be filed with the district judge within ten days after its entry. Failure to object will constitute a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 8
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

waiver of objections on appeal.

JOAN HUMPHREY LEFKOW

United States Magistrate

> FN1  The district court originally agreed to
> review 13 contested Airco privilege claims.
> Claims on document nos. 29 and 199,
> however, are no longer a subject of dispute.
> See Airco's Memorandum in Support at 2.

> FN2  The federal version is set out in
> Upjohn Co. v. United States, 449 U.S. 383
> (1981), where the Supreme Court expressly
> rejected the 'control-group' test and found
> that the scope of the attorney-client privilege
> in the corporate context must be decided on
> a case-by-case basis.  The Seventh Circuit
> has adopted the 'subject matter' approach
> 'which would recognize the attorney-client
> privilege where an employee not within the
> control group of the corporation receives
> privileged communications whose subject
> matter is within the scope of the employee's
> duties.'  Illinois Tool Works, Inc. v. K.L.
> Spring & Stamping Corp., 207 U.S.P.Q.
> 806, 808 n.1 (N.D. Ill. 1981).

N.D.Ill. 1985.
Abbott Laboratories v. Airco, Inc.
Not Reported in F.Supp., 1985 WL 3596 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
ELKAY MANUFACTURING COMPANY,
Plaintiff,
v.
EBCO MANUFACTURING COMPANY,
Defendant.
**No. 93 C 5106.**

Feb. 15, 1995.

*MEMORANDUM, OPINION AND ORDER*
ANDERSEN, District Judge.
**\*1** On January 13, 1995, Magistrate Judge Rebecca Pallmeyer filed and served upon the parties her Report and Recommendation concerning defendant Ebco Manufacturing Company's ("Ebco") motion for sanctions and dismissal under Fed.R.Civ.P. 37(d). The Magistrate Judge recommended the imposition of sanctions against plaintiff Elkay Manufacturing Company ("Elkay"). Specifically, the Magistrate Judge recommended that Ebco be reimbursed for some--but not all--of the costs and fees it incurred as a result of discovery and conducting validity and infringement analyses. The Magistrate Judge also found that dismissal of the case was not warranted because Ebco has not shown that the injury it suffered cannot be remedied or that Elkay's misconduct actually compromised business, technical, or other activities not directly related to the conduct of this litigation.

After a careful consideration of the above-referenced motion for sanctions and dismissal, the applicable memoranda of law, other relevant pleadings, the Magistrate Judge's Report and Recommendation, Ebco's and Elkay's objections to the Report and Recommendation, Elkay's motion for leave to file objections and Ebco's opposition thereto, and Elkay's response to the objections of Ebco, this court hereby adopts in full the Magistrate Judge's Report and Recommendation on Ebco's motion for sanctions and dismissal.

*BACKGROUND*

In its original complaint, Elkay charged Ebco with infringement of Elkay's patent for a water cooler with a removable reservoir, upstanding feed tube, and special mounts. During the discovery period that followed, Elkay prosecuted five additional U.S. patent applications that were continuations of, or otherwise closely related to, the application for the original patent-in-suit. In spite of Ebco's requests for discovery of relevant pending patent applications, Elkay failed to disclose the existence of these five additional applications until after three of the patents had issued and Elkay had amended its complaint to add three new counts of patent infringement.

In its motion, Ebco asserts that Elkay's concealment of its patent applications was improper and caused severe prejudice to Ebco. Ebco moved for sanctions and dismissal of all four claims in Elkay's amended complaint. The Magistrate Judge found that Elkay's actions were wilful and improper. The Magistrate Judge found that Elkay's claim that its pending patent applications were covered by attorney-client privilege was frivolous, but that there is at least a good-faith argument that Elkay's applications were protected from discovery under the work-product doctrine. The Magistrate Judge recommended that sanctions be awarded to Ebco to recover certain costs incurred for discovery and infringement and validity analyses. However, because the injury to Ebco's litigation posture could be remedied, the Magistrate Judge concluded that the severe sanction of dismissal was not warranted.

*DISCUSSION*

In its objections to the Report and Recommendation, Ebco claims it is erroneous for the Magistrate Judge to conclude that there is a good faith argument that the applications were protected under the work-product doctrine when she found that Elkay had acted in "bad faith." Ebco claims that case authority precludes work product immunity with respect to patent applications filed at the U.S. Patent and Trademark Office and that Elkay's work product objection was improper and frivolous. Ebco claims Elkay's "bad faith" warrants dismissal of the action.

**\*2** We agree with the Magistrate Judge that there is at least an arguable basis for asserting the work-product privilege. Production of pending patent applications

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 2
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

is an unsettled area of the law. Accordingly, we agree with the Magistrate Judge's conclusion that "Elkay's theory for maintaining the confidentiality of its patent applications may be novel but it is not clearly frivolous." Hence, the Magistrate Judge was correct in failing to dismiss the lawsuit.

Elkay has also filed objections to the Report and Recommendation.[FN1] Elkay first argues that its objections and responses to Ebco's discovery requests were appropriate and proper. Specifically, Elkay argues that its attorney-client privilege objection was not frivolous because portions of the patent application files maintained by Elkay's attorneys constitute communications that might be validly protected by the attorney-client privilege. However, we find, as did the Magistrate Judge, that Ebco's discovery requests clearly encompassed patent applications filed in the U.S. Patent and Trademark Office. The Magistrate Judge correctly found Elkay's discovery responses to be "wholly inadequate", making it impossible for Ebco to determine which objection or objections were in fact being asserted and why. We agree with the Magistrate Judge's conclusion that Elkay's claim of attorney-client privilege was frivolous and made in bad faith. Therefore, Elkay's claim is rejected.

Elkay also claims that Ebco's motion was premature because Elkay defied no order of this court and sanctions are therefore improper. However, we find, as did the Magistrate Judge, that Elkay's discovery responses were "incomplete and non-responsive, if not deliberately evasive" such that "Elkay's efforts to invoke attorney-client privilege and work-product immunity were improper, invalid and sanctionable." Sanctions under Rule 37(d) do not require violation of a prior court order as a prerequisite. An evasive discovery response is no response at all. Rule 37(a)(3). Therefore, we find that the sanctions ordered by the Magistrate Judge were appropriate.

Finally, Elkay maintains that even if sanctions were proper, Elkay should be given an opportunity to take curative steps and that the severity of the sanctions should be mitigated by Ebco's own conduct. We reject this argument. Elkay has acted in bad faith and has given no reason why it should be allowed to take curative steps. Moreover, we are unable to find an instance of a failure by Ebco to comply with the rules which would serve to mitigate the sanctions.

*CONCLUSION*

Following de novo review of this matter, this court accepts and adopts the January 13, 1995 Report and Recommendation of Magistrate Judge Pallmeyer. Accordingly, this court orders that defendant Ebco's motion for sanctions is granted and that portion of the motion seeking dismissal of this action is denied. The Magistrate Judge shall determine, at a time and in a manner she deems appropriate, the dollar amount of the sanctions. Both Ebco's and Elkay's objections to the Magistrate Judge's Report and Recommendation are overruled. It is so ordered.

*REPORT AND RECOMMENDATION*
PALLMEYER, United States Magistrate Judge.
**\*3** Defendant Ebco Manufacturing Company ("Ebco") has moved for sanctions and dismissal under Rule 37(d) of the Federal Rules of Civil Procedure. [FN1] In its original complaint, Plaintiff Elkay Manufacturing Company ("Elkay") charged Ebco with infringement of Elkay's patent for a water cooler with a removable reservoir, upstanding feed tube, and special mounts. During the discovery period that followed, Elkay prosecuted five additional U.S. patent applications that were continuations[FN2] of or otherwise closely related to the application for the original patent-in-suit. In spite of Ebco's requests for discovery of relevant pending patent applications, Elkay failed to disclose the existence of these five additional applications until after three of the patents had issued and Elkay had amended its complaint to add three new counts of patent infringement.

Ebco asserts that Elkay's concealment of its patent applications was improper and caused severe prejudice to Ebco. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Ebco has moved for sanctions and dismissal of all four claims in Elkay's amended complaint. For reasons explained more fully below, the court agrees that Elkay's actions were wilful and improper. The court concludes, further, that Elkay's claim that its pending patent applications were covered by attorney-client privilege is frivolous, but that there is at least a good-faith argument that Elkay's applications were protected from discovery under the work-product doctrine. The court recommends that sanctions be awarded to Ebco to recover certain costs incurred for discovery and infringement and validity analyses. Because the injury to Ebco's litigation posture can be remedied, however, and because the court concludes that Elkay's wrongdoing did not affect Ebco's business and technical decisions, the court concludes that the severe sanction of dismissal is not warranted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

*FACTUAL AND PROCEDURAL BACKGROUND*

In August 1993, Elkay filed suit against Ebco for wilful infringement of Elkay's <u>U.S. Patent No. 5,222,531 (the "'531 patent")</u>. Discovery commenced in September 1993 when the parties served requests for documents and other materials. (Pl.'s Mem. Opp. at 3-4.)

Of particular interest to the present motion are Defendant's First Requests for Production of Documents and Things, Nos. 1-50 (hereinafter "Def.'s First Reqs."), which Ebco served on September 10, 1993 and to which Elkay responded on October 18, 1993. Ebco's attorney Stuart Lowry was aware that Elkay's '531 patent was a continuation of its <u>U.S. Patent No. 5,122,778 (the "'778 patent")</u>, which had been the subject of an earlier lawsuit between Elkay and Ebco. <u>FN3</u> (Pl.'s Mem. Opp. at 3; Lowry Decl. ¶ 13.) Lowry was also aware that both the '531 and '778 patents were continuations of Elkay's patent application U.S. Serial No. 257,627 (the "'627 application"), which Elkay had filed in October 1988 and subsequently abandoned in favor of these other applications. (Pl.'s Mem. Opp. at 3; Def.'s Mem. Supp. at 2, 4 n.2; Lowry Decl. ¶ 13.)

*4 Consequently, when Lowry drafted Ebco's first document requests, he included language to cover not only the '531 patent itself but also any pending patent applications relating to or continuing from the '531 patent and/or the '627 application. Four of Ebco's first fifty document requests specifically refer to Elkay's pending patent applications. Specifically, in Request No. 37, Ebco sought *inter alia* "[e]ach and every U.S. patent application" that claimed the benefit of the filing date of the '531 patent and/or the '627 application. <u>FN4</u> (Def.'s First Reqs., No. 37.) In Request No. 17, Ebco sought all documents relating to "each and every issued patent, pending patent application and/or abandoned patent application" filed in any foreign country and referring to the '531 patent, the '778 patent, or the '627 application. <u>FN5</u> (Id., No. 17.) Request No. 3 covered documents relating to "United States patents or to pending or abandoned United States patent applications" that listed the same inventors as the '531 patent and covered the same type of device described in the '531 and '778 patents and the '627 application. <u>FN6</u> (Id., No. 3.) Finally, Ebco's Request No. 4 included all documents relating to "each and every patent or patent application" that covered the same kind of technology described in the '531 and '778 patents. <u>FN7</u> (Id., No. 4.)

Elkay served a twenty-seven page response, of which the first five-and-a-half pages consisted of a General Statement and thirteen General Objections to Ebco's requests. (Plaintiff's Responses to Defendant's First Requests for Production of Docs. and Things, Nos. 1-50 (hereinafter "Pl.'s Resps. to Def.'s Reqs."), Ex. 8 to Lowry Decl.) In General Objection 6, Elkay stated that it objected to each of Ebco's document requests "to the extent that they may be seeking documents protected by the attorney-client privilege, the work product doctrine, or both."<u>FN8</u> (Id. at 4.) Elkay's remaining twelve General Objections, which are not at issue here, generally challenge Ebco's document requests to the extent that they are vague, overly broad, duplicative, irrelevant, unduly burdensome, and/or seek materials outside the possession or control of Elkay. (Id. at 1-6.)

Elkay referenced these General Objections in every one of its responses to Ebco's fifty requests. To each of Ebco's four requests that mentioned pending patent applications (Request Nos. 3, 4, 17, 37), Elkay raised no more specific objections but gave the same general response:

Subject to and without waiver of or prejudice to the General Objections stated above, Elkay will produce or make available for inspection, responsive, relevant, non-privileged documents, if any, within its possession, custody or control at a mutually agreeable time and location.

(Id., Response Nos. 3, 4, 17, 37.)

Ebco does not allege, nor does the record indicate, that Ebco challenged the vague and repetitive nature of Elkay's responses at the time they were received. Nor is there any indication that Ebco sought to compel production of privilege logs or otherwise attempted to require Elkay to identify any documents it was withholding on grounds of privilege.

*5 Instead, Ebco's initial objection was to the timeliness of Elkay's initial responses.<u>FN9</u> Moreover, during the next three months Lowry sent three letters to Elkay's attorneys Pamela Ruschau and Berton Sheppard complaining about delays in document production. (Letters from Lowry to Ruschau and Sheppard of 11/1/93, 12/16/93, and 1/6/94, enclosed as Ex. 10 to Lowry Decl.) In the last of these letters, Lowry wrote that he would set up a Local Rule 12(k) conference preparatory to a <u>Rule 37</u> motion if Elkay did not produce the documents Ebco had requested. (Letter from Lowry to Sheppard of 1/6/94, Ex. 10 to Lowry Decl.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

The parties conferred on January 12, 1994, at which time Elkay agreed to produce copies of its foreign patent applications. (Lowry Decl. ¶ 10; Sheppard Decl. ¶ 6.) The parties disagree, however, whether anything was said regarding Elkay's U.S. patent applications. Lowry maintains that Sheppard said he would produce "patent application documents covered by the production requests," which suggested to Lowry that Elkay would produce any pending U.S. patent applications stemming from its '627 application. (Lowry Decl. ¶ ¶ 10, 15.) Sheppard, on the other hand, maintains that "no mention" was made of any pending U.S. patent applications. (Sheppard Decl. ¶ 6.) What is clear is that even though Elkay produced over 1,100 pages of documents in late February 1994 that related to its foreign patent applications, it produced no documents that pertained to or even identified any of its U.S. patent applications.[FN10] (Lowry Decl. ¶ 12.) Based on the contents of Elkay's document production, its written responses to Ebco's document requests, and Sheppard's remarks on January 12, Lowry concluded that Elkay had no other pending U.S. patent applications stemming from the '627 application, despite his original suspicions to contrary. (Lowry Decl. ¶ ¶ 13, 15.)

Unbeknownst to Ebco, however, Elkay had in fact filed five patent applications in March and May of 1993, which it had prosecuted while pursuing the present suit. (Pl.'s Mem. Opp. at 3.) Each of these five applications was a continuation of Elkay's '531 patent, its '778 patent, its '627 application, and/or a related application that became U.S. Patent No. 5,222,530. (Pl.'s Mem. Opp. at 3; see also copies of patents attached as Exs. 2-6 to Lowry Decl.) In addition, each application had the same specifications and drawings as the '778 patent (first suit) or the '531 patent (present suit), and each listed the same six inventors as did the '531 patent. (Pl.'s Mem. Opp. at 3; Exs. 1-6 to Lowry Decl.) Elkay explains that by filing the new applications, it sought to obtain for its inventions different patent claims and legal protection, which a court would more likely find been infringed by Ebco. (Pl.'s Mem. Opp. at 3, 9.) Indeed, as soon as three of the new patents issued in March 1994, Elkay amended its complaint to add three claims of infringement of them.[FN11] (Am. Compl. ¶ ¶ 15, 22, 29.)

*6 The first time Ebco learned of the existence of these three patents was on April 27, when Lowry heard that Elkay was seeking leave of court to amend its complaint. (Lowry Decl. ¶ 16.) In a letter dated May 2, Lowry protested Elkay's action, its failure to produce its U.S. patent applications during discovery, and the injurious impacts this tactic had had on Ebco's litigation strategy. (Letter from Lowry to Sheppard of 5/2/94, Ex. 11 to Lowry Decl.) In two letters to Lowry and a Local Rule 12(k) conference on May 4, 1994, Sheppard responded that Elkay's pending U.S. patent applications had been withheld on the basis of attorney-client privilege and work-product immunity; that these objections had been raised in Elkay's initial responses to Ebco's document requests; and that he had never offered to produce Elkay's U.S. patent applications.[FN12] (Lowry Decl. ¶ 18; Sheppard Decl. ¶ ¶ 7-10; Letters from Sheppard to Lowry of 5/4/94 and 5/6/94, Exs. 2 and 3 to Sheppard Decl., respectively.) During their May 4 conference, Sheppard also revealed that Elkay had recently been issued two additional patents--U.S. Patent Nos. 5,295,518 and 5,284,188--based on the same technology. (Lowry Decl ¶ 16; Letter from Lowry to Sheppard of 5/4/94, Ex. 16 to Def.'s Reply; Def.'s Mem. Supp. at 4.)

Lowry replied that all of Elkay's responses had been evasive and noninformative; that Elkay's objections were not in good faith; that its failure to produce its pending U.S. patent applications had misled Ebco into believing that no such applications existed; and that concealment of the applications had caused great prejudice to Ebco. (Lowry Decl. ¶ 18; Letter from Lowry to Sheppard of 5/4/94, Ex. 16 to Defendant Ebco's Reply to Plaintiff Elkay's Opposition to Motion for Dismissal and Sanctions Under Rule 37(d).) On May 18, 1994, Ebco filed its Motion for Dismissal and Sanctions under Rule 37(d), which is now before this court.

### DISCUSSION

"Discovery under the Rules [of Civil Procedure]," a court in this district once explained, "changed the entire concept of litigation from a cards-close-to-the-vest approach to an open-deck policy. It seeks to facilitate open and evenhanded development of the facts underlying a dispute, so that justice may be delivered on the merits and not shaped by surprise or like tactical stratagems." American Floral Services, Inc. v. Florists' Transworld Delivery Ass'n, 107 F.R.D. 258, 260 (N.D. Ill. 1985) (Shadur, J.). Ebco alleges that Elkay violated this principle and the rules enforcing it by deliberately concealing the existence of its pending U.S. patent applications during discovery. The court agrees.

The court's conclusion rests on an analysis of three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

issues raised in Ebco's motion: (1) whether Elkay's efforts to invoke attorney-client privilege and work-product immunity were properly made; (2) whether Elkay's objections to production had any good-faith basis; and (3) whether Elkay's conduct actually prejudiced Ebco. (*See* Notice of Motion and Motion by Defendant Ebco Manufacturing Company for Dismissal and Sanctions under Rule 37(d) (hereinafter "Def.'s Motion") at 2-3.) These issues are discussed below.

### 1. *Whether Elkay's claims of privilege and immunity were proper and timely*

**\*7** The first issue to be addressed is whether Elkay's efforts to invoke attorney-client privilege and work-product immunity were proper and timely when made. Elkay, of course, maintains that they were. Elkay mentioned both of these objections in its General Objection No. 6 and promised to produce only "responsive, relevant non-privileged documents" in its responses to Ebco's requests. (Pl.'s Resps. to Def.'s Reqs., Ex. 8 to Lowry Decl.)

In this court's view, however, Elkay's objections and responses were wholly inadequate. As a party objecting to a document request, Elkay had a duty to state clearly the reasons for its objections so that Ebco would have had the opportunity to challenge the validity of these objections. Fed. R. Civ. P. 34(b); *Smith v. Logansport Community School Corp.,* 139 F.R.D. 637, 648 (N.D. Ind. 1991); *AM Int'l, Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 256 (N.D. Ill. 1981). Elkay was also required to identify those parts of Ebco's requests to which it was objecting and the reasons for each objection, while permitting inspection of the remaining (non-privileged) portions of the request. Fed. R. Civ. P. 34(b).[FN13] *See also Amcast Indus. Corp. v. Detrex Corp.,* 138 F.R.D. 115, 121 (N.D. Ind. 1991) ("A party resisting or objecting to a document request under a claim of privilege will usually be required to identify and list all documents which it seeks to withhold ...."); *AM Int'l,* 100 F.R.D. at 256 ("relevant documents for which a privilege is claimed must be identified"); *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 301-02 (E.D. Pa. 1980) ("mere claim of privilege does not justify a refusal to identify properly the information and documents requested"); *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F. Supp. 1429, 1439-40 (D. Del. 1989) (a party claiming attorney-client privilege and work-product immunity is not excused from specifically identifying the allegedly privileged items).

Elkay's responses, however, amounted to nothing more than a "laundry list" of objections that were merely conclusory and therefore invalid. *Cf. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (merely intoning the "overly broad and burdensome" litany, without more, does not express a valid objection). From reading Elkay's responses, it was impossible for Ebco to know whether Elkay was objecting to a particular document request; to which part of that request Elkay was objecting; which of its thirteen General Objections were relevant to that request; which documents, if any, Elkay agreed to produce and which it was withholding as privileged; and whether Elkay had other reasons not stated in its response for excluding materials from the collection of "responsive, relevant, non-privileged documents" it ultimately produced. Even if one were to focus only on General Objection No. 6, it is impossible to know which of the two different objections mentioned therein--attorney-client privilege and work-product immunity--applied to a particular request or why. As Defendant points out, it was not until late April or early May 1994--some seven months after Ebco had served three requests explicitly seeking Elkay's pending U.S. patent applications--that Ebco finally learned that Elkay had filed five continuation applications, that Elkay had objected to production of the applications, and that its objections had been based on attorney-client privilege and work-product immunity. Elkay's behavior runs completely contrary to the liberal discovery policy underlying the Federal Rules of Civil Procedure. Consequently, the court agrees with Ebco that Elkay's responses were incomplete and non-responsive, if not deliberately evasive.

**\*8** Given Elkay's sluggish production of even non-privileged documents,[FN14] the court is unpersuaded by Elkay's argument that Ebco itself is to blame because it did not seek to exchange privilege logs, serve an interrogatory, or otherwise attempt to identify the material Elkay regarded as immune from discovery. (*See* Pl.'s Mem. Opp. at 11-12.) The Federal Rules make clear that it is the party objecting to discovery who must identify and explain the basis for its objections, Fed. R. Civ. P. 34(b), just as it is the party asserting a privilege who bears the burden of establishing its existence. *See In re Application of Minebea Co.,* 143 F.R.D. 494, 499 (S.D. N.Y. 1992); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 207 (N.D. Ind. 1990). Furthermore, any inaction on Ebco's part must be viewed in the context of its overall difficulty in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

getting Elkay to produce *any* of the requested documents, let alone to identify which documents it considered privileged or not. The net effect is that Elkay's responses served to impede rather than facilitate discovery and are therefore sanctionable. *See Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 154-55 (7th Cir. 1976)* (award of expenses justified when party's evasive, incomplete answers appeared to impede rather than facilitate discovery). While Ebco's own behavior in this matter may affect the severity of the sanctions, it in no way relieves Elkay of its burden of complying with the rules of discovery.

Elkay makes several other equally unsuccessful attempts to escape responsibility for its actions. Elkay claims that Ebco is to blame for any deficiency in discovery because Ebco supposedly "overlooked the obvious fact that Elkay had other pending patent applications" and therefore failed to recognize that Elkay was withholding the applications from discovery. (*See* Pl.'s Mem. Opp. at 7.) In fact, however, far from "overlooking" the matter, Ebco served three document requests--Requests Nos. 3, 4, 37--that specifically sought production of any of Elkay's pending U.S. patent applications that involved the same technology or inventors as the '531 patent or were otherwise related to the original patent-in-suit. Thus, Elkay's assertion that any prejudice to Ebco is the result of its own "oversight" (*id.*) is factually inaccurate at best, if not wholly disingenuous.

Elkay also attempts to implicate Ebco by pointing out that it was Ebco that originally invoked attorney-client privilege and work-product immunity without providing any lists identifying such documents.[FN13] Thus, Elkay argues, Ebco is employing a "double standard" by condemning Elkay for asserting these same doctrines. (Pl.'s Mem. Opp. at 12.) This argument, like the others, falls flat. The responses to which Elkay is referring were served in 1992 in connection with Elkay's *first* suit against Ebco and are therefore irrelevant to the suit now before this court. (*See* Ebco's responses and supplemental responses, Exs. D-I to Elkay's Sur-Reply to Defendant Ebco's Motion for Dismissal and Sanctions Under Rule 37(d) (hereinafter "Pl.'s Sur-Reply").) Elkay has not presented any evidence that Ebco acted improperly with regard to discovery undertaken in this case. Moreover, even if Elkay did have valid objections to Ebco's conduct, the proper course of action would have been for Elkay to confer with Ebco and, if necessary, file the appropriate motion with this court to compel discovery. Instead,

Elkay improperly took matters into its own hands by failing to abide by the rules of discovery for privileged documents. Elkay's argument on this point amounts to nothing more than a cry of "you started it!"--the kind of statement one hears on playgrounds but which has no place in a court of law. *See Willemijn Houdstermaatschaapij, 707 F. Supp. at 1440* ("'unclean hands' arguments have no relevance to a motion to compel").

*9 Finally, Elkay asserts that Ebco's protest is moot because the patent applications in question are now publicly available from the PTO and have been delivered to Ebco. (Pl.'s Mem. Opp. at 1; Pl.'s Sur-Reply at 3-4.) Ebco, however, points out that Elkay delivered copies of the applications only the same day as it served its sur-reply--June 17, 1994--even though Elkay's sur-reply suggested that they had been provided at some earlier time. (Ebco's Response to Elkay's Sur-Reply re Ebco's Motion to Dismissal [sic], at 1-2; Pl.'s Sur-Reply at 1, 3.) More importantly, the fact that a party ultimately produces requested material does not absolve it of its original failure to produce. *Tec-Air, Inc. v. Nippondenso Mfg. USA,* No. 91 C 4488, 1994 U.S. Dist. LEXIS 2026, at *21 (N.D. Ill. 1994). *See also Reich v. ABC/York-Estes Corp., 157 F.R.D. 668, 677 (N.D. Ill. 1994)* (sanctions may be appropriate even after offending party made tardy production of long-requested documents) citing *inter alia Crown Life Ins. Co. v. Craig, 995 F.2d 1376 (7th Cir. 1993); United States v. Di Mucci, 879 F.2d 1488 (7th Cir. 1989).* Moreover, a party has an "absolute duty to respond" to a discovery request and "must take reasonable steps to ensure that [its] responses are complete and accurate." *Tec-Air,* 1994 U.S. Dist. LEXIS 2026, at *17, citing *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co., 667 F.2d 600, 604 (7th Cir. 1981)* (absolute duty) and *Fautek v. Montgomery Ward & Co., 96 F.R.D. 141, 145 (N.D. Ill. 1982)* (reasonable steps). In this case, Elkay neither fulfilled its duty nor ensured that its original responses were complete and accurate. These failings cannot be excused by its decision to deliver the applications some nine months after Ebco had originally requested them.

In light of the foregoing, it is not necessary to determine whether Elkay's October 18 responses were tardy, as Ebco asserts. Even if they were timely served, the responses themselves were at best incomplete, a deficiency that is tantamount to a failure to respond under the Federal Rules. *See Fed. R. Civ. P. 37(a)(3); Airtex Corp., 536 F.2d at 155.* Consequently, Elkay's efforts to invoke attorney-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

client privilege and work-product immunity were improper, invalid, and sanctionable.

### 2. Whether Elkay's claims of privilege and immunity have a good-faith basis

To some extent, the court's conclusion in the preceding section renders the second issue moot. Elkay's behavior was such that its objections must be overruled regardless of their merit. Nonetheless, an analysis of the substantive basis of Elkay's objections is relevant to the scope of the sanctions to be recommended.

Elkay invokes two doctrines--work-product immunity and attorney-client privilege--to justify concealing its five U.S. patent applications from Ebco. Elkay bears the burden of establishing the applicability of either doctrines. See *In re Application of Minebea Co., 143 F.R.D. at 499; Golden Valley Microwave Foods, 132 F.R.D. at 207.* Assuming for the moment that Elkay had properly raised these claims (which it did not), the court finds that Elkay had at least some arguable basis for invoking work-product immunity but no basis at all for invoking attorney-client privilege.

### A. Work-product immunity

*10 Briefly, the work-product doctrine entitles a party to withhold documents that it has prepared in "anticipation of litigation." *Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947).* Absolute immunity is given to documents that would otherwise reveal an attorney's "mental impressions, conclusions, opinions, or legal theories." *Fed. R. Civ. P. 26(b)(3).* In this way, the courts hope to encourage creativity and rigor in litigation while discouraging "leaching," laziness, and other temptations. *Hewlett-Packard Co. v. Bausch & Lomb, Inc., 116 F.R.D. 533, 536-39, 544-47 (N.D. Cal. 1987). See also Willemijn Houdstermaatschaapij, 707 F. Supp. at 1442-43* (in patent infringement action, work-product doctrine shields attorney's memoranda, recorded mental impressions, synopses of witness statements, drafts of documents and tangible materials prepared in anticipation of litigation); *Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 6 (N.D. Ill. 1980)* ("[t]he key to determining the applicability of the immunity is whether or not the papers are prepared in anticipation of litigation").

As a general rule, both work-product immunity and

attorney-client privilege may apply to counsel's activities in preparing and prosecuting a patent application and performing other patent-related legal representation. *See Research Inst. for Medicine and Chemistry, Inc. v. Wisconsin Alumni Research Found., 114 F.R.D. 672, 674 (W.D. Wis. 1987).* Nevertheless, neither party has cited a single case in which a court has directly held that a patent application filed with the PTO in anticipation of future litigation is (or is not) attorney work-product and therefore immune (or not) from discovery. Most of the cases cited by the parties involved infringement of extant patents; thus, the relevant patent applications were already in the public record, *37 C.F.R. § 1.11(a) (1993),* or were voluntarily produced by the patentee. *See, e.g., Golden Valley Microwave Foods, 132 F.R.D. at 211* (patentee voluntarily produced applications for patents at issue). In those cases cited wherein a party did object to discovery of its patent applications, the party's objections--and the court's analysis--rested on the relevancy or scope of the request but not work-product immunity. *See Willemijn Houdstermaatschaapij, 707 F. Supp. at 1441* (finding party's request for all pending patent applications was overly broad and ordering production only of those patents, patent applications, and licenses pertaining to the litigation); *Bott v. Four Star Corp., 675 F. Supp. 1069, 1075 (E.D. Mich. 1987), aff'd, 856 F.2d 202, cert. denied, 448 U.S. 968 (1988)* (relevant patent applications are important because they may contain admissions). *See also Ares-Serono, Inc. v. Organon Int'l B.V., 862 F. Supp. 603, 607-08 (D. Ma. 1994)* (disclosure of patent applications, including abandoned applications, should be compelled "only where they have a direct bearing on the issues being litigated"); *Key Technology, Inc. v. Simco/Ramic Corp., 137 F.R.D. 322, 324-25 (D. Or. 1991)* (denying production of final histories of pending or abandoned applications for patents not in suit as being overly broad and irrelevant).[FN16]

*11 Thus, this court is faced with an issue of first impression--whether the five patent applications Elkay had filed and prosecuted while this suit was pending would have been immune from discovery as attorney work product. In arguing against immunity, Ebco relies on a series of cases that have held that work-product immunity does not apply to draft patent applications and related materials prepared for patent prosecution because *ex parte* proceedings are non-adversarial and the materials are not prepared in anticipation of litigation. *See Golden Valley Microwave Foods, 132 F.R.D. at 211-12; Choat v. Rome Indus., Inc., 462 F. Supp. 728, 732 (N.D. Ga.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 8
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

1978) (work-product immunity does not apply to papers relating to the preparation and prosecution of a patent application in an *ex parte* proceeding); *Interlego A.G. v. F.A.O. Schwarz, Inc.,* 196 U.S.P.Q. 8, 12 (N.D. Ga. 1977) (draft patent application not privileged because work-product immunity does not apply to preparations for *ex parte* patent prosecutions); *Electronic Memories & Magnetics Corp. v. Control Data Corp.,* 188 U.S.P.Q. 449, 450 (N.D. Ill. 1975) (work-product privilege does not apply to patent application in *ex parte* proceeding). Ebco argues that the doctrine should be extended from draft applications to the applications themselves; thus, Elkay had no basis to withhold its patent applications as attorney work product.

Elkay points out, however, that the general rule about work-product immunity and *ex parte* proceedings may not apply here. A number of courts have held that when a draft application or other patent-related document is prepared in the context of an adversarial proceeding--as opposed to a non-adversarial, *ex parte* proceeding--the document may be immune as attorney work product. For example, in *Oak Indus. v. Zenith Electronics Corp.,* 687 F. Supp. 369 (N.D. Ill. 1988), Judge Grady of this court concluded that work-product immunity did not protect plaintiff from disclosure of the mental impressions and legal theories of the attorney responsible for the original patent prosecution. The work product doctrine did, however, bar discovery of such mental impressions formed during a reexamination proceeding involving the "same central issue" as the infringement case before the court. *Id.* at 374-75. *See also Hewlett-Packard,* 116 F.R.D. at 536-41, 544-47 (work-product immunity shielded draft "reply" prepared by patentee's outside counsel during reexamination proceeding); *Choat,* 462 F. Supp. at 732 (work-product immunity applies to materials prepared for contested proceeding but not to the preparation and prosecution of a patent application in an *ex parte* proceeding); *Interlego,* 196 U.S.P.Q. at 12 (application of work-product immunity should be limited to materials prepared for contested proceedings and should not include materials prepared for *ex parte* proceedings, such as patent prosecutions); *Electronic Memories & Magnetics Corp.,* 188 U.S.P.Q. at 450 (work-product privilege applies to documents prepared when litigation is contemplated or when contested proceedings, such as patent interference, are being held, but not to *ex parte* patent prosecution); *In re Application of Minebea Co.,* 143 F.R.D. at 499 (the rule that work performed by an attorney to prepare and prosecute patent applications in an *ex parte* proceeding is not immune

does not preclude application of the work-product doctrine to work performed in anticipation of litigation). In this case, Elkay filed its five continuation applications specifically to obtain new patent claims that would serve as the foundation for future litigation against Ebco. Thus, Elkay argues that its applications were immune from discovery because they were prepared "in anticipation of litigation" and reflected the "mental impressions" of Elkay's attorneys regarding the strengths and weakness of the patents held by the respective parties. *See* Fed. R. Civ. P. 26(b)(3) (work-product rule).

\*12 Ebco is correct in pointing out that none of these cases involved patent applications that had been actually submitted to the PTO; rather, the cases involved discovery disputes over draft applications or other materials that had never been filed with the PTO. Moreover, the court recognizes that Elkay is seeking to obtain the best of both worlds by prosecuting its applications in secret (thereby preserving the non-adversarial character of these *ex parte* proceedings) while planning to use the resultant patents in future litigation. It is not necessary for the court to reach a decision on this issue here, however. Instead, this court is concerned only with the question whether Elkay had at least a good-faith basis for arguing that its U.S. patent applications were protected by work-product immunity. Elkay has met that minimal burden.

A patent is a complex legal document that occupies the central role in an infringement action; thus, it is reasonable to conclude that a patent application constitutes attorney work product that may contain the mental impressions of the attorney. *See Sperry v. Florida,* 373 U.S. 379, 383 (1963) (describing patent as one of the most difficult legal instruments to draft); *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.,* 144 F.R.D. 372, 376-77 (N.D. Cal. 1992) (role of the lawyer in preparing a patent application is primarily a legal rather than a business or technical service); *Bio-Rad Labs., Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 127 (N.D. Cal. 1990) (noting in *dicta* that a draft patent application may include mental impressions of attorney). This conclusion is particularly valid when the attorney is preparing the patent with specific litigation in mind, as was the case here. Thus, given that there is precedent for extending work-product immunity to *draft* patent applications prepared in anticipation of litigation, it is not unreasonable to extend the benefit of that immunity to the applications themselves.

In reaching this conclusion, the court notes that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

patent applications are normally kept confidential until the patent is issued.[FN17] 35 U.S.C. § 122 (1988); 37 C.F.R. § § 1.11, 1.14 (1993). Although these provisions do not necessarily prevent discovery of applications during litigation, see Crown Mach. & Tool Co. v. KVP-Sutherland Paper Co., 244 F. Supp. 543 (N.D. Cal. 1965), in some cases courts have balanced one party's interest in maintaining the confidentiality of its applications against the opposing party's need for the material and its relevance to the lawsuit. See, e.g., Fischer Imaging Corp. v. Lorad Corp., 148 F.R.D. 273, 274-75 (D. Colo. 1993) (denying access to patent applications due to insufficient showing of direct relevance or need necessary to overcome interest in maintaining confidentiality of applications); Ideal Toy Corp. v. Tyco Indus., Inc., 478 F. Supp. 1191, 1192-95 (D. Del. 1979) (denying production of file wrappers of pending and abandoned patent applications where party failed to make convincing showing of necessity to pierce secrecy inherent in patent proceedings); Crown Machine & Tool, 244 F. Supp. at 544 (concluding that defendant was entitled to production of pending patent applications, subject to the restriction that the documents would be reviewed in camera so that the court could determine what parts were relevant and could be allowed into evidence).

*13 Had this issue been timely presented to the court, Ebco could have easily established relevance because the five continuation applications were so closely related to the original patent-in-suit. On the other hand, the court would have given some consideration to the fact that Ebco and Elkay are close competitors, a factor that weighs in favor of maintaining confidentiality. See Fischer Imaging Corp., 148 F.R.D. at 274. Again, this issue is not one that the court must resolve today. What is important is that production of a pending patent application is not a foregone conclusion. In this light, Elkay's theory for maintaining the confidentiality of its patent applications may be novel but it is not clearly frivolous.

### B. Attorney-client privilege

Unfortunately, the same cannot be said of Elkay's claim that patent applications are protected by attorney-client privilege. Whereas Elkay has made some effort to justify its claim of work-product immunity, it has made no arguments nor cited any legal authority to establish attorney-client privilege, despite the fact that it carries the burden of persuasion on this matter.    [FN18] Golden Valley

Microwave Foods, 132 F.R.D. at 207.

Elkay's lack of interest in pursing this doctrine is revealed by its attempt to distinguish Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1 (N.D. Ill. 1980), a case that Ebco had cited for its holding that "papers, communications and documents relating to ex parte patent proceedings" are not immune from discovery. Elkay commented that because the Sneider court had made this comment in reference to attorney-client privilege, the principle is "inapposite" to Elkay's argument in favor of work-product immunity. (Pl.'s Mem. Opp. at 10.) While this assertion may be technically correct, Elkay missed the bigger issue that attorney-client privilege is one of its own reasons for objecting to production of its patent applications. (See letters from Sheppard to Lowry of 5/4/94 and 5/6/94, Exs. 2, 3 to Sheppard Decl.) By asserting that Sneider was "inapposite" without saying anything more, Elkay was suggesting (inadvertently perhaps) that attorney-client privilege was immaterial to the present discussion, despite its earlier claims to the contrary.

Elkay's failure to make any attempt to justify its claim of attorney-client privilege is sufficient reason for the court to conclude that it did not make this objection in good faith. Yet there are other, even more compelling reasons to find that Elkay's claim was frivolous. Attorney-client privilege extends only to communications made in confidence between a client and the client's lawyer, acting in his or her capacity as a legal advisor. See Shearing v. Iolab Corp., 975 F.2d 1541, 1546 (Fed. Cir. 1992); Sneider, 91 F.R.D. at 3. Elkay's patent applications fail this basic test. Regardless of the collaboration between Elkay and its attorneys in preparing the draft applications, the final applications are not communications between Elkay and its attorneys. Rather, they were transmitted from Elkay through its attorneys to the PTO, which stands outside their attorney-client relationship. See Shearing, 975 F.2d at 1546 (absence of attorney-client relationship defeats claim of attorney-client privilege). Moreover, the element of confidentiality is also missing. Some courts have held that attorney-client privilege does not apply to patent applications because the applicant and its attorneys owe the PTO a duty of disclosure; thus, the absence of attorney-client privilege would not stifle the free exchange of ideas between the attorneys and their client.    [FN19] See McNeil-PPC, Inc. v. Procter & Gamble Co., 136 F.R.D. 666, 670-71 (D. Col. 1991); Sneider, 91 F.R.D. at 7 (the demand for complete candor with the PTO means that draft patent applications and related materials are not

Not Reported in F.Supp.                                                                                                          Page 10
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

privileged). Finally, it is arguable that the application that Elkay finally sent to the PTO--in contrast to the drafts and attorney-client communications Elkay and its attorneys used to prepare the application--did not represent legal advice from the attorneys to their client. *See In re Application of Minebea Co., 143 F.R.D. at 502* (whereas attorney-client privilege protects communications seeking or conveying legal opinions, it does not protect communications--such as client affidavits, oaths, or declarations-- that the applicant prepared with the intention that they would be transmitted by the attorney to the PTO); *McNeil-PPC, 136 F.R.D. at 670* (an application signed and sworn by the client and filed with the PTO by the attorney on client's behalf "might be considered a communication for relay and not for the attorney's ears alone," whereas the same could not be said of the attorney-client communications that had been used to prepare the application); *Sneider, 91 F.R.D. at 5* (rejecting claim of privilege where "[i]t is not apparent" that patent disclosures and draft patent applications are "principally legal in nature or for purposes of legal advice"); *Hewlett-Packard, 116 F.R.D. at 542* (a communication consisting largely of technical information for transmittal of the PTO, rather than legal advice, is not covered by privilege).

**\*14** None of these arguments is rock-solid, yet the court notes with dismay that its own brief discussion of attorney-client privilege amounts to far more than what Elkay has prepared on the subject, which is nothing. In the absence of any effort by Elkay to present any arguments or authority to the contrary, the court finds that Elkay's claim of attorney-client privilege was frivolous and made in bad faith.

### 3. *Whether Elkay's actions actually prejudiced Ebco*

In the first section of this report, the court concluded that Elkay had breached its duty to inform Ebco about the documents it intended to withhold and its specific objections to discovery. In the second section, the court found that even if Elkay's objections had been made properly, its claim of attorney-client was intrinsically weak and was not made in good faith, although its claim of work-product immunity had at least a colorable, non-frivolous basis in law. In this light, the court now considers the sanctions that should be awarded to Ebco.

Ebco describes a number of ways in which it has been prejudiced by Elkay's improper concealment of its pending U.S. patent applications. Specifically,

Ebco contends that its trial preparation and strategy must start anew; its infringement and validity analyses have been rendered inapplicable; its legal advice regarding the potential stakes of litigation have been mooted; its efforts to redesign its product line so as to avoid infringement have been obstructed; its production, sales, and other business decisions must be reassessed and, if necessary, changed at great expense; its remaining pretrial discovery period has been effectively shortened; and its costs of discovery will escalate because Ebco must now assume that Elkay is hiding other documents and information. (Def.'s Mem. Supp. at 3, 10-11.) Ebco is seeking the maximum penalty--sanctions plus dismissal of all four claims in Elkay's amended complaint--in order to prevent Elkay from taking advantage from its actions and to discourage future abuse. (*Id.* at 4.)

Dismissal, however, is the sanction of last resort, which is to be applied only after less serious alternatives have been tried without success. *Tec-Air,* 1994 U.S. Dist. LEXIS 2026, at \*15. Although the harm has already been done in this case, there are several factors that serve to mitigate the penalty that should be imposed on Elkay. As Plaintiff points out, even if Elkay had revealed its pending patent applications, it could have designated the documents as "Restricted Confidential" in accordance with the protective order issued in this case; thus, only Ebco's attorneys would have had access to the applications. (Pl.'s Mem. Opp. at 1, 14.) Since Ebco's business managers would not have been able to view the material, it is unlikely that Ebco's business, sales, or production decisions would have been substantially changed. Similarly, Ebco's redesign efforts would have remained much the same, given that Ebco's engineers would not have had access to the new applications, and even if they had had such access, the applications rested on the same specifications and drawings as the original patent-in-suit. Finally, Ebco was improperly denied knowledge of the patent applications only from October 1993 (when Elkay served its initial responses) to April 1994 (when Elkay amended its complaint)--a relatively brief six-month period. Although Ebco claims that business decisions "involving untold thousands of dollars and thousands of man-hours" have been undermined (Def.'s Mem. Supp. at 10), Ebco has not presented any evidence that this six-month delay caused such devastating impacts on its business that dismissal is warranted. This is in stark contrast to *Tec-Air,* a case cited by Ebco, wherein the moving party had expended over a million dollars for discovery and trial preparation. *Tec-Air,* 1994 U.S. Dist. LEXIS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

2026, at *13. For these reasons, the court recommends that Ebco's motion for dismissal of Elkay's four claims be denied.

**\*15** This is not to suggest that Ebco suffered no harm at all, however. Ebco insists it will incur higher costs in conducting discovery, trial preparation, and validity and infringement analyses than it would have incurred had Elkay been more forthcoming. Moreover, Elkay's record on producing even non-privileged documents has been less than exemplary, while Ebco asserts that it had to wait some nine months after its first document requests before Elkay finally provided copies of the desired patent applications. Also, given that Ebco did not learn about Elkay's evasiveness until after the fact, Elkay's incomplete answers may be held to be equivalent to no answers at all. See *Airtex Corp.,* 536 F.2d at 155 (evasive or incomplete answers are tantamount to no answer at all and may be sanctioned under Rule 37 where evasiveness cannot be determined until after there have been further proceedings on the matter and a motion to compel has been rendered useless). Finally, Elkay's concealment of its applications was a wilful act deliberately calculated to benefit its litigation strategy, and such concealment rested in part on a frivolous claim of attorney-client privilege.

For these reasons, the court believes that Ebco is entitled to recover something more than just the additional expense it incurred as a result of Elkay's impropriety but something less than dismissal of Elkay's four claims. Consequently, this court recommends that Ebco be reimbursed for all costs and fees it incurred for discovery from the time that Elkay served its initial responses on October 18, 1993 to the time that Ebco learned of the three new patents on April 27, 1994, as well as its costs and fees associated with any validity and infringement analyses it conducted between these two dates. In addition, the court should entertain Ebco's request for recovery of costs and fees it incurred from April 27, 1994 to the end of discovery in connection with discovery and infringement and validity analyses of Elkay's three new patents (the '854, '855, and '519 patents). Finally, the court should continue to monitor closely the course of discovery to ensure that no other abuses occur.

*CONCLUSION*

The court finds that Elkay's responses to Ebco's initial documents were vague and incomplete, and that its efforts to invoke attorney-client privilege and

work-product immunity were therefore invalid. Elkay should have specifically identified the documents it was withholding, as well as its specific objections to discovery. Furthermore, Elkay's claim that the patent applications it had submitted to the PTO were protected by attorney-client privilege was frivolous, unsubstantiated, and made in bad faith. By contrast, Elkay did present a novel, non-frivolous argument that such applications should be immune from discovery from attorney work product.

For these reasons, the court believes that sanctions are warranted. As described above, the court recommends that Ebco be reimbursed for some--but not all--of the costs and fees it incurred as a result of discovery and the validity and infringement analyses it conducted on the four patents at issue. Dismissal, however, is not warranted because Ebco has not shown that the injury it suffered cannot be remedied or that Elkay's misconduct actually compromised business, technical, or other activities not directly related to the conduct of this litigation.

**\*16** Date: January 13, 1995

> FN1. Ebco claims that since Elkay's objections were filed outside the ten day period contained in Fed.R.Civ.P. 72(b), we should not consider the merits of Elkay's objections. However, we reject that argument and find that Elkay's objections were timely filed. Upon receiving the Report and Recommendation, Elkay's counsel contacted Judge Andersen's minute clerk to confirm the deadline for filing objections. The minute clerk confirmed that Elkay's objections filed on January 31, 1995 would be timely. Therefore, we will consider the merits of Elkay's objections.

> FN1. This court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1338(a) because Elkay's claims arise under federal patent law, specifically 35 U.S.C. § § 271, 281 (1988). Venue is proper in the Northern District of Illinois because Defendant conducts business activities in this judicial district.

> FN2. A "continuation application" is one that is filed during the pendency of an application previously filed by the same inventor and that discloses and claims only subject matter disclosed and claimed in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

original or parent application. *Reynolds Metals Co. v. Continental Group, Inc.,* 525 F. Supp. 950, 970 (N.D. Ill. 1981). The effective filing date of an continuation application is the filing date of the previous application. *See* 35 U.S.C. § 120 (1988); 37 C.F.R. § § 15.3(b), 1.60(b), 1.62 (1993). *See also Orthman Mfg., Inc. v. Chromalloy American Corp.,* 512 F. Supp. 1284, 1293 (C.D. Ill. 1981).

Elkay emphasizes that there is nothing improper about filing a continuation application, even one that covers a competitor's product. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Dismissal and Sanctions under Rule 37(d) (hereinafter Pl.'s Mem. Opp.) at 6-7.) The applications themselves, however, are not an issue. The real issue is whether Elkay was required to disclose the applications during discovery.

FN3. Elkay had sued Ebco in April 1992 for infringement of Elkay's U.S. Patent No. 4,629,096 (the '"096 patent"). Elkay subsequently amended its complaint on June 16, 1992 to add a claim for infringement of its '778 patent, which had issued the same day. (Pl.'s Mem. Opp. at 2.) The parties agreed to settle their dispute over the '096 patent (*id.* at 2 n.1), and the district court, finding no direct or contributory infringement of the '778 patent, granted Ebco's motion for summary judgment. *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 92 C 2487, 1993 WL 69676, 1993 U.S. Dist. LEXIS 3074 (N.D. Ill. March 9, 1993) (Marovich, J.). After the district court denied Elkay's petition for a new trial and entry of a new judgment, *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 92 C 2487, 1993 WL 312666, 1993 U.S. Dist. LEXIS 11229 (N.D. Ill. Aug. 12, 1993), Elkay filed a petition for permission to appeal on August 19, 1993--the day before it filed the present action. Elkay's appeal, which was filed by permission of the Court of Appeals for the Federal Circuit, *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 1994 WL 745639, 1994 U.S. App. LEXIS 9466 (Fed. Cir. Apr. 20, 1994), is still pending at the time of this writing.

FN4. Request No. 37 states:
Request No. 37: Each and every U.S. patent application claiming the benefit of the filing date of U.S. Patent No. 5,222,531 and/or claiming the benefit of the filing date of U.S. application Serial No. 257,627, filed October 14, 1988.
(Def.'s First Reqs., No. 37.)

FN5. Request No. 17 states:
Request No. 17: All documents and things referring or relating in any way to each and every issued patent, pending patent application and/or abandoned patent application filed in any country or countries other than the United States, referring or relating to the subject matter of any one of U.S. Patent Nos. 5,222,530; 5,222,531; 5,121,778; or U.S. Serial No. 257,627.
(Def.'s First Reqs., No. 17.)

FN6. Request No. 3 states:
Request No. 3: All documents and things referring or relating in any way to United States patents or to pending or abandoned United States patent applications listing the same inventors as the '531 patent and referring or relating in any way to liquid dispensing systems that include a feed tube.
(Def.'s First Reqs., No. 3.)

FN7. Request No. 4 states:
Request No. 4: All documents and things referring or relating in any way to each and every patent or patent application assigned or licensed, expressly or by implication, to Elkay Manufacturing Company, and referring or relating to liquid dispensing systems that include a feed tube.
(Def.'s First Reqs., No. 4.)

FN8. In its entirety, General Objection 6 states:
6. Elkay objects to each of the production requests propounded by the Defendant to the extent that they may be seeking documents protected by the attorney-client privilege, the work product doctrine, or both. Nothing contained in these responses or the documents produced is intended to be, or should be, considered as a waiver of any attorney-client privilege, the work product doctrine, or any other such privilege or doctrine. To the extent that any production request may be construed as calling for production of documents protected by any such privilege or doctrine, a continuing objection to each and every such production

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

request is hereby imposed, and Elkay plans to withhold documents to which the objection applies, including where Elkay's general response is that it will produce the documents requested. Elkay is willing to provide and exchange lists of documents withheld by reason of any claim of attorney-client privilege or work product protection as soon as possible following the production of requested non-privileged documents. (Pl.'s Resps. to Def.'s Reqs., at 4.)

FN9. Briefly, Ebco asserts that Elkay's October 18 responses were served five days after the deadline provided in Rule 34 of the Federal Rules of Civil Procedure; consequently, Ebco claims that "any and all [of Elkay's] objections are waived." (Letter from Lowry to Ruschau of 10/20/93, Ex. 9 to Lowry Decl.; Lowry Decl. ¶ ¶ 6-8.) Elkay, however, maintains that its responses were timely because the effective date of Ebco's requests was delayed until September 13, 1993, when Ebco's attorney filed his appearance with the court. (Sheppard Decl. ¶ 3, Ex. B to Plaintiff's Mem. Opp.; Letter from Ruschau to Lowry of 9/15/93, Ex. 2 to Sheppard Decl.) This dispute is not material to the resolution of Ebco's motion.

FN10. The interval between the parties' January 12 conference and Elkay's document production in late February 1994 was partly the result of the January 17, 1994 earthquake in Northridge, California, which delayed Ebco's inspection of Elkay's documents, and partly the result of the special handling and copying needed for the many oversized engineering drawings requested by Ebco. (Lowry Decl. ¶ 11; Pl.'s Mem. Opp. at 4.)

FN11. The three new patents named in Elkay's amended complaint are U.S. Patent Nos. 5,289,854 (the "'854 patent"), 5,289,855 (the "'855 patent"), and 5,295,519 (the "'519 patent"). (Exs. 2-4 to Lowry Decl.)

FN12. Ebco claims that the first time that Elkay specifically asserted that its applications were covered by attorney-client privilege and/or work-product immunity was during the parties' telephone conference on May 4, 1994. (Def.'s Reply, at 3 n.2.)

FN13. The parties do not mention Rule 26(b)(5), a new addition to the Federal Rules of Civil Procedure that states this requirement even more clearly:

(5) *Claims of Privilege or Protection of Trial Preparation Materials.* When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. Fed. R. Civ. P. 26(b)(5) (1994). The Advisory Committee on Rules further explains:

Paragraph (5) is a new provision. A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

*Id.* advisory committee's note.

Elkay may argue that Rule 26(b)(5) does not apply to the present action because it went into effect on December 1, 1993--some two months after Elkay had served its responses but nearly five months before Elkay revealed that it had been withholding U.S. patent applications. *See* Supreme Court Order of April 22, 1993 (stating that amendments to Federal Rules taking effect on December 1, 1993 "shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending"). This court notes, however, that Rule 26(e) imposes on parties and counsel a duty to supplement discovery responses as appropriate. In light of Ebco's failure to address the rule change, the court will apply the version of the Rules that was in effect at the time the parties served their requests and responses in September and October 1993.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 14
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

FN14.  The records shows that Ebco had to threaten Elkay with a Rule 37 motion in January 1994 before Elkay would produce anything.

FN15.  Absent the appropriate motion and evidence from Elkay, this court is in no position to determine whether Ebco's responses and claims of privilege were in fact improper.

FN16.  Neither party cited either *Ares-Serono* or *Key Technology.*

FN17.  Elkay invoked the confidentiality of its patent applications in its correspondence with Ebco (Letters from Sheppard to Lowry of 5/4/94 and 5/6/94, Ex. 2 and 3 to Sheppard Decl., respectively) but did not raise this issue in its briefs on Ebco's motion. In fact, neither party has discussed this issue or the relevant cases cited by this court.

FN18.  In a letter to Ebco's counsel, Elkay's attorney did cite two cases to justify its claims of attorney-client privilege and work-product immunity, but he did not explain how either case supported the former doctrine. (Letter from Sheppard to Lowry of 5/6/94, Ex. 3 to Sheppard Decl.) In fact, one of the cases he cited does not even mention attorney-client privilege, other than to observe that the parties to that case had unfortunately failed adequately to distinguish between that privilege and work product. *Oak Indus.,* 687 F. Supp. 369, 375 n.10. In the second case, the court held that although attorney-client privilege may apply to *ex parte* patent proceedings, an attorney-client communication that represents a business service (such as passing technical information to the PTO) rather than legal advice is not privileged. *See Hewlett-Packard,* 116 F.R.D. at 542-43. As discussed in the text above, *Hewlett-Packard* may actually detract from Elkay's position to the extent that the case indicates that a patent application filed with the PTO--unlike drafts and other materials used to prepare the application--may not represent legal advice between an attorney and his client, and thus may not be covered by attorney-client privilege.

FN19.  Of course, confidentiality under attorney-client privilege is separate and distinct from the confidentiality provided under the patent laws and regulations or work-product immunity.

N.D.Ill.,1995.
Elkay Mfg. Co. v. Ebco Mfg. Co.
Not Reported in F.Supp., 1995 WL 389822 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:93cv05106 (Docket) (Aug. 20, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                Page 1
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
AVERY DENNISON CORPORATION, Plaintiff,
v.
UCB FILMS PLC, Defendant.
**No. 95 C 6351.**

Sept. 30, 1998.

MEMORANDUM OPINION AND ORDER

KEYS, Magistrate J.
**\*1** This matter comes before the Court on three of UCB FILMS PLC's motions to compel
production of discovery documents and deposition testimony: Defendant's Motion to
Compel Production of Withheld Evidence; Defendant's Motion to Compel Withheld Rule
30(b)(6) Testimony; and Defendant's Motion to Compel Production of Withheld
Documents 943 and Reissue Application of Patent 4,888,075. For the reasons set
forth below, each of Defendant's motions are granted in part, and denied in part.

BACKGROUND

Plaintiff, Avery Dennison Corporation ("Avery"), seeks to enforce several of its
patents, among them United States Patent number 4,713,273, (" '273"), in an
infringement action against Defendant, UCB Films PLC ("UCB"). These patents pertain
to the manufacture of certain types of plastic films used in adhesive labels and
packaging. Prior to bringing the present lawsuit, Avery licensed two other
companies to use these patents.

During the negotiation of the first such licensing agreement, Avery's opponent,
seeking leverage in the negotiations, notified Avery of the existence of a patent
held by a third party, United States Patent number 3,515,626 (the "Duffield"
patent).[FN1] Because the Duffield patent predated Avery's '273 patent, if it covered
the same material, it could have invalidated Avery's patent claims.[FN2] Hence, during
the negotiation of the first licensing agreement, Avery had its in-house and
outside patent attorneys analyze the potential impact of the Duffield patent. Based
on these legal studies, Avery elected to amend the '273 patent [FN3] to avoid an
apparent overlap with the Duffield patent. Avery drafted, and signed, a reissue
application for submission to the PTO.[FN4] However, shortly before the successful
close of the licensing agreement negotiations, Avery changed its mind and decided
not to file the reissue application.[FN5] UCB now seeks information with regard to
Avery's preparation of the original patents (which Avery is enforcing in the
present lawsuit against UCB), as well as materials on Avery's decision to draft,
and subsequently withdraw, the reissue application prepared during the course of
the licensing agreement negotiations.

FN1. A patent granted by the U.S. Patent and Trademark Office ("PTO") is a
public document. In preparing patent applications, patent attorneys are
expected to conduct a search of the PTO for earlier patents.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 2
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

FN2. Under the United States Code's requirement of "novelty," a patent is invalid if "the invention was known or used by others in this country, or patented ..., before the invention thereof by the applicant for patent." 35 U.S.C. 102(a). "Prior art... [i]n patent law, includes any relevant knowledge, acts, descriptions and patents which pertain to, but predate, the invention in question ." BLACK'S LAW DICTIONARY 1193 (6th ed.1990).

FN3. At this point, Avery apparently also decided to amend other patents. Unless otherwise noted, however, this Opinion's references to "the reissue application" pertain only to the '273 patent.

FN4. Because of the requirement of novelty, upon discovering evidence of prior art, a patent holder may amend its patent to be sure that it does not cover the same material as the prior art. 35 U .S.C. 252. To amend, the patent holder surrenders the original patent to the PTO and asks the PTO to reissue the patent, modified to eliminate any overlap with the prior art. Id.

FN5. Avery has since alleged that the decision to withdraw the reissue application was based on a renewed study of the Duffield patent by its in-house and outside counsel. Presumably this second set of studies concluded that the Duffield patent did not, in fact, cover the same material as Avery's '273 patent.

UCB's recent motions are only the latest in a protracted discovery dispute. A Special Master [FN6] has already reviewed, *in camera,* over 800 documents withheld by Avery on the grounds of attorney-client privilege and the work-product doctrine.[FN7] This Court will defer to the Special Master's determinations on the appropriateness of Avery's privilege claims and will not conduct an independent review of the withheld documents.

FN6. Former District Court Judge Nicholas Bua was appointed Special Master, with the agreement of the parties.

FN7. Especially pertinent to UCB's present motions, the Special Master found the drafted reissue application itself not protected from discovery, and it has already been produced.

DISCUSSION

I. *Defendant's Motion to Compel Production of Withheld Documents and Testimony*

Avery designated its in-house patent counsel, Arthur Moore, under Federal Rule of Civil Procedure 30(b)(6), to give testimony on behalf of Avery concerning its licensing of the '273 patent and its other efforts to enforce that patent. In eleven days of deposition testimony, spanning well over a year, Mr. Moore consistently refused to answer questions about Avery's decision to draft, and subsequently withdraw, the reissue application. During Mr. Moore's depositions, Avery's outside counsel invariably objected to these questions on the ground that such information was protected by the attorney-client privilege and work-product doctrine. Five months ago, however, in Mr. Moore's twelfth day of deposition testimony, Avery changed its mind, and allowed Mr. Moore to answer some of these questions. When asked about what facts Avery had possessed that led it to draft the reissue application, Mr. Moore referred to the (then ongoing) licensing agreement

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

negotiations, and its notification of the existence of the Duffield patent during
those negotiations. Responding to a question about what facts came to light prior
to Avery's withdrawal of the drafted reissue application, Mr. Moore answered that
Avery's outside patent counsel conducted a legal study of the Duffield patent.

**\*2** UCB contends that Avery is relying upon the advice of its counsel to prove its
good faith belief in the validity of the '273 patent, while shielding that advice
from meaningful scrutiny under the attorney-client privilege and work-product
doctrine. UCB alleges that it will be materially prejudiced if it is not allowed to
test Avery's assertion of good faith. Further, UCB cites *Makula v. Sanwa Business
Credit Corp.,* Nos. 96 C 7138, 96 C 7695, 1997 U.S. Dist. LEXIS 11741, at \*5
(N.D.Ill. Aug. 7, 1997), in arguing that Avery waived the protections of both the
attorney-client privilege and work-product doctrine when it allowed Mr. Moore to
testify regarding Avery's decision to draft, and then withdraw, the reissue
application. Based upon this alleged waiver, UCB asks for an extremely wide range
of evidence, both documentary and testimonial, relating to the reissue application.

Avery counters that the Special Master has already determined the discoverability
of its decisions to draft and withdraw the reissue application. Avery also
maintains that UCB argues waiver solely because Mr. Moore, as a Rule 30(b)(6)
designee, also happens to be an attorney.[FN8] However, that fact, without more, does
not waive any privilege. *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995).

> FN8. Despite Avery's assertions, this does not appear to be the basis of
> UCB's argument.
> Avery also refers to an out of context statement that "this court,"
> presumably referring to the United States District Court for the Northern
> District of Illinois, has refused to uphold waivers, and further argues that
> UCB's motion violates Local Rule 12(k) and Federal Rule of Civil Procedure
> 37(a)(2) concerning pre-motion conferences. These meritless arguments do not
> warrant further discussion.

### A. Attorney-Client Privilege

In addressing these arguments of privilege and waiver, this Court first notes that
the scope of discovery should be broad in order to aid the search for truth. *United
States v. White,* 950 F.2d 426 (7th Cir.1991); *Ziemack v. Centel Corp.,* No. 92 C
3551, 1995 WL 314526, at \*2 (N.D.Ill. May 19, 1995). Therefore, courts commonly
look unfavorably upon anything that significantly restricts this scope. *Allendale
Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D.Ill.1993); *Ziemack,*
1995 WL 314526, at \*2. Because the attorney-client privilege and work-product
doctrine obscure the search for truth, both should be confined to their narrowest
possible limits in order to minimize the impact upon the discovery process. *White,*
950 F.2d at 430; *Ziemack,* 1995 WL 314526, at \*2.

The Seventh Circuit has adopted Professor Wigmore's formulation of the essential
elements of the attorney-client privilege: (1) where legal advice of any kind is
sought; (2) from a professional legal advisor in his capacity as such; (3) the
communications relating to that purpose; (4) made in confidence; (5) by the client;
(6) are at his instance permanently protected; (7) from disclosure by himself or by
the legal advisor; (8) except the protection be waived. 8 WIGMORE § 2292; *White,*
950 F.2d at 430 (adopting Wigmore's elements of the privilege); *Ziemack,* 1995 WL
314526, at \*2. The party seeking to invoke the attorney-client privilege bears the
burden of establishing all of the privilege's elements. *White,* 950 F.2d at 430;
*Ziemack,* 1995 WL 314526, at \*2. Additionally, the claim of privilege cannot be a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

blanket claim; it must be established on a document-by-document and question-by-question basis. *Id.*

**\*3** Not every disclosure from a client to an attorney is entitled to protection from discovery. *In re Air Crash Disaster at Sioux City, Iowa,* 133 F.R.D. 515, 518 (N.D.Ill.1990); *Ziemack,* 1995 WL 314526, at \*3. Furthermore, communications from attorney to client fall under the privilege only to the extent that they reveal confidential information provided by the client. *Sioux City,* 133 F.R.D. at 518; *Ziemack,* 1995 WL 314526, at \*4. Thus, communications from the attorney to the client should be deemed privileged only if the statements do in fact reveal, directly or indirectly, the substance of a confidential communication by the client. *Id.*

At one time there was authority rejecting the attorney-client privilege with respect to communications between a client and her patent attorney, on the theory that the patent attorney more closely resembled a technician than a legal advisor. *Amsted Indus. Inc. v. National Castings, Inc.,* No. 88 C 0924, 1990 U.S. Dist. LEXIS 8699, at \*3 (N.D.Ill. July 13, 1990). This view, however, has been generally rejected as "courts have consistently held that confidential communications between attorney and client for the purpose of securing legal advice concerning preparation or prosecution of a patent application are protected ...." *Id.* at \*3(collecting cases); *see also Natta v. Zletz,* 418 F.2d 633 (7th Cir.1969)(holding that the duty of full disclosure mandated by the federal patent laws does not preclude the proper application of the attorney-client privilege and work-product doctrine).

Under Wigmore's formulation, the privilege does not protect technical information, such as a description of an invention, communicated by a client to a patent attorney for the purpose of preparing a patent application where the communication does not request any legal interpretation. *Amsted,* 1990 U.S. Dist. LEXIS 8699, at \*5 (citing *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 147 (D.Del.1997)). Under this analysis, several courts have found that client communications describing prior art, which do not expressly request legal advice, are not privileged. *C & F Packing Co ., Inc. v. IBP, Inc.,* No. 93 C 1601, 1997 U.S. Dist. LEXIS 15389, at \*7 (N.D.Ill. Sept. 29, 1997)(citing *Amsted,* 1990 U.S. Dist. LEXIS 8699, at \*2). According to the *C & F Packing* court, prior art is primarily technical, not legal, information. *Id.* (citing *Sneider v. Kimberly-Clark, Corp.,* 91 F.R.D. 1, 5 (N.D.Ill.1980)). Communication that merely contains the study of prior art, unless legal issues predominate, is not privileged. *Id.* (citing *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 U.S. Dist. LEXIS 10300, at \*12 (N.D. Ill. June 19, 1987)).

In the present case, the Special Master has already reviewed the documents which UCB seeks; those pertaining to Avery's decision to draft, and then withdraw, the reissue application. The Special Master has, thus, determined which ones merely convey technical information, and which ones expressly seek legal advice such that they fall within the attorney-client privilege. For the following reasons, this Court finds that Avery has waived the attorney-client privilege with respect to its legal analysis of the Duffield patent.

**\*4** Disclosure of an otherwise confidential communication to a third party waives the attorney-client privilege. *Sioux City,* 133 F.R.D. at 518; *Ziemack,* 1995 WL 314526, at \*2. Especially pertinent here, a party may not waive the privilege to some materials on a given subject and then withhold other materials on that same subject. *Ziemack,* 1995 WL 314526, at \*2 (citing *Nye v. Sage Prods. Inc.,* 98 F.R.D. 452 (N.D.Ill.1982)). However, to waive the privilege, a party must "do more than 'merely disclose the subject which he had discussed with his attorney.' ' *Makula,*

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

1997 U.S. Dist. LEXIS 11741, at *6 (quoting _United States v. O'Malley,_ 786 F.2d
786, 794 (7th Cir.1986)).

A party also waives the attorney-client privilege when it intends to show that it
acted in good faith because it relied upon the advice of its counsel. _Videojet
Sys. Int'l Inc. v. Inkjet, Inc.,_ No. 95 C 7016, 1997 WL 138008, at *2 (N.D.Ill.
Mar.19, 1997). This usually occurs in patent infringement litigation when the
defendant answers a charge of willful infringement. Negating the element of
willfulness, the patent infringement defendant often asserts that it conferred with
an attorney, who advised it that it was not infringing on any patents. _Id._
(collecting cases). Reliance upon counsel's opinions is a waiver of privilege
because to hold otherwise would be inherently unfair; it would allow a party to use
privileged material as a "sword" to attack the opposing party's allegations of bad
faith, while hiding the basis of its good faith belief behind the "shield" of
privilege. _Id.; see also Pitney-Bowes, Inc. v. Mestre,_ 86 F.R.D. 444, 446
(S.D.Fla.1980)( "privilege ... was intended as a shield, not a sword."); _Duplan
Corp. v. Deering Milliken, Inc.,_ 397 F.Supp. 1146, 1162 (D.S.C.1974)("[t]he reason
behind the rule is one of basic fairness.").

Through Mr. Moore's deposition testimony, Avery has attempted to reveal nothing
more than the fact that it conferred with in-house and outside patent counsel
regarding the Duffield patent, both prior to drafting the reissue application, and
also while deciding to withdraw the reissue application. Avery now argues that
merely revealing the fact that those communications took place did not waive the
attorney-client privilege. However, when placed within the full context of Mr.
Moore's twelve days of deposition testimony, Avery's disclosures clearly go beyond
the mere fact of communications regarding the Duffield patent, and instead
implicitly reveal the legal conclusions of Avery's in-house and outside counsel.

Avery testified (via Mr. Moore's deposition) that it was notified of the existence
of the Duffield patent during the course of its earlier licensing agreement
negotiations and that, after conferring with outside counsel, it determined that it
should draft a reissue application. Since Avery drafted and executed (but did not
file with the PTO) the reissue application, presumably this legal analysis
concluded that the Duffield patent might materially impact the '273 patent.
Nonetheless, Avery testified that it decided to withdraw the reissue application
after conferring with in-house and outside patent counsel, and deciding that the
Duffield patent did _not_ materially impact the '273 patent. Together, these
disclosures constitute a voluntary waiver of the attorney-client privilege with
respect to Avery's legal analyses of the Duffield patent. However, the Court does
not find a waiver of privilege regarding the remaining wide range of evidence that
UCB has requested in this motion.[FN9]

> FN9. In light of the conclusion that Avery waived the attorney-client
> privilege by disclosing confidential information, the Court need not further
> examine whether Avery also separately waived the attorney-client privilege by
> using its reliance upon opinions of counsel as evidence of its good faith.

### B. Work-Product Doctrine

*5 Avery also argues that its communications regarding the decisions to draft, and
then withdraw, the '273 reissue application are protected under the work-product
doctrine. Though often erroneously invoked interchangeably, the work-product
doctrine is distinct from, and broader than, the attorney-client privilege. _In re
Stern Walters Partners, Inc. v. Kaminky,_ No. 94 C 5705, 1996 WL 115290, at *4

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 6
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

(N.D.Ill. Mar.13, 1996)(citing *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95
S.Ct. 2160, 45 L.Ed.2d 141 (1975)). Like the attorney-client privilege, the work-
product doctrine significantly limits the scope of discovery, and therefore must be
narrowly construed in order to aid in the search for the truth. *Ziemack,* 1995 WL
314526, at *2. "The work-product doctrine prevents either party from gaining an
unfair advantage by learning the other party's, or their counsel's, legal
strategies and theories." *Stern Walters,* 1996 WL 115290, at *4 (citing *Allendale,*
152 F.R.D. at 135).

Under the work-product doctrine, the Court must initially determine whether the
documents at issue were, in fact, prepared in anticipation of litigation. FED. R.
CIV. P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451
(1947). The mere fact that litigation eventually ensues does not, alone, protect
all documents related to the subject matter of the litigation. *Ziemack,* 1995 WL
314526, at *6 (citing *Binks Mfg. Co. v. National Presto Indus. Inc.,* 709 F.2d 1109,
1118-19 (7th Cir.1983)). The " 'test' for work-product protection is 'whether, in
light of the nature of the document and the factual situation in the particular
case, the document can fairly be said to have been prepared or obtained because of
the prospect of litigation." ' *Id.* (quoting *Binks,* 709 F.2d at 1118-19).
Additionally, a document is only considered work-product if it is primarily
concerned with legal assistance. *Id.* (citing *Loctite Corp. v. Fel-Pro, Inc.,* 667
F.2d 577, 582 (7th Cir.1981)). Like the attorney-client privilege, the burden is on
the party opposing discovery to show that the work-product doctrine applies. *Id.*
(citing *Allendale,* 152 F.R.D. at 137.)

It appears uncontested that the reissue application, drafted during the licensing
agreement negotiations, was prepared in anticipation of litigation that Avery might
have brought if those negotiations fell through. *Oak Indus.,* 687 F.Supp. at 374
(citing *Electronic Memories and Magnetics Corp. v. Control Data Corp.,* 20
F.R.Serv.2d (Callaghan) 700 (N.D.Ill.1975)). However, this Court notes that the
Special Master has already inspected all of Avery's withheld documents. The Special
Master, in reviewing Avery's withheld documents *in camera,* evaluated Avery's work-
product claims on a document-by-document basis. Therefore, aside from the following
discussion of the waiver of work-product protections, the Court will defer to the
Special Master's recommendations.

Avery has met the threshold burden required to preserve work-product doctrine
protections through its unrefuted argument that the materials that UCB seeks were
prepared in anticipation of litigation. UCB argues, however, that Avery waived the
protections of the work-product doctrine through the same testimony of Mr. Moore
that this Court has already determined waived the attorney-client privilege.[FN10] The
Court agrees that Mr. Moore's 30(b)(6) deposition testimony revealed the legal
conclusions drawn by Avery's in-house and outside counsel with regard to their
investigations of the Duffield patent. By exposing the legal theories of counsel
that the work-product doctrine is designed to protect, Avery has waived those
protections.[FN11]

    FN10. *See supra* at 10. Mr. Moore's 30(b)(6)deposition testimony revealed that
    Avery's in-house and outside counsel conducted a legal study of the Duffield
    patent which concluded that the Duffield patent materially impacted Avery's
    '273 patent, and prompted Avery to draft and sign the reissue application.
    Mr. Moore's testimony also disclosed that Avery later conducted another legal
    study of the Duffield patent which reached the opposite conclusion and led
    Avery to withdraw the reissue application.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.