Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

FN11. Avery's waiver covers both its initial legal investigation concluding that the Duffield patent might invalidate the '273 patent (which led it to draft the reissue application) and its subsequent legal investigation concluding that the Duffield patent could not invalidate the '273 patent (which led it to withdraw the reissue application).

II. *Defendant's Motion to Compel Production of Rule 30(b)(6) Testimony*

**\*6** Avery designated two of its attorneys, under Rule 30(b)(6), to give deposition testimony regarding the original preparation of the patents now being enforced against UCB.[FN12] During its testimony, Avery repeatedly refused to answer questions on the grounds that the questions asked for evidence protected by the attorney-client privilege and the work-product doctrine. These unanswered questions cover roughly four subject areas: Avery's understanding of, and reasons for using, certain specifications in the '273 patent; other technical information pertaining to the '273 patent; Avery's investigations of prior art; and Avery's decision to change its outside patent counsel. UCB argues that Avery's assertions of privilege are improper and, therefore, requests production of deposition testimony pertaining to these categories.

FN12. UCB has already deposed the inventors of the patented devices and processes.

Regarding the attorney-client privilege, the Court again notes that the Seventh Circuit applies Wigmore's formulation. 8 WIGMORE 2292; *White,* 950 F.2d at 430. As the party opposing discovery, Avery must show that Wigmore's elements properly apply to its assertions of privilege. *Ziemack,* 1995 WL 314526, at \*2. Furthermore, the privilege protects confidential communications between the attorney and the client, not non-confidential facts contained in those communications. *Id.*

As previously noted, the work-product doctrine protects confidential materials prepared by an attorney in anticipation of litigation from discovery. FED. R. CIV. P. 26(b)(3). Rule 26, in codifying the work-product doctrine, allows the Court to compel production of work-product upon a showing of "undue hardship" by the party seeking production. FED. R. CIV. P. 26(b)(3). Even upon a showing of undue hardship, however, work-product evidence concerning the legal conclusions and litigation strategies of counsel are not subject to production. *Id.; Nye,* 98 F.R.D. at 454.

A. Avery's Reasons for Using Certain Specifications

In giving its deposition testimony, Avery refused to answer questions about why it used specific terms [FN13] in its original patent application. [FN14] Such questions clearly request the substance of Avery's conversations with its patent counsel; conversations seeking advice on the legal effect of specific terms in the patent application. Avery alleges that it made these communications in confidence and that this confidence has been maintained. UCB has not shown otherwise. "[C]onfidential communications between attorney and client for the purpose of securing legal advice concerning preparation or prosecution of a patent application are protected [by the attorney-client privilege] ...." *Amsted,* 1990 U.S. Dist. LEXIS 8699, at \*3.

FN13. For example, UCB asked Avery's attorneys why Avery chose the word "film" over "tape" to describe the material produced. Word choices can impact

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the validity of a patent because, in a specific patent context, the words
used to describe an invention may have acquired special meanings based on
prior art.

FN14. The Court assumes that these questions pertained to the '273 patent.

Application of the work-product doctrine to these materials, however, is more
difficult. Avery has not shown that the decision regarding which specifications to
include in the patent application was made in anticipation of litigation. FED. R.
CIV. P. 26(b)(3); *Oak Indus.,* 687 F.Supp. at 374 (finding preparation of patent
application was not done in anticipation of litigation). As such, any arguments
that these materials should be protected because they reveal the thoughts and legal
theories of Avery's counsel are groundless.

**\*7** Though the work-product doctrine does not attach to evidence of Avery's
decisions to use certain terms in its original patent applications, because it is
protected under the attorney-client privilege, UCB is not entitled to production.

### B. Technical Information

Several courts have concluded that communications of technical data from a client
to an attorney for the purpose of preparing a patent application are not
privileged. *C & F Packing,* 1997 U.S. Dist. LEXIS 15389, at \*5; *Amsted,* 1990 U.S.
Dist. LEXIS 8699, at \*5. This conclusion is consistent with Wigmore's formulation
of the attorney-client privilege, as technical information typically does not call
for legal advice when transmitted to patent counsel for preparation of a patent
application. Technical information is also not protected because it is not
confidential if intended to be included in a public patent filing. Avery has failed
to show either that the technical information requested by UCB called for legal
interpretation by Avery's counsel, or that it was intended to remain confidential
by not being included in the patent application. Therefore the attorney-client
privilege does not apply.

Similarly, Avery has not shown that technical information pertaining to the
preparation of the patent application was reproduced or gathered in contemplation
of litigation. FED. R. CIV. P. 26(b)(3). Accordingly, Avery shall produce
deposition testimony on this information to the extent that it is unable to show
that it was transmitted to obtain legal interpretation, or in anticipation of
litigation.

### C. Prior Art

Like technical information, prior art used to prepare a patent application is not
protected from discovery under the attorney-client privilege unless legal issues
predominate the communication from client to attorney. *C & F Packing,* 1997 U.S.
Dist. LEXIS 15389, at \*5; *Amsted,* 1990 U.S. Dist. LEXIS 8699, at \*5. Avery has not
met its threshold burden of showing that transmissions of prior art to its patent
counsel were made for the purpose of requesting legal advice, or that it did not
intend the prior art to be incorporated into the patent application. The attorney-
client privilege does not cover prior art that Avery communicated to counsel where
those communications do not request legal advice.

Avery has also failed to demonstrate that any communications of prior art
pertaining to the original patent application were made in anticipation of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

litigation, as required for work-product protection. FED. R. CIV. P. 26(b)(3).
Avery must produce deposition testimony regarding prior art, except where it is
able to show that communications of this information sought legal advice or
expressly contemplate litigation.

### D. Avery's Decision to Change its Outside Patent Counsel

In the middle of its earlier negotiations to license the patents it is now
enforcing against UCB, Avery fired the law firm that it had retained as outside
patent counsel and hired a new firm. UCB contends that this was an ordinary
business decision that should not be afforded work-product protection.

**\*8** This Court can find no meaningful contradiction of Avery's assertion that its
decision to change its outside patent counsel (immediately after drafting the
reissue application, and in the middle of licensing agreement negotiations) was
made in contemplation of litigation. Disclosure of the basis of Avery's decision to
change patent counsel would clearly reveal the type of litigation strategies that
the work-product doctrine was designed to protect. FED. R. CIV. P. 26(b)(3); _Nye,_
98 F.R.D. at 454. Therefore, Avery will not have to produce deposition testimony on
its decision to change patent counsel.

### III. _Defendant's Motion to Compel Production of Withheld Documents 943 and Draft Reissue Application 4,888,075_

#### A. Withheld Document 943

Avery's withheld document number 943 is clearly only the first page of a longer
memorandum ("the 943 memorandum"). While this first page discloses no confidential
matters, it states that the rest of the memorandum regards the '273 reissue
application. Avery has already produced the first page of the 943 memorandum, and
UCB now requests the subsequent pages. Avery counters that document 943 was, in
fact, an erroneously made copy of the first page of another confidential (as
determined by the Special Master) document-document 1000.

Avery must initially produce the first page of withheld document 1000 so that this
Court can compare it with document 943. If document 943 is identical to the first
page of withheld document 1000, then Avery will not be required to produce the 943
memorandum in its entirety. The production of document 943 did not waive either the
attorney-client privilege or work-product doctrine as to any confidences contained
in document 1000.

If document 943 does not match withheld document 1000, then Avery must produce all
of the 943 memorandum for this Court's review. If necessary, the Court will
determine whether privilege attaches, at such time.

#### B. Draft Reissue Application for Patent 4,888,075

UCB has been pursuing the draft reissue application for patent number 4,888,075 ("
'075") for quite some time.[FN15] Avery's initial response to a UCB interrogatory
requesting the signed reissue application for Avery's '075 patent indicated that
such a document did not exist. After UCB demonstrated that Avery had, in fact, sent
this very document to its outside patent counsel, Avery agreed to waive privilege

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

and produce the signed reissue application. Avery's only excuse as to why the
signed '075 patent reissue application has not been turned over in the five months
(since it agreed to so do) is that Avery has not yet located the document.

        FN15. It is not exactly clear as to what Avery's '075 patent pertains.

The Court can find no reason why Avery should still be unable to produce the signed
'075 patent reissue application after five months of good faith searching.
Therefore, Avery is ordered to produce this document.

                                    CONCLUSION

Consistent with the foregoing Opinion, the Court grants in part, and denies in
part, each of the three motions to compel made by UCB.

**\*9** IT IS THEREFORE ORDERED that Avery shall produce by October 23, 1998:

Documentary and testimonial evidence of its legal investigations of the Duffield
patent (both the investigation that initially led Avery to draft the reissue
application, as well as the investigation that convinced Avery to withdraw the
reissue application);

Rule 30(b)(6) deposition testimony covering technical information and prior art
gathered or prepared in the preparation of the original patent applications, to the
extent that Avery cannot affirmatively demonstrate that such materials are
privileged;

The first page of withheld document 1000 (if this first page of document 1000 is
not identical to document 943, Avery must produce, in its entirety, the 943
memorandum for the Court's *in camera* inspection); and

The signed '075 patent reissue application.

N.D.Ill.,1998.
Avery Dennison Corp. v. UCB Films PLC
Not Reported in F.Supp.2d, 1998 WL 703647 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:95cv06351 (Docket) (Nov. 02, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

▷
Briefs and Other Related Documents

United States District Court, S.D. New York.
SOFTVIEW COMPUTER PRODUCTS CORP. and Ergo
View Technologies Corp., Plaintiffs,
v.
HAWORTH, INC., Defendant.
No. 97 Civ. 8815 KMWHBP.

March 31, 2000.

*OPINION AND ORDER*
PITMAN, Magistrate J.

I. *Introduction*

*1 Plaintiffs Softview Computer Products Corp. and Ergo
View Technologies (collectively, "Softview") move to com-
pel the production of documents which defendant Haworth,
Inc. ("Haworth") has designated as protected by the attor-
ney-client privilege and the work-product doctrine. For the
reasons discussed below, the motion is granted in part and
denied in part.

II. *Facts*

Both Softview and Haworth manufacture and sell adjustable
computer keyboard support mechanisms. In 1986, Haworth
obtained U.S. Patent No. 4,616,798 ("the '798 patent") for
its mechanism. Softview introduced its accused mechanism
in 1997.

Softview commenced this action seeking a declaratory judg-
ment that (1) its mechanism does not infringe the '798
patent; (2) the '798 patent is invalid; (3) Haworth engaged in
inequitable conduct in obtaining the '798 patent; (4)
Haworth misused the '798 patent, and (5) Haworth has viol-
ated antitrust laws. In addition to denying the material alleg-
ations in Softview's complaint, Haworth has asserted a
counterclaim alleging that Softview has willfully infringed
the '798 patent. Haworth seeks injunctive relief and dam-
ages.

In response to Softview's discovery requests, Haworth ini-
tially produced a privilege log which listed five hundred and

twenty documents that Haworth believed were protected by
the attorney-client privilege and/or the work-product doc-
trine (*see* Memorandum of Law in Support of Plaintiff's
Motion to Compel dated May 11, 1999 ("Pltf. Mem. of
Law"), Ex. A ("Pltf.Ex. A")). On February 2, 1999,
Haworth produced seventy of those documents to Softview
(Affidavit of Dale H. Thiel, sworn to June 18, 1999 ("Thiel
Aff."), ¶ 3 n. 1).[FN1] In addition, Haworth no longer main-
tains a privilege with respect to thirty-seven of the docu-
ments listed on the original log (Thiel Aff. ¶ 3 n. 1).[FN2] By
order dated February 29, 2000, I directed Haworth to submit
those documents still in dispute to my chambers for an *in
camera* review.[FN3]

FN1. The following documents were produced by
Haworth on February 2, 1999: 18-24, 28, 46-48,
59-60, 67, 72-74, 88, 91-94, 117, 120-21, 128,
131-32, 134, 144, 150-59, 174-76, 181, 188-89,
193, 227, 256, 261, 272-73, 280, 329, 336, 344,
346, 350, 377, 395, 404, 418, 471-73, 481-82,
486-88 (Thiel Aff. ¶ 3 n. 1).

FN2. Haworth no longer maintains a privilege with
respect to the following documents: 2, 8, 10, 25,
26, 30, 32, 33, 40, 41, 45, 86, 119, 143, 147, 148,
163, 170, 185, 186, 279, 306, 309-11, 314, 376,
383, 399, 408, 411, 419, 424, 446, 452, 503, 514
(Thiel Aff. ¶ 3 n .1).

FN3. By letter dated March 6, 2000, Haworth has
advised the Court that there is no document corres-
ponding to its entry number 520 on its privilege
log, and that number 520 is a duplicate entry for
document 513.

Softview challenges Haworth's assertions of privilege as to
the four hundred and twelve (412) documents remaining on
a number of grounds. Softview first challenges the suffi-
ciency of Haworth's privilege log under Fed.R.Civ.P.
26(b)(5) and Local Civil Rule 26.2 (Pltf. Mem. of Law at
8-9). Softview also argues that the Crime-Fraud exception
operates to vitiate Haworth's assertions of privilege. Finally,
Softview advances specific arguments directed to individual
documents, or groups of documents. I shall address
Softview's general objections first and then discuss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

Softview's specific objections.

### III. *Analysis*

### A. *Standards*

" '[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." ' *von Bulow v. von Bulow, 811 F .2d 136, 144 (2d Cir.1987), quoting In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir.1984).* Thus, the party seeking to invoke the privilege must establish all elements of the privilege. *Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y.1993)* (citing cases).

**\*2** In this action, Haworth asserts that both the attorney-client privilege and the work-product doctrine protect the majority of the documents on its privilege log.[FN4]

> [FN4.] Haworth asserts both the attorney client privilege and the work-product doctrine for two hundred and eighty-six (286) of the four hundred and twelve (412) disputed documents (Defendant Haworth, Inc.'s Memorandum of Law in Opposition, dated June 21, 1999 ("Def. Mem. of Law"), Ex. A).

### 1. *Attorney-Client Privilege*

The elements of the attorney-client privilege are well settled:
"The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160*

F.R.D. 437, 441 (S.D.N.Y.1995), *quoting United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358-59 (D.Mass.1950); see United States v. Davis, 131 F.R.D. 391, 398 (S.D.N.Y.1990).* The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).* Therefore, "[i]t is now also well established that the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., supra, 160 F.R.D. at 441-42; see also O'Brien v. Board of Educ., 86 F.R.D. 548, 549 (S.D.N.Y.1980); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 520-22 (D.Conn.1976).*

Despite the fact that Softview and Haworth agree on the elements of the privilege,[FN5] they disagree on whether the privilege should apply to communications regarding the patent application process. The Federal Circuit's recent decision in *In re Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed.Cir.2000),* is instructive in this regard.

> [FN5.] Both sides agree on the applicability of the definition of the privilege set forth in *United States v. United Shoe Mach. Corp.,supra, 89 F.Supp. at 358-59* (Pltf. Mem. of Law at 5; Def. Mem. of Law at 9). Although both sides agree on the applicability of the *United Shoe* definition, it now appears that the scope of the attorney-client privilege in patent cases is governed by Federal Circuit standards and not the standards ordinarily applied by the regional circuit. *In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed.Cir.2000).* However, there does not appear to be a material difference between the *United Shoe* definition and the definition applied by the Federal Circuit. See *Shearing v. Iolab Corp., 975 F.2d 1541, 1546 (Fed.Cir.1992); American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 745 (Fed.Cir.1987).*

In *Spalding*, the Court addressed the scope of the attorney-client privilege in connection with an invention record submit-



Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

ted by the inventor to Spalding's corporate legal department. The Court granted mandamus and vacated the District Court's order to produce the invention record, holding that, although the record contained technical information relating to the subject matter of the patent, it was submitted for the purpose of obtaining legal advice and was, therefore, a privileged communication. *In re Spalding Sports Worldwide, Inc., supra,* 203 F.3d at 806.

The *Spalding* Court relied in part on *Knogo Corp. v. United States,* 213 U.S.P.O. 936, 940 (Ct.Cl.1980), an opinion in which the Court of Claims rejected the contention that patent attorneys are mere conduits of information to the patent office. The line of cases that follow *Knogo* stand for the proposition that the attorney-client privilege may attach to communications regarding patent prosecution, so long as those communications meet the other criteria of the privilege. *See Sperry v. Florida,* 373 U.S. 379, 383 (1963) ( "[T]he preparation and prosecution of patent applications for others constitutes the practice of law."); *Hydraflow, Inc. v. Enidine Inc.,* 145 F.R.D. 626, 632 (W.D.N.Y.1993) ("[T]he same considerations which justify applying the privilege to the typical communications between clients and their attorneys also warrant that the privilege be applied appropriately to the exchanges between clients and patent counsel incident to the patent application process."); *Laitram Corp. v. Hewlett-Packard Co.,* 827 F.Supp. 1242, 1246-47 (E.D.La.1993) ("[T]he approach adopted under *Knogo* ... appears to be more consistent with the professional realities of the patent attorney-client relationship and less open to error."); *Stryker Corp. v. Intermedics Orthopedics,* 145 F.R.D. 298, 302 (E.D.N.Y.1992); *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.,* 144 F.R.D. 372, 375 (N.D.Cal.1992) ("The view once held by several courts ... that the attorney-client privilege cannot attach to communications or documents generated in connection with proceedings before the PTO has clearly been rejected."); *In re Minebea Co., Ltd.,* 143 F.R.D. 494, 502 (S.D.N.Y.1992) ("[T]he privilege will apply to communications seeking or conveying a legal opinion on the patentability or infringement of an invention...."); *Cuno Inc. v. Pall Corp.,* 121 F.R.D. 198, 202 (E.D.N.Y.1988).

**\*3** Thus, the fact that a communication between a lawyer

and his or her client relates to patent prosecution and contains technical information does not make it ineligible for protection by the attorney-client privilege. *In re Spalding Sports World-wide, Inc., supra,* 203 F.3d at 806; *see also Messagephone, Inc. v. SVI Systems, Inc.,* No. 3-97-1813 H, 1998 WL 812397 at *1 (N.D.Tex.1998) (the "current and more widely accepted view is that communications between an inventor and his attorney are privileged to the same extent as other attorney-client communication ."); *Applied Telematics, Inc. v. Sprint Communications Co., Civ. A. No. 94-4603, 1996 WL 539595 at *2 (E. D.P.A. Sept. 18, 1996) ("The majority of courts ... recognize that attorneys render legal advice in the traditional sense when helping inventors apply for patents.").

### 2. Work-Product Doctrine

The scope of the work-product doctrine is set forth in Fed.R.Civ.P. 26(b)(3):
[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998); *Genentech, Inc. v. United States Int'l Trade Comm'n.* 122 F.3d 1409, 1415 (Fed.Cir.1997) (" 'The work product privilege protects the attorney's thought processes and legal recommendations.' "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

'), *quoting* *Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985). Like the attorney-client privilege, the party asserting the protection of the work-product doctrine bears the burden of proof. *In re Grand Jury Subpoena Dated Dec. 19, 1978,* 599 F.2d 504, 510 (2d Cir.1979).

"[T]hree conditions must be met in order to earn work product protection. The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982) (McLaughlin, J.). *Accord* *Weinhold v. Witte Heavy Lift, Inc.,* 90 Civ.2096(PKL), 1994 WL 132392 at ˜2 (S.D.N.Y. April 11, 1994); 2 M.Silberberg, *Civil Practice in the Southern District of New York,* § 15.04 at 15-11 (2d ed.1999).

*\*4* The Second Circuit has explained that the second element of this test does not limit the doctrine to documents prepared primarily or exclusively to assist in litigation:
The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents "prepared ... for trial" but also those prepared "in anticipation of litigation." If the drafters of the Rule intended to limit its protection to documents made to assist in preparation for litigation, this would have been adequately conveyed by the phrase "prepared ... for trial." The fact that documents prepared "in anticipation of litigation" were also included confirms that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggests that documents prepared "in anticipation of litigation" with the purpose of assisting in the making of a business decision do not fall within its scope.

*United States v. Adlman, supra,* 134 F.3d at 1198-99. Thus, the appropriate inquiry regarding the second element of the test is whether " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation .' " *United States v. Adlman, supra,* 134 F.3d at 1202, *quoting* 8 C. Wright, A. Miller & R. Mar-

cus, *Federal Practice & Procedure* § 2024 at 343 (1994).

As to the third element, the language of Rule 26(b)(3) itself grants protection to documents and tangible things prepared "by or for another party or by or for the other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." As the Supreme Court noted in *United States v. Nobles,* 422 U.S. 225 (1975):
[T]he [work-product] doctrine is an intensely practical one, grounded in the realities of litigation on our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

422 U.S. at 238-39.

Finally, where the applicability of the work-product doctrine has been established, factual material may, nevertheless, be ordered produced "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States, supra,* 449 U.S. at 400. However, where the material in issue discloses the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of the party, a far greater showing is required to pierce the doctrine's protection, and there is some authority that the protection afforded such opinion work product may be absolute. *See generally* *Upjohn Co. v. United States, supra,* 449 U.S. at 400-02; *Hickman v. Taylor,* 329 U.S. 495, 510-13 (1947); *United States v. Adlman, supra,* 134 F.3d at 1204.

*\*5* Documents that are generated in connection with a patent application are not protected by the work-product doctrine simply because an issued patent may give rise to an infringement action. *See* *Stryker Corp. v. Intermedics Orthopedics, supra,* 145 F.R.D. at 302; *Status Time Corp. v. Sharp Electronics Corp.,* 95 F.R.D. 27, 29 (S.D.N.Y.1982). However, documents pertaining to the patent application process which were also prepared because of actual or anticipated litigation may be protected by the work-product doctrine. *See* *In re Minebea Corp., supra,* 143 F.R.D. at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                     Page 5
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

500-01 (S.D.N.Y.1992).

### B. *Softview's Challenges*

#### 1. *The Sufficiency of Haworth's Privilege Log*

Softview's first general challenge is directed to the adequacy of Haworth's privilege log. Softview argues that the log is insufficient under Fed.R.Civ.P. 26(b)(5) and Local Civil Rule 26.2.

Fed.R.Civ.P. 26(b)(5) provides that:
When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Local Rule 26.2 provides that an attorney asserting the privilege for documents shall identify the type of document; the "general subject matter of the document"; the date of the document, and "such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other." Local Civil Rule 26.2(a)(2)(A).

A party may support its claims of privilege by the submission of "affidavits or equivalent statements that address each document in issue," *Bowne of New York City, Inc. v. Am-Base Corp., supra,* 150 F.R.D. at 473, or by the submission of an "adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." 150 F.R.D. at 474.

In addition to its privilege log, Haworth has submitted the affidavit of Dale H. Thiel, Esq., Haworth's outside patent counsel (Thiel Aff. ¶ 2). In his affidavit, counsel supplements the document descriptions contained in the privilege log and sets forth specific facts surrounding the creation of individual documents and groups of documents. Read to-

gether, the privilege log and the Thiel Affidavit provide descriptions which meet the requirements of Fed.R.Civ.P. 26(b)(5) and Local Civil Rule 26.2. *See* CSC Recovery Corp. v. Daido Steel Co., 94 Civ. 9214(LAP)(THK), 1997 WL 661122 at ‾2 (S.D.N.Y. Oct. 22, 1997) ("Courts ... may rely upon privilege logs supplemented by attorney affidavits."). Accordingly, Softview's motion to compel production on this ground is denied.

#### 2. *The Crime-Fraud Exception*

**\*6** As a second general objection, Softview challenges every document on Haworth's privilege log on the basis of the crime-fraud exception.

Softview alleges that Haworth committed fraud on the Patent and Trademark Office (the "PTO") by failing to inform it that the European Patent Office (the "EPO") considered a German patent ("the Siemans Patent") to be relevant prior art in connection with Haworth's European patent application, which was pending at the same time as Haworth's United States patent application. Softview does not dispute that Haworth submitted the Siemans Patent to the PTO, but argues that intent to commit fraud can be inferred from Haworth's failure to inform the PTO of the EPO's position with regard to the Siemans patent and Haworth's failure to provide an English-language translation of the Siemans patent to the PTO. Softview also alleges that Haworth committed fraud on the PTO by claiming in 1984 that its invention had enjoyed substantial commercial success without a sufficient basis for the claim (Pltf. Mem. of Law at 21).

Analysis of Softview's argument requires a basic understanding of the difference between inequitable conduct before the Patent Office, on the one hand, and common law fraud, also known as *Walker Process* fraud,[FN6] on the other.

> FN6. The term *"Walker Process"* fraud" is derived from *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172 (1965), in which the Supreme Court held that proof that a patentee has obtained a patent by "knowingly and willfully misrepresenting facts to the Patent Office" deprives a patentee of the antitrust immunity

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

it would otherwise enjoy. 382 U.S. at 177.

"Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent] Office, which includes a duty to disclose to the [Patent] Office all information known to that individual to be material to patentability...." 37 C.F.R. § 1.56(a). See Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed.Cir.1995). A violation of this duty of candor is commonly referred to as "inequitable conduct." J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559 (Fed.Cir.1984). Although inequitable conduct encompasses traditional, common law fraud, it is broader than common law fraud. Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1069 (Fed.Cir.1998); J.P. Stevens & Co. v. Lex Tex Ltd., supra, 747 F.2d at 1159, citing Norton v. Curtiss, 433 F.2d 779, 793 (C.C.P.A.1970). The effect of inequitable conduct on the enforceability of the patent is determined by weighing the materiality of the misrepresented or omitted information in conjunction with the intent of the applicant. Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1327 (Fed.Cir.1998); Halliburton Co. v. Schumberger Technology Corp., 925 F.2d 1435, 1439 (Fed.Cir.1991).

The term "Walker Process fraud", on the other hand, is usually used to describe a knowing or intentional misrepresentation or omission in the patent prosecution process, coupled with actual reliance by the Patent Office. Walker Process fraud is more serious misconduct and may result in a patentee being found liable for antitrust violations. See generally Nobelpharma AB v. Implant Innovations, Inc., supra, 141 F.3d at 1069-70.

*7 In In re Spalding Sports Worldwide, Inc., supra, 203 F.3d 800, the Federal Circuit expressly addressed whether a prima facie showing of inequitable conduct alone was sufficient to pierce the attorney-client privilege, and answered that question in the negative. After discussing the difference between inequitable conduct and common law, or Walker Process fraud, the Court noted that the latter required " 'higher threshold showings of both intent and materiality....' " 203 F.3d at 807, quoting Nobelpharma AB v. Implant Innovations, Inc., supra, 141 F.3d at 1070. The Court then went on to hold that the absence of any evidence of fraudulent intent in the case before it precluded a finding of com-

mon law fraud sufficient to pierce the privilege:

[W]e conclude that [defendant] has not made a *prima facie* showing that the invention record was made in furtherance of fraud during the prosecution of the '178 patent. Although the party seeking to overcome the attorney-client privilege need not conclusively prove fraud, or necessarily submit direct evidence to make a *prima facie* showing of fraud, [defendant's] mere allegation of [patentee's] failure to cite a reference to the PTO will not suffice. See Nobelpharma, 141 F.3d at 1071, 46 U.S.P.Q.2d at 1107. In actuality, a citation of prior art in an invention record in the absence of evidence of a purpose to conceal that art would seem to be the opposite of furthering fraud; it informs the patent attorney or agent of the closest prior art. What the attorney then does with that information is another matter, but inclusion of the closest prior art in an invention record does not alone provide evidence of furthering a fraud. Because [defendant] failed to provide any evidence of fraudulent intent, we conclude that the crime-fraud exception does not apply, and that [patentee's] invention record is protected by the attorney-client privilege.

In re Spalding Sports Worldwide, Inc., supra, 203 F.3d at 808. See also McCook Metals L.L.C. v. Alcoa Inc., ___ F.R.D. ___, No. 99 C 3856, 2000 WL 246213 at *14 (W.D.Ill. March 2, 2000); Monon Corp. v. Stoughton Trailers, Inc., 169 F.R.D. 99, 101-02 (N.D.Ill.1996); Laser Industries, Ltd. v. Reliant Technologies, Inc., 167 F.R.D. 417, 425 (N.D.Cal.1996); American Optical Corp. v. United States, 179 U.S.P.Q. 682, 684 (Ct.Cl.1973) ("[I]n order to pierce the privilege, it is not enough to show merely inequitable conduct before the Patent Office.").

In light of *Spalding,* Softview's claim that Haworth failed to inform the PTO of the EPO's view of the Siemans Patent and failed to provide an English translation of the Siemans Patent is not sufficient to pierce the privilege.

Turning first to Softview's claim that Haworth failed to inform the PTO of the EPO's assessment of the Sieman's Patent, The Federal Circuit has stated that "the details of foreign prosecution are not an additional category of material information." ATD Corp. v. Lydall, Inc., 159 F.3d 534, 547 (Fed.Cir.1998). Thus, Haworth's alleged failure to inform the PTO of the EPO's evaluation of the Sieman's patent can-

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

not constitute fraud, because it does not meet the materiality requirement for a showing of fraud.

**\*8** Turning next to Softview's claim that Haworth failed to submit an English translation of the Sieman's patent to the PTO, the Federal Circuit's recent opinion in *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co., ___ F.3d ___,* Docket Nos. 98-1377, 99-1103, 2000 WL 233253 (Fed.Cir. March 2, 2000), is instructive.

In *Semiconductor Energy,* the patentee submitted a twenty-nine (29) page Japanese reference to the PTO in the original Japanese, accompanied by "a concise explanation of its relevance, and an existing one-page partial English translation from a prior unrelated patent application." 2000 WL 233253 at \*2. In the ensuing infringement action, the District Court found the patent unenforceable for inequitable conduct, holding that "by submitting a concise explanation and a one-page partial translation of the [Japanese] reference that were accurate but misleadingly incomplete, [the patentee] had intentionally withheld the [Japanese] reference from the PTO." 2000 WL 233253 at \*2. The Federal Circuit affirmed, finding that:
By submitting the entire untranslated [Japanese] reference to the PTO along with a one-page, partial translation focusing on less material portions and a concise statement directed to these less material portions, [the patentee] left the examiner with the impression that the examiner did not need to conduct any further translation or investigation. Thus, [the patentee] deliberately deceived the examiner into thinking that the [Japanese] reference was less relevant than it really was, and constructively withheld the reference from the PTO.

The duty of candor does not require that the applicant translate every foreign reference, but only that the applicant refrain from submitting partial translations and concise explanations that it knows will misdirect the examiner's attention from the reference's relevant teaching.

2000 WL 233253 at \*8- \*9.

In this case, Softview alleges that Haworth failed to provide any translation of the Sieman's Patent to the PTO, not that Haworth submitted a partial translation that it knew would

mislead the examiner. Thus, the facts here are materially different from those presented in *Semiconductor Energy.*

The regulations in effect at the time Haworth was prosecuting its patent application required the applicant to submit a translation of foreign documents only where one was "readily available." 37 C.F.R. § 1.98(b) (1983).[FN7] Haworth has submitted evidence that a translation of the Siemans Patent was not readily available at the time it submitted its application to the PTO, *see* Thiel Aff. ¶ 109, and, thus, Haworth's failure to submit a translation does not, by itself, constitute evidence of fraudulent intent.[FN8]

> FN7. Title 37 was amended in 1992 to require the submission of a "concise explanation of the relevance ... of each patent ... that is not English language[,]" and any translation of a non-English language document, or portion thereof, which is "within the possession, custody or control" the applicant, or "readily available." 37 C.F.R. § 1.98(a)(3) and (c) (2000).

> FN8. Haworth's position that submitting the untranslated patent was not intended as an attempt to defraud the PTO is also supported by Section 901.05(d) of the *Manual of Patent Examining Procedure,* which provides that: "Examiners may consult the translators in the Translation Branch of the Scientific and Technical Information Center (STIC) for oral assistance in translating foreign patents or literature that are possible references for an application being examined." Section 901.5(d) also provides that examiners may request written translations of pertinent portions of references from the Translation Branch.

Softview's allegation that Haworth committed fraud on the PTO by overstating the commercial success of its device is also insufficient to pierce the privilege. Haworth argued to the PTO that its adjustable keyboard support mechanism ("AKP") enjoyed commercial success, and cites deposition testimony to demonstrate that, by 1983, its AKP had won an industry design award, been imitated by competitors, and had generated a great deal of customer interest (Def. Mem. of Law at 21). Softview, however, has not shown that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

Haworth's claim that its product enjoyed "substantial and significant commercial success" induced the PTO to issue a patent which it would not otherwise have issued. *See Nobelpharma, supra, 141 F.3d at 1071* (a finding of fraud "must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission."). Thus, Softview's argument in this regard is also insufficient to pierce the privilege.

**\*9** Softview challenges a number of Haworth's documents on the crime-fraud exception alone (*see* Pltf. Ex. A). Because I find that Softview's allegations of fraud are insufficient to pierce Haworth's claims of privilege, Softview's motion to compel production is denied as to documents 281, 282, 283, 284, 285, 286, 287, 288, 294, 298, 299, 300, 301, 303, 304, 307, 315, 317, 318, 319, 320, 321, 322, 324, 325, 327, 328, 330, 331, 333, 334, 337, 338, 340, 341, 342, 343, 345, 348, 351, 354, 356, 357, 358, 360, 465, 467, 468, 469, 470, 475, 483, 484 and 485.

### C. Particular Objections

#### 1. Transmittal Letters and Cover Sheets

Haworth has designated as privileged a number of transmittal letters and fax cover sheets. Upon *in camera* inspection, these documents are clearly not protected by either the attorney-client privilege or the work-product doctrine. These documents do not contain confidential factual communications made by Haworth for the purpose of securing legal advice, nor do they contain any legal advice, opinions or analysis from counsel which would reveal such communications. Such documents are not protected by the attorney-client privilege. *See Burroughs Wellcome Co. v. Barr Laboratories, Inc., 143 F.R.D. 611, 615 (E.D.N.C.1992); P & B Marina Ltd. Partnership v. Logrande, 136 F.R.D. 50, 54 (E.D.N.Y.1991), aff'd mem., 983 F.2d 1047 (2d Cir.1992).* Furthermore, these documents do not contain any information which indicates that they were created because of any pending or anticipated litigation. *See United States v. Adlman, supra, 134 F.3d at 1202* ("[I]t should be emphasized that the 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business or that would have been cre-

ated in essentially similar form irrespective of the litigation.").

Upon review, I find that documents 16, 44, 53, [FN9] 85, 101, 108, 109, 130, 160, 162, 184, 197, 209, 217, 218, [FN10] 225, 226, 259, 260, 265, 266, 274, 275, 289, 297, 355, 370, 372, 379, 386, 392, 393, 397, 402, 407, 409, 410, 421, 427, 428, 431, 433, 436, 444, 453, 456 and 478 are cover letters or facsimile transmittal cover sheets and are not entitled to protection by the attorney-client privilege or the work-product doctrine.

> FN9. Document 53 should be produced without attachments. *See Section III.C.5, below.*

> FN10. The draft letters attached to document 218 are privileged. *See Section III.C.15, below.* Therefore, document 218 should be produced without attachments.

#### 2. U.S. Patent Prosecution Documents

Softview argues that documents relating to Haworth's United States patent application are not protected by the attorney-client privilege or the work-product doctrine, relying upon *Detection Systems, Inc. v. Pittway Corp. 96 F.R.D. 152, 154-55 (W.D.N.Y.1982).* [FN11] As noted above, however, such documents may be protected by the attorney-client privilege or the work-product doctrine in appropriate circumstances, and the view espoused in *Detection Systems* has been criticized by more recent authority. *See In re Spalding Sports Worldwide, Inc., supra, 203 F.3d at 806 n. 3; Hydraflow, Inc. v. Enidine, Inc., supra, 145 F.R.D. at 631; Cuno, Inc. v. Pall Corp., supra, 121 F.R.D. at 201.* Accordingly, to the extent that the challenged documents contain confidential information communicated by Haworth for the purpose of securing counsel's advice and assistance in obtaining the '798 patent, those documents are privileged.

> FN11. Softview challenges documents 1, 3, 5, 6, 7, 9, 11, 37, 39, 55, 56, 58, 61, 62, 63, 64, 65, 66, 68, 79, 105, 114, 118, 172 and 183 on this basis.

**\*10** However, upon *in camera* review, I find that documents 3, 37, 39, 58, 64, 65, 66, 68, 79, 114, 118 and 183 do not contain such information and are not protected by the attor-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                         Page 9
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

ney-client privilege or the work-product doctrine. Document 3 is an authorization from Haworth to counsel to file a patent application, and contains no confidential information. Document 37 is a memorandum of a conference with the patent examiner, which does not contain confidential communications or advice or any information to indicate that it was created because of anticipated litigation. Documents 39 and 79 are status reports regarding Haworth's patent application which do not reveal any client confidences or legal analysis. Document 58 is a cryptic memorandum of a patent search that counsel conducted at the PTO; it does not reveal any client confidences, and nothing about it suggests that it was prepared in anticipation of litigation. Document 64 is a status report from counsel to Haworth regarding the progress of its patent application.

Document No. 65 is a response to counsel's request to another attorney to order patents which "may have been potentially pertinent prior art" (Thiel Aff. ¶ 23). Although Haworth claims that this document is protected by both the attorney-client privilege and the work-product doctrine, this letter does not reveal any client confidences or attorney thought processes. To the extent the patents requested reflect patent counsel's thought process, that aspect of counsel's analysis is already a matter of public record inasmuch as the two patents requested were disclosed to the Patent Office (*see* document 64).

Document 66, which Haworth designated as protected by both the work-product and attorney-client privilege, is an authorization from Haworth directing counsel to file a continuation application with the PTO, which contains no other information. Document 68 is counsel's handwritten notes of a conference which do not reveal any client confidences or contain any information which suggests that they were prepared because of any actual or anticipated litigation. Document 114 is counsel's notification that the '798 Patent was about to issue and instructions to Haworth to mark its device with the patent number. Document 114 contains no client confidences, nor does it reflect counsel's opinions regarding any actual or anticipated litigation. Document 118 is a cover letter from counsel to Haworth enclosing a copy of the '798 patent. Document 183 is a patent search report conducted by another law firm and sent to counsel. These documents do

not reveal any information, technical or otherwise, communicated from Haworth to counsel, nor were they prepared because of actual or anticipated litigation.

### 3. *Correspondence with or Notes of Haworth's Domestic Counsel Concerning Foreign Patent Applications*

Softview objects to Haworth's withholding a number of documents to, from or by its domestic counsel, concerning Haworth's European and Japanese patent applications, and argues that communications in furtherance of foreign patent applications are not privileged (Pltf. Mem. of Law at 12).FN12 Again, to the extent that these documents reflect confidential information communicated by Haworth for the purpose of obtaining legal services in connection with its foreign patent applications, or were prepared because of pending or anticipated litigation, they are protected as discussed above.

> FN12. Softview objects to the following documents still in issue on the ground that they are improperly withheld foreign prosecution documents: 12, 13, 14, 15, 17, 38, 42, 50, 57, 70, 77, 81, 83, 89, 90, 96, 97, 98, 99, 102, 107, 136, 139, 140, 145, 149, 165, 169, 180, 187, 203, 308 and 335.

**\*11** However, certain of these documents do not meet the criteria for either privilege. Document 12 is a letter from counsel informing Haworth of the expiration of the period for filing its European patent application. Documents 42 and 139 are letters discussing the anticipated cost of translating Haworth's patent and pursuing the EPO application. Documents 50, 90, 96, 97, 102, 107, 145 and 149 are status reports regarding the progress of Haworth's European application. Document 57 is a search request from counsel to the EPO. Document 77 is a set of claims that was submitted to the EPO, and, therefore, is not protected by the attorney-client privilege.FN13 Document 98 is Haworth's direction to discontinue pursuit of the EPO application, and document 140 is Haworth's direction to resume. Documents 165 and 203 are status reports regarding Haworth's Japanese patent application. Documents 169 and 335 are Haworth's authorizations to proceed with the Japanese application. None of these documents reveal any confidential communication from Haworth for the purpose of obtaining legal advice or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                   Page 10
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

services, nor were they prepared because of any pending or anticipated litigation. They are business documents created incident to Haworth's foreign applications. Therefore, Haworth is directed to produce documents 12, 42, 50, 57, 77, 90, 96, 97, 98, 102, 107, 139, 140, 145, 149, 165, 169, 203, and 335.

> FN13. Haworth does not claim work-product protection for this document (Def. Mem. of Law, Ex. A).

### 4. Foreign Agents

Softview objects to Haworth's designation of communications between its United States counsel and the German patent agents involved in prosecuting the EPO application, arguing that Haworth has not demonstrated that German law protects such communications.[FN14]

> FN14. Softview objects on this ground to the following documents which are still in issue: 29, 36, 43, 69, 71, 75, 76, 78, 80, 82, 84, 87, 95, 100, 104, 135, 137 and 142.

"If a communication with a foreign patent agent involves a foreign patent application, then as a matter of comity, the law of that foreign country is considered regarding whether that law provides a privilege comparable to the attorney-client privilege." *Bristol-Meyers Squibb v. Rhone-Poulenc Rorer, Inc.,* 95 Civ. 8833(RPP), 1998 WL 158958 at 1 (S.D.N.Y. Apr. 2, 1998); *see also McCook Metals L.L.C. v. Alcoa Inc., supra,* 2000 WL 246213 at 11; *Advertising to Women, Inc. v. Gianni Versace S.p.A.,* No. 98 C 1553, 1999 WL 608711 at 2 (N.D.Ill. Aug. 4, 1999); *Saxholm AS v. Dynal, Inc.,* 164 F.R.D. 331, 337 (E.D.N.Y.1996); *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 520 (S.D.N.Y.1992). German law protects communications between a patent agent and his or her clients. *Golden Trade, S.r.L. v. Lee Apparel Co., supra,* 143 F.R.D. at 524.[FN15] Accordingly, communications to Haworth's German patent agents are protected by the attorney-client privilege to the same extent as communications to domestic attorneys.

> FN15. The German Penal Code provides for a fine or term of imprisonment of up to one year for pat-

ent agents who disclose clients' business or trade secrets. § 203(1) Nr.3 StGB.

Upon *in camera* review, however, it appears that certain of these documents are not eligible for attorney-client protection because they do not reflect client confidences. Documents 36, 87, 95 and 104 are status reports regarding Haworth's EPO application. Document 43 is an instruction to the German agent not to obtain a translation of certain documents. Document 80 is counsel's authorization to the German agents to proceed with drafting claims for submission to the EPO. Documents 135 and 137 concern the expected cost of filing for patent protection in certain European countries. Accordingly, Haworth is directed to produce documents 36, 43, 80, 87, 95, 104, 135 and 137.

### 5. Documents Created Before the Issuance of the '798 Patent

**\*12** Softview next argues that the work-product doctrine cannot protect any documents that were prepared before the issuance of the '798 patent, because, until that time, Haworth had no patent to form the basis of an infringement action or to defend (Pltf. Mem. of Law at 15).[FN16] However, documents prepared in connection with a patent application may be eligible for work-product protection even before the issuance of the patent. *See In re Minebea Corp., supra,* 143 F.R.D. at 500-01 (S.D.N.Y.1992).

> FN16. Softview objects to Haworth's claim of work-product protection for the following documents still in issue: 17, 55, 56, 61, 62, 63 and 105.

In *Minebea,* the patent holder sought work-product protection for information concerning its patent application, asserting that it anticipated litigation regarding the patent as early as eleven months before the patent was issued. 143 F.R.D. at 500. The court noted that:
Generally, work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection ... since the prosecution of [a] patent application is a non-adversarial, *ex parte* proceeding. Thus, work done to that end is not "in anticipation of" or "concerning" litigation. This rule does not, however, preclude application of the work product protec-



Not Reported in F.Supp.2d                                                                              Page 11
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

tion to work performed to prosecute a patent application if it was also performed in anticipation of or concerning litigation.

143 F.R.D. at 499. Accord *Bristol-Myers Squibb v. Rhone-Poulenc Rorer Inc.,* 45 U.S.P.Q.2d 1775, 1779-80 (S.D.N.Y.1998).

The *Minebea* Court went on to hold that information pertaining to the patent prosecution was protected work-product if produced on or after the date upon which the patent holder anticipated litigation, regardless of the fact that the patent did not issue until almost a year later. 143 F.R.D. at 501. Thus, in assessing claims of work-product protection, the crucial date is the date upon which the party asserting the work-product doctrine anticipated litigation regarding the patent, not when the patent was actually issued.

In this case, Haworth claims that competitors introduced AKP models at a trade show in June 1983, one week after Haworth filed a patent application for its AKP, and that Haworth believed these AKP models would infringe its patent once issued (Thiel Aff. ¶ 4, 9). Therefore, Haworth maintains that it contemplated the possibility of litigation with these competitors as early as June 1983, and all of the documents pertaining to its application for the '798 patent were prepared with subsequent litigation in mind (Def. Mem. of Law at 18). *In camera* review confirms that the challenged documents still in issue in this category reflect that counsel's claim drafting and prosecution of the patent application were informed by Haworth's anticipation of litigation against its competitors once the '798 patent issued.

Softview also objects to documents 27 and 53, both correspondence sent from Haworth to counsel regarding competitive AKP mechanisms, on the ground that they pre-date the issuance of the '798 patent and Haworth has not shown that either contains communications seeking or providing legal advice.

**\*13** As noted above, 53 is a cover letter, to which documents 51 and 52 are attached. Although I find that documents 51 and 52 are privileged (*see* Section III.C.8, below), document 53, to the extent that it is a cover letter, is not, and it should be produced without attachments.

However, document 27 is a confidential communication from Haworth seeking counsel's advice, and, as such, is protected.

### 6. Documents Created After The Issuance of the '798 Patent

Softview also objects to Haworth's claim of work-product protection for certain documents prepared after the issuance of the '798 patent. However, Haworth has dropped its claim of work-product protection for all of the challenged documents except 114, 118, 183 and 492. Documents 114, 118 and 183 are discussed in Section III.C.2, above, and were not prepared because of anticipated litigation. Document 492 is a draft EPO patent application with counsel's handwritten notes. In his affidavit, counsel does not assert that this document was created because of pending or anticipated litigation. However, Haworth also claims that this draft patent application is protected by the attorney-client privilege. As discussed more fully below in Section III.C.12, I find that document 492 is protected by the attorney-client privilege.

### 7. Third Party Licensing Agreements

Softview objects to the designation of a number of documents related to Haworth's licensing agreements with third parties.[FN17] Softview argues that Haworth has not met its burden of showing that these documents are protected by either the work-product doctrine or the attorney-client privilege. Haworth argues that these documents are covered by both the attorney-client privilege and the work-product doctrine because they contain confidential communications from Haworth to counsel, made to obtain legal advice regarding negotiations with competitors, and were created in anticipation of litigation with these same competitors if negotiations were unsuccessful.

> FN17. Softview objects to the designation of the following documents which are still in issue on the ground that they are improperly withheld third party licensing documents: 103, 123, 125, 126, 127, 129, 138, 141, 146, 161, 166, 167, 257, 305, 361, 385, 387, 388, 391, 394, 396, 398, 401, 405, 412, 413, 415, 417, 420, 422, 425, 430, 432, 434, 437, 438, 439, 442, 445, 450, 455, 459, 460, 462,

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

Page 12

466, 502, 507, 508 and 512.

To a large extent, I find that the challenged documents are protected by the work-product doctrine, the attorney-client privilege, or both, insofar as they are communications regarding negotiations and anticipated litigation strategy, and contain client confidences. Upon *in camera* review, however, documents 126, 127, 388, 391, 434, 450, 459 and 502 do not fall under either category of protection.

Documents 126 and 127 are Haworth's request for and counsel's transmittal of the '798 patent number, and do not disclose any confidential information or legal analysis. Document 388 is a handwritten note from counsel to a "Berta", directing her to "set up a file for Haworth".

Document 391 consists of a transmittal memorandum informing counsel that two letters to be sent to competing companies are acceptable. The letters are attached, and advise the competitors that Haworth believes one to be infringing its '798 patent and that Haworth intends to investigate possible infringement by the other. The only markings on the letters are spelling corrections.

*14 Document 434 is an authorization from Haworth to counsel to send a letter to a competitor. Document 450 is a facsimile message which contains the address of a company interested in licensing Haworth's AKP. Documents 459 and 502 are telephone message slips which do not contain any confidential communications or concern any pending or anticipated litigation.

These documents do not reveal confidential communications from Haworth, nor is there any basis to conclude that they were prepared because of pending or anticipated litigation. Accordingly, Haworth is directed to produce documents 126, 127, 388, 391, 434, 450, 459 and 502.

### 8. *Documents 51 and 52*

Softview argues that documents 51 and 52, internal engineering reports regarding competitors' keyboard mechanisms, which were produced by a Haworth employee and submitted to both his superior and counsel, are not entitled to work-product protection because they were not prepared by or for an attorney. However, as the Thiel Affidavit makes

clear, these documents were intended to provide information to counsel, and that information was to provide the basis of counsel's evaluation of possible infringement by competitors (Thiel Aff. ¶ 14). As such, they are protected work-product notwithstanding the fact that they were not prepared by an attorney. Fed.R.Civ.P. 26(b)(3).

### 9. *Handwritten Notes*

Softview argues that Haworth has not carried its burden of showing that the work-product doctrine or the attorney-client privilege protects any of counsel's handwritten notes.FN18 Several of the documents from this category have been discussed above in connection with Softview's other objections, and I have conducted an *in camera* review of each document still in dispute.

> FN18. Softview objects to the following handwritten notes still in issue: 1, 4, 5, 7, 13, 17, 34, 54, 61, 62, 122, 124, 164, 172, 192, 196, 204, 214, 234, 252, 255, 277, 290, 291, 292, 293, 326, 352, 447, 464 and 493.

Most of these documents reveal either counsel's thought processes regarding pending or anticipated litigation or refer to confidential facts communicated from Haworth for the purpose of securing its advice, or both. However, Haworth has designated certain documents in this category which do neither.

Document 192 contains only possible dates for a planned meeting between counsel and a Haworth representative. Document 214 is counsel's notes of a conference with a Haworth official reflecting certain terms of Haworth's proposed licensing agreement with a competitor, and reflects only business and financial information, not legal advice or litigation strategy. Document 493 is an address and contact information for a Haworth licensee. Accordingly, Haworth is directed to produce documents 192, 214, and 493.

### 10. *Documents 31, 35, 108, 297, 490 & 491*

Softview also objects to Haworth's withholding of documents 31, 35, 108, 297, 490 and 491 on the ground that Haworth has not indicated that they were intended to seek or give legal advice and that they predate the '798 patent.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 13
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

Document 31 contains legal advice from counsel, and on its face appears to have been prepared in anticipation of litigation. Document 35, however, is a status report relating the fact that counsel had a conference with the patent examiner on August 17, 1983, and does not reveal any confidential communications or relate to any pending or anticipated litigation.

**\*15** Documents 490 and 491 contain sales figure information which was specifically prepared to assist in the present dispute with Softview, and, as such, are protected work-product. As noted above at Section III.C.1, documents 108 and 297 are cover letters only, which do not reveal any confidential information.

Accordingly, Haworth is directed to produce documents 35, 108 and 297.

### 11. Press Release Documents

Softview also objects to the designation of documents 110, 111, 112, 113, 115 and 116, which are all related to the issuance of a press release by Haworth. Softview argues that communications addressing public relations are not privileged, relying on *Burroughs Wellcome Co. v. Barr Lab., Inc.,* 143 F.R.D. 611 (E.D.N .C.1992). However, the document which the court held discoverable in *Burroughs* "[was] an internal memorandum ... concerning internal communications problems. The memorandum appear[ed] to be wholly unsolicited." 143 F.R.D. at 613. By contrast, the documents in issue here are requests for advice from Haworth regarding the timing and content of its contemplated press release, and the attorney's response. Furthermore, these documents contain discussions of Haworth's then-ongoing litigation with a competitor and reflect counsel's views concerning that litigation. Therefore, Softview's motion is denied as to these documents.

### 12. Draft Documents

Softview maintains that Haworth has improperly withheld documents that are drafts of documents intended for disclosure to third parties or the patent office.[FN19]

> FN19. Softview challenges document nos. 6, 9, 173, 177, 178, 244, 247, 249, 251, 253, 254, 262,

263, 267, 268, 269, 271, 353, 362, 364, 366, 367, 368, 371, 373, 374, 382, 389, 390, 403, 426, 429, 435, 451, 454, 457, 458, 479, 499, 505 and 511 on this basis (Pltf. Mem. of Law at 18).

Drafts of documents prepared by an attorney for transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence. *In re Grand Jury Subpoena,* 731 F.2d 1032, 1037 (2d Cir.1984); *Asset Value Fund Ltd. Partnership v. Care Group, Inc.,* 97 Civ. 1487(DLC)(JCF), 1997 WL 706320 at \*6 (S.D.N.Y. Nov. 12, 1997); *In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 474 (S.D.N.Y.1996); *Sequa Corp. v. Gelmin,* 91 Civ. 8675(CSH), 1994 WL 538124 at \*3 (S.D.N.Y. Oct. 3, 1994); *United States Postal Serv. v. Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 162-63 (E.D.N.Y.1994); *Bowne of New York City, Inc. v. AmBase Corp., supra,* 150 F.R.D. at 490.

In this case, the majority of the draft documents challenged by Softview contain attorney's notes and confidential communications from the client, and are therefore protected.

However, documents 263, 269, 271, 373 and 374 are either cover letters transmitting drafts of other documents, and not the drafts themselves, or documents which contain no confidential information or legal advice. Accordingly, those portions of documents 263, 269, 271, 373 and 374 which are transmittal letters or cover sheets should be produced, without the attached drafts.

Document 367 consists only of a facsimile cover sheet and transmittal letter. It contains no confidential information or advice, and does not appear to have been prepared because of pending or anticipated litigation. Accordingly, document 367 should be produced in its entirety.

**\*16** Documents 173, 177, 178 are cover letters addressed to co-counsel which transmit drafts of letters intended for Haworth's competitor, Webber Knapp. Although the draft letters reveal counsel's thought processes, the cover letters do not. Therefore, the cover pages of documents 173, 177 and 178 should be produced to Softview, without attach-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                              Page 14
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

ments.

Softview also seeks the production of documents 6 and 9, which are drafts of the patent application that Haworth submitted to the PTO. There is a split of authority on the issue of whether draft patent applications are protected by the attorney-client privilege. *Compare, e. g., Saxholm AS v. Dynal, Inc., supra,* 164 F.R.D. at 335 ("[T]he weight of authority favors disclosure of draft patent applications."), *with Mc-Cook Metals, LLC v. Alcoa, Inc.,* No. 99 C 3856, 2000 WL 246213 at *7 (N.D.Ill. March 2, 2000) ("A draft [patent application] necessarily reflects the communications between a client and his attorney.... A patent draft implicitly contains the legal opinion and advice of the attorney.").

In *Saxholm,* the Court found that "two considerations favor a finding that, at least to the extent it finds its way into a draft application, information communicated to an attorney by his client should not be protected by the privilege." 164 F.R.D. at 335. "First, although the client makes the communication of such information to seek advice and services, the advice and services sought are not purely, or even primarily, legal." 164 F.R.D. at 335. Second, client communications concerning a draft patent application "are made with the distinct understanding that the information conveyed may well be revealed." 164 F.R.D. at 336.

However, the view that a patent attorney's services in connection with a patent application are not legal in nature was recently rejected by the Federal Circuit in *In re Spalding Sports Worldwide, Inc., supra,* 203 F.3d 800, in which the Court held that an invention record submitted by the inventors to Spalding's legal department for the purpose of making a patentability determination was a privileged communication "made for the purpose of obtaining legal advice." 203 F.3d at 805. "[S]ince Spalding's invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety." 203 F.3d at 806. *See also Sperry v. Florida, supra,* 373 U.S. at 383 ("[T]he preparation and prosecution of patent applications for others constitutes the practice of law."); *Knogo Corp. v. United States, supra,* 213 U.S.P.Q. at 940. Furthermore, the Court in *Spalding* held that the invention record was protected notwithstanding the fact that it contained information which would ultimately be disclosed to the patent office.

"The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney. If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney."

**\*17** *In re Spalding Sports Worldwide, Inc., supra,* 203 F.3d at 806, *quoting Knogo Corp. v. United States, supra,* 313 U.S.P.Q. at 941. *See also Messagephone, Inc., v. SVI Systems, Inc., supra,* 1998 WL 812397 at *2; ("The argument that there is no reasonable expectation of confidentiality in communications the inventor knows will be disclosed to the patent office fails.... Not every communication the inventor has with his attorney will be passed on the patent office.").

In light of the Federal Circuit's decision in *Spalding,* I believe that the better rule is one which extends the privilege to draft patent applications. *See McCook Metals L.L.C. v. Alcoa, supra,* 2000 WL 246213 at *3- 4, 7 (analyzing *Knogo* and *Spalding* and holding that draft patent applications are privileged); *see also Conner Peripherals Inc. v. Western Digital Corp.,* 31 U.S.P.Q.2d 1042, 1046 (N.D.Cal.1993) (draft patent applications "reflect the complex discourse between an inventor and his patent attorney and their efforts to obtain the strongest permissible patent protection for the invention ."); *Rohm & Haas Co. v. Brotech Corp.,* 815 F.Supp. 793, 796-97 (D.Del.1993) (draft patent applications "often contain information and communications ... which are intended to be considered confidential between attorney and client" and are therefore privileged), *aff'd mem.,* 19 F.3d 41 (Fed.Cir.1994); *Ball Corp. v. American National Can Co.,* 27 U.S.P.Q.2d 1958, 1959 (S.D.Ind.1993) ("This Court ... joins with those others which have recognized that the attorney-client privilege attaches to draft patent applications.").

Accordingly, Haworth is directed to produce documents 173, 177, 178, 263, 269, 271, 373 and 374, without attach-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
(Cite as: Not Reported in F.Supp.2d)

Page 15

ments. Document 367 should be produced in its entirety. Softview's motion is denied as to documents 6 and 9.[FN20]

> FN20. For the foregoing reasons, Softview's motion is also denied as to document 492, another draft patent application. *See* Section III.C.6, above.

### 13. *Communications Between Counsel for Adverse Parties*

Softview objects to the work product designation for documents 219, 243, 245, 384, and 500, arguing that these draft letters are communications between counsel and attorneys for Haworth's competitors. Upon review, the only privileged portions of documents 243, 245, 384 and 500 are counsel's handwritten notes. Accordingly, these documents should be produced to Softview with the handwritten notes redacted. Document 219 does not contain any handwritten notes, and should be produced in its entirety.

### 14. *Notes of Telephone Conversations*

Softview challenges documents 480, 489, 513, 515, and 516, arguing that Haworth has not shown that these notes of telephone conversations contain client confidences. Upon review, however, these documents either contain confidential information communicated from Haworth to its attorney, or reveal litigation strategy, or both. Therefore, Softview's motion is denied as to these documents.

### 15. *Documents Relating to Haworth's Negotiations With Competitors*

**\*18** Softview challenges a number of documents related to Haworth's negotiations with competitors, arguing that, in the context of negotiations, communications conveyed from client to attorney are intended to be relayed to third parties.[FN21] Some of these documents are protected attorney-client communications insofar as they contain confidential information and advice regarding possible infringement by Haworth's competitors. Others are protected workproduct which reflect counsel's thought processes regarding litigation in the event that negotiations break down.

> FN21. Softview challenges the following documents still in issue on this ground: 171, 179, 190, 200, 210, 212, 213, 215, 216, 218, 222, 223, 224, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 239, 240, 241, 242, 248, 262, 264, 270, 349, 363, 365, 375, 400, 406, 447 and 448.

However, certain of these documents are not entitled to protection by either privilege.

Documents 200 and 216 are telephone message slips which do not contain any confidences or advice.

Furthermore, certain of the documents in this category are documents that reflect business advice from counsel as opposed to legal advice, or communications between Haworth and counsel which contain only business information. The attorney-client privilege attaches to communications seeking legal advice, not business advice, *see In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir.1984)*, and, accordingly, these documents are not protected by the attorney-client privilege. Furthermore, there is nothing about these documents that suggests they were prepared in anticipation of litigation rather than as a part of Haworth's license negotiation process. *See United States v. Adlman, supra, 134 F.3d at 1202.*

Document 231 is a letter from counsel which summarizes the terms of Haworth's settlement offer to a competitor. Document 237 is counsel's report of a meeting with a competitor's attorney and summarizes the licensing terms offered to the competitor by Haworth.

Certain other documents in this category are cover letters which do not contain protected communications, but are attached to protected draft documents which contain confidential communications and/or attorney work-product. Document 218 is a cover letter from counsel to co-counsel enclosing two draft letters. Although the cover letter is not protected, *see* Section III.C.1, above, I find that the draft letters are protected. *See* Section III.C.12, above. Accordingly, that portion of document 218 which is a cover letter should be produced, without the enclosed draft letters. Similarly, documents 210, 213, 224, 228, 232 and 233 each consist of a transmittal letter and a draft letter. The transmittal letter portion of documents 210, 213, 224, 228, 232 and 233 should be produced, without the attached drafts. Document 229 is a cover fax sheet and draft letter with handwritten

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                            Page 16
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

notations. Although the cover sheet contains no confidential information or attorney thought processes, upon *in camera* review I find that the attached draft is privileged. Accordingly, only that portion of document 229 which is a cover sheet should be produced, without attachments. Document 239 is a cover letter enclosing a draft licensing agreement. Although the draft is protected, that portion of document 239 which is a cover letter should be produced.

**\*19** Certain other documents in this category do not contain protected communications, advice or work product. Document 349 is a facsimile cover sheet and counsel's notes of the financial terms of a proposed settlement. This document reflects business, not legal, advice. Accordingly, it should be produced in its entirety. Document 264 is a cover letter summarizing the terms of a signed licensing agreement with a Haworth licensee. Document 363 is a facsimile transmission which contains royalty payment information regarding Haworth's licensees. It is solely business information, and nothing about it suggests that it was prepared because of actual or anticipated litigation. Furthermore, it appears from the document itself that the information was disclosed to counsel for a Haworth licensee. Document 365 is a duplicate of document 363. Accordingly, documents 363 and 365 should be produced in their entirety. Document 235 is a letter from counsel to Haworth advising that an opposing attorney will be unavailable on certain dates. Document 270 is a brief facsimile message indicating that a proposed letter is acceptable and should be sent to opposing counsel. The facsimile message does not reveal the contents of the letter or any confidential material. Document 375 is a letter from Haworth advising counsel that a proposed letter is acceptable, and contains no other information.

Accordingly, Haworth is directed to produce documents 200, 216, 231, 235, 237, 270 and 375 in full. That portion of documents 210, 213, 224, 228, 229, 232, 233 and 239 which is a transmittal letter or cover sheet should be produced without attachments.

### 16. *Work Product Not Prepared By Attorney or Representative*

Finally, Softview objects to a number of documents for which Haworth asserts work-product immunity on the ground that they were not prepared by an attorney or his agent, or that they are undated.[FN22] It is clear, however, that work-product immunity extends not only to documents prepared by an attorney, but also to all documents "prepared for litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3). The documents Softview challenges fall within the rule. Furthermore, Softview cites no authority, and this court's research has discovered none, for the proposition that undated documents cannot be protected by the work-product doctrine. Those opinions which address the subject suggest the contrary. *See, e.g., Doe v. Meachum,* 126 F.R.D. 437, 437 (D.Conn.1988); *Kemelhor v. Penthouse Int'l, Ltd.,* 85 Civ. 0002(CBM), 1986 WL 15698 at [\*]2 (S.D.N.Y. Feb. 24, 1986) (undated attorney notes were clearly exempt from discovery under the work-product doctrine). In any event, *in camera* review of the undated documents indicates that they were prepared because of specific pending or anticipated litigation.

> FN22. Softview objects to the following documents still in issue on the ground that they were not prepared by an attorney: 27, 51, 52, 83, 110, 125, 141, 146, 161, 166, 180, 278, 316, 323, 359, 385, 387, 401, 405, 420, 422, 425, 455, 474, 476, 477, 480, 489, 490, 492, 494, 495, 496, 497, 498, 499, 501, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 516, 517, 518 and 519.

### D. *Other Claims*

**\*20** Softview also raises two other arguments with regard to Haworth's third party licensing documents. First, Softview argues that it is entitled to Haworth's licensing agreements because Haworth has counterclaimed against Softview for patent infringement and alleges that the agreements support the validity of its '798 patent. Second, Softview argues that it has a "substantial need" for these documents as defined by Fed.R.Civ.P. 26(b)(3), because it has no other means by which to discover evidence of Haworth's alleged patent misuse (Pltf. Mem. of Law at 19 & 20).

Initially, I note that Softview does not specifically identify which documents it believes to be improperly withheld



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

third-party licensing documents. Therefore, the Court is unable to assess the merit of Softview's arguments through an *in camera* review. More fundamentally, however, Softview has not established that it is unable without undue hardship to discover evidence of Haworth's alleged patent misuse by other means. Haworth's licensees themselves are available for deposition regarding licensing agreements. *See Tribune Co. v. York Holdings, Inc.,* No. 93 Civ. 7222(LAP), 1998 WL 175933 at 4 (S.D.N.Y. April 14, 1998) (" 'Substantial need' cannot be shown where persons with equivalent information are available for deposition."), *citing Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir.1989). Accordingly, this aspect of Softview's motion is denied.

### E. *No Specific Objection*

Finally, I note that Softview does not raise any specific objection in its memorandum of law to Haworth's assertion of privilege with regard to the following documents: 49, 106, 133, 168, 182, 191, 194, 195, 198, 199, 201, 202, 205, 206, 207, 208, 211, 220, 221, 238, 246, 250, 258, 276, 295, 296, 302, 312, 313, 332, 339, 347, 369, 378, 380, 381, 414, 416, 423, 440, 441, 443, 449, 461 and 463. Because I have denied Softview's general objection to the sufficiency of Haworth's privilege log and its general objection based on the crime-fraud exception, Softview's motion to compel is denied as to these documents.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, Haworth is directed to produce the following documents in their entirety: 3, 12, 16, 35, 36, 37, 39, 42, 43, 44, 50, 57, 58, 64, 65, 66, 68, 77, 79, 80, 85, 87, 90, 95, 96, 97, 98, 101, 102, 104, 107, 108, 109, 114, 118, 126, 127, 130, 135, 137, 139, 140, 145, 149, 160, 162, 165, 169, 183, 184, 192, 197, 200, 203, 209, 214, 216, 217, 219, 225, 226, 231, 235, 237, 259, 260, 264, 265, 266, 270, 274, 275, 289, 297, 335, 349, 355, 363, 365, 367, 370, 372, 375, 379, 386, 388, 391, 392, 393, 397, 402, 407, 409, 410, 421, 427, 428, 431, 433, 434, 436, 444, 450, 453, 456, 459, 478, 493 and 502.

Those portions of the following documents which are transmittal letters or cover sheets are to be produced without attachments: 53, 173, 177, 178, 210, 213, 218, 224, 228, 229, 232, 233, 239, 263, 269, 271, 373, 374.

**\*21** The following documents are to be produced with handwritten notes redacted: 243, 245, 384 and 500.

Softview's motion is otherwise denied.

S.D.N.Y.,2000.
Softview Computer Products Corp. v. Haworth, Inc.
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422

Briefs and Other Related Documents (Back to top)

• 2003 WL 24141522 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Plaintiff's Motion Under Rule 37 of the Federal Rules of Civil Procedure to Compel Defendant to Respond to Plaintiff's Discovery Requests (Nov. 18, 2003)
• 2003 WL 24319667 () Declaration of J. Michael Thesz in Support of Softview Computer Products Corp. and Ergoview Technologies, Inc.'s Reply to Haworth, Inc.'s Opposition to the Motion for Summary Judgment on the Grounds of Non-Infringement (May 14, 2003) Original Image of this Document (PDF)
• 2000 WL 34536248 (Trial Motion, Memorandum and Affidavit) Defendant Haworth, Inc.'s Opposition to Plaintiff Softview Computer Products Corp. and Counterclaim Defendant Ergoview Technologies Inc.'s Motion for Partial Summary Judgment on Grounds of Indefinheness (May 11, 2000)
• 2000 WL 34536249 (Trial Motion, Memorandum and Affidavit) Defendant Haworth, Inc.'s (Corrected) Memorandum in Opposition to Plaintiff Softview's Motion for Partial Summary Judgment Under 35 U.S.C. | 112, First Paragrarh (May 10, 2000) Original Image of this Document (PDF)
• 2000 WL 34403440 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Haworth, Inc.'s Motion, Pursuant to Local Civil Rule 6.3, for Partial Reconsideration of the Court's March 31, 2000 Opinion and Order (May. 05, 2000)
• 2000 WL 34536247 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Haworth, Inc.'s Motion, Pursuant to Local Civil Rule 6.3, for Partial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 18
Not Reported in F.Supp.2d, 2000 WL 351411 (S.D.N.Y.), 58 U.S.P.Q.2d 1422
**(Cite as: Not Reported in F.Supp.2d)**

Reconsideration of the Court's March 31, 2000 Opinion and Order (May 5, 2000)

• 2000 WL 34633641 () Affidavit of John M. Ho Well in Support of Defendant Haworth Inc.'S Oppositions to Plaintiff Softview Computer Products Corp. and Counter-claim Defendant Ergoview Technologies Inc.'s Motions for Summary Judgment (May 3, 2000) Original Image of this Document (PDF)

• 2000 WL 34536246 (Trial Motion, Memorandum and Af-fidavit) Memorandum of Law in Support of Haworth, Inc.'s Motion, Pursuant to Local Civil Rule 6.3, for Partial Recon-sideration of the Court's March 31, 2000 Opinion and order (Apr. 14, 2000)

• 2000 WL 34536245 (Trial Motion, Memorandum and Af-fidavit) Plaintiff Softview Computer Products Corp. and Counterclaim Defendant Ergoview Technologies, Inc.@s Memorandum in Support of Their Motion for Partial Sum-mary Judgment Under 35 U.S.C. | 112 ï 1 (Mar. 21, 2000) Original Image of this Document (PDF)

• 2000 WL 34743475 (Trial Pleading) Plaintiff SoftView Computer Products Corp. and Counterclaim Defendant Er-goview Technologies, Inc.'s Memorandum in Support of Their Motion for Partial Summary Judgment Under 35 U.S.C. | 112 ï 1 (Mar. 21, 2000) Original Image of this Doc-ument (PDF)

• 2000 WL 34633642 () Affidavit of Dr. Stan Wei (Mar. 20, 2000) Original Image of this Document (PDF)

• 2000 WL 34633643 () Affidavit of John Pile (Mar. 20, 2000) Original Image of this Document (PDF)

• 2000 WL 34403436 (Trial Motion, Memorandum and Af-fidavit) Memorandum in Opposition to Defendant Haworth Inc.'s Appeal of and Objection to the Magistrate Judge's Memorandum Opinion and Order Dated December 10, 1999 (Jan. 11, 2000)

• 1999 WL 34014140 () Declaration of Charles A. Garris, Jr. (Dec. 13, 1999) Original Image of this Document (PDF)

• 1999 WL 33885603 (Trial Motion, Memorandum and Af-fidavit) Haworth, Inc.'s Reply Memorandum of Law in Fur-ther Support of its Motion to Compel Discovery, Pursuant to Federal Rule of Civil Procedure 37 (Sep. 29, 1999)

• 1999 WL 33885601 (Trial Motion, Memorandum and Af-fidavit) Plaintiffs' Reply to Defendant's Counterstatement in Response to Plaintiffs' Statement of Material Facts not in Dispute Pursuant to Local Rule 56.1 with Respect to

Plaintiffs' Motion for Partial Summary Judgment on Grounds of Lack of Written Descript ion (Sep. 21, 1999)

• 1999 WL 33885600 (Trial Motion, Memorandum and Af-fidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion to Compel Production of Documents Scheduled on Haworth's Privilege Log (Aug. 02, 1999)

• 1999 WL 33885602 (Trial Motion, Memorandum and Af-fidavit) Memorandum of Law in Support of Haworth, Inc.'s Motion to Compel Discovery, Pursuant to Federal Rule of Civil Procedure 37 (Jul. 14, 1999)

• 1999 WL 33885599 (Trial Motion, Memorandum and Af-fidavit) Defendant Haworth, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Rule 37 of the Federal Rules of Civil Procedure to Compel Defendant to Respond to Plaintiff's Discovery Requests (Jun. 21, 1999)

• 1999 WL 34242783 (Trial Motion, Memorandum and Af-fidavit) Memorandum of Law in Support of Plaintiffs' Mo-tion to Compel (Apr. 29, 1999) Original Image of this Doc-ument (PDF)

• 1999 WL 33885597 (Trial Motion, Memorandum and Af-fidavit) Defendant Haworth, Inc.'s Memorandum of Law in Support of Its Motion to Bifurcate and Stay Plaintiff's Anti-trust and Patent Misuse Caims (Mar. 19, 1999)

• 1999 WL 33885598 (Trial Motion, Memorandum and Af-fidavit) Haworth, Inc.'s Reply Memorandum of Law in Fur-ther Support of Its Motion to Bifurcate and Stay Plaintiff's Antitrust and Patent Misuse Claims (Mar. 19, 1999)

• 1999 WL 33885594 (Trial Motion, Memorandum and Af-fidavit) Plaintiff's Reply to Defendant's Amended Counter-claims (Mar. 02, 1999)

• 1999 WL 33885595 (Trial Motion, Memorandum and Af-fidavit) Plaintiffs' Opposition to Defendant's Motion to Bi-furcate and Stay Plaintiffs' Antitrust and Patent Misuse Claims (Mar. 02, 1999)

• 1999 WL 33885596 (Trial Motion, Memorandum and Af-fidavit) Ergoview Technology Corporation's Reply to Haworth Inc.'s Amended Counterclaims; and Counterclaims (Mar. 02, 1999)

• 1998 WL 34778579 (Trial Pleading) Amended Complaint (Dec. 30, 1998) Original Image of this Document (PDF)

• 1:97cv08815 (Docket) (Nov. 26, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2004 WL 1721574 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Only the Westlaw citation is currently available.
United States District Court,S.D. Indiana, Indianapolis Division.
BASF AKTIENGESELLSCHAFT, Plaintiff,
v.
REILLY INDUSTRIES INC, Defendant.
**No. IP01-1936-C-Y/K.**

July 29, 2004.

Frederick D Emhardt, Plews Shadley Racher & Braun, Indianapolis, IN, for Plaintiff.
Paul M Richter, Kenyon & Kenyon, New York, NY, for Plaintiff.

*ORDER ON DEFENDANT'S MOTION TO COMPEL* [FN1]

FN1. The parties filed their briefs regarding the underlying motion to compel under seal. However, the Court does not believe that any of the information set forth in this order, or the conclusions reached in this order, may properly be deemed confidential and filed under seal. Accordingly, this order shall be filed by the Clerk without any restrictions on its dissemination.

BAKER, Magistrate J.

I. Background.

**\*1** This cause is before the Court on a motion by Reilly Industries, Inc. ("Reilly") seeking to compel Plaintiff BASF Aktiengesellschaft ("BASF") to produce a single document relating to the interview of a patent office claims examiner. According to BASF's privilege log, the document is a letter from Norman Oblon, an attorney with the law firm that originally prosecuted BASF's '684 patent, to BASF regarding an "examiner interview and responding to Office Action along with proposed response." [Def.'s Ex. L]. BASF withheld this document on the grounds that it was protected by the attorney-client privilege and the work product doctrine. [Def.'s Ex. L].

In support of its motion, Reilly proffers three arguments. First, Reilly argues that the letter is not at all privileged, asserting that the privilege extends only to communications and not to facts. Next, Reilly argues that, even if the letter were privileged, BASF waived the privilege by voluntarily disclosing another confidential attorney-client communication on the same subject matter. Finally, Reilly asserts that the letter is not subject to the work product privilege because "[c]ourts have recognized that patent prosecution work performed outside of the context of litigation does not qualify as attorney work product." [Docket No. 136, p. 7].

BASF maintains that "draft patent applications are privileged because they 'necessarily reflect[ ] the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right." ' [Docket No. 140, p. 4], *quoting McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 253 (N.D.Ill.2000). Moreover, BASF argues that it did not waive the privilege because the document on which Reilly relies for its waiver

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2004 WL 1721574 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

argument simply does not contain legal advice or confidential information. Finally,
in its brief, BASF does not assert (as it did in its privilege log) that the letter
is attorney work product. As explained below, the Court finds that the disputed
letter is protected by the attorney-client privilege, and therefore the work
product issue need not be addressed.


                                II. Discussion.

The attorney-client privilege protects confidential communications made between a
lawyer and client where legal advice is sought from a professional legal advisor in
such capacity. _Rehling v. City of Chicago,_ 207 F.3d 1009, 1019 (7th Cir.2000),
citing _United States v. Evans,_ 113 F.3d 1457, 1461 (7th Cir.1997). The inquiry into
whether documents are subject to the privilege is a highly fact-specific one.
"[T]he privilege must be made and sustained on a document-by-document basis. A
blanket claim of privilege that does not specify what information is protected will
not suffice." _United States v. White,_ 970 F.2d 328, 334 (7th Cir.1992).

The Seventh Circuit adopted Professor Wigmore's standard for parties to assert the
attorney client privilege. The elements are: (1) where legal advice was sought; (2)
from a professional legal advisor in his capacity as such; (3) the communications
relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his
instance permanently protected; (7) from disclosure by himself or by the legal
advisor, (8) except the protection be waived. _Evans,_ 113 F.3d at 1461, citing 9 J.
Wigmore, Evidence § 2292 (McNaughton rev.1961). As the party seeking to establish
the privilege, BASF bears the burden of demonstrating that all of the requirements
for invoking the attorney-client privilege have been met. _See Evans,_ 113 F.3d at
1461.

**\*2** The cases cited by BASF in support of its claim that the document is protected
by the attorney-client privilege are persuasive. In _McCook Metals L.L.C. v. Alcoa
Inc.,_ 192 F.R.D. 242 (N.D.Ill.2000), the district court found that drafts of patent
applications were privileged. Specifically, the court noted:
These are drafts of the specifications, claims, and other parts of the patent
application prepared by the attorney. A draft necessarily reflects the
communications between a client and his attorney as the attorney attempts to put
forth the invention in the best light possible to protect a client's legal right. A
patent draft implicitly contains the legal opinion and advice of the attorney
regarding the wording of technical specifications, claims, and prior art, and
whether an item is included, all of which are necessary to secure a legal claim for
the client. The art of creating verbal packages to persuade others, in this case
the PTO, to find favorably for one's client, as opposed to simply dumping upon them
a heap of detached, unorganized, technical blizzard of papers, is the work of an
attorney.

_McCook,_ 192 F.R.D. 252-53. The same reasoning applies to the instant matter. The
letter at issue was drafted by BASF's outside patent counsel and pertained to an
interview with a PTO examiner. In addition, the letter included a draft response to
the PTO. The Court agrees with _McCook_ and finds that such communications implicitly
contain legal opinion and advice.

Reilly is correct that communications between BASF's attorneys and the PTO are not
privileged. However, Reilly misses the point. Reilly is not seeking to compel
testimony or documents regarding BASF's attorney's communications with the PTO.
Instead, Reilly seeks to discover what BASF's attorneys told BASF about their
communications with the PTO. The distinction is subtle, but important. Oblon's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 1721574 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

letter to BASF regarding the examiner interview and *proposed response* necessarily contains legal advice on and interpretation of the examiner's comments. It is not just a factual recitation of what occurred during the interview. "While the application and communications with the patent office may themselves be a matter of public record and not privileged, the same cannot be said for the honing of technical specifications, claims, and decisions regarding inclusion or exclusion of information that occurs before the application itself." *Smithkline Beecham Corp. v.. Apotex Corp., 193 F.R.D. 530, 537 (N.D.Ill.2000)*. The letter is protected by the attorney-client privilege.

Reilly next argues that, even if the letter is protected by the attorney-client privilege, BASF waived the privilege by producing in discovery a faxed letter from BASF to Oblon, Spivak, McClelland, Maier & Neustadt regarding the same subject matter (hereinafter "BASF 1013"). Reilly is correct that "the general rule is that voluntary disclosure of privileged communications waives the privilege as to all other communications dealing with the same subject matter." *Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 532 (N.D.Ill.2003)*. BASF does not dispute that BASF 1013 was voluntarily disclosed. Nor does it dispute that BASF 1013 refers to the same subject matter. Instead, BASF maintains that information in BASF 1013 is not privileged and, therefore, no waiver occurred. The Court agrees with BASF.

**\*3** In its entirety, the body of BASF 1013 states: "Thank you very much for your above fax. We are pleased to see that the Examiner in all likelihood intends to allow the claims. Please file your proposed response." [Def.'s Ex. K]. This simply does not contain material protected by the attorney-client privilege. Nothing in BASF 1013 either seeks or provides legal advice. Its reference that the examiner "in all likelihood" will allow the claims is a fact that can be deduced from the examiner's own interview summary record. [Def.'s Ex. A] (stating what BASF "will consider ... which can overcome rejections of record"). Moreover, BASF's instruction to "file your proposed response," without more, does not implicate the attorney-client privilege. BASF 1013 does not suggest changes to the proposed response. In addition, once the "proposed response" was filed, it became public record. Finally, even if covered by the attorney-client privilege, the vague references to Oblon's letter found in BASF 1013 would not, in this particular situation, result in a broad waiver of the privilege as to all communications regarding the examiner interview and the proposed response. In short, BASF did not waive the attorney-client privilege by producing BASF 1013 to Reilly.

### III. Conclusion.

For the reasons set forth above, Reilly's motion to compel is DENIED.

SO ORDERED

S.D.Ind.,2004.
BASF Aktiengesellschaft v. Reilly Industries, Inc.
Not Reported in F.Supp.2d, 2004 WL 1721574 (S.D.Ind.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.